## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DAIICHI SANKYO COMPANY, LTD., )
)
) C.A. No. 19-2087-CFC
*Plaintiff*, )
)
v. ) **EXHIBITS 1, 3-10, 12 AND**
) **14 FILED SEPARATELY**
) **UNDER SEAL**
SEATTLE GENETICS, INC., )
)
*Defendant*.

## DECLARATION OF MATTHEW CHIVVIS IN SUPPORT OF
## DEFENDANT SEATTLE GENETICS, INC.'S MOTION TO DISMISS

*Of Counsel:*

MORRISON & FOERSTER LLP
Michael A. Jacobs
Matthew A. Chivvis
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

MORRISON & FOERSTER LLP
Bryan Wilson
Pieter S. de Ganon
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant*
*Seattle Genetics, Inc.*

Dated:  November 19, 2019

I, Matthew A. Chivvis, declare:

1.      I am a partner with the law firm of Morrison & Foerster LLP, counsel of record for Defendant Seattle Genetics, Inc. in this action.  I make this declaration based on my personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Attached as **Exhibit 1** is a true and correct copy of the Collaboration Agreement between Seattle Genetics, Inc. ("SGI") and Daiichi Sankyo Co., Ltd. ("DSC") entered into as of July 2, 2008.

3.      Attached as **Exhibit 2** is a true and correct copy the publicly filed version of the Collaboration Agreement between Seattle Genetics, Inc. ("SGI") and Daiichi Sankyo Co., Ltd. ("DSC") entered into as of July 2, 2008.

4.      Attached as **Exhibit 3** is a true and correct copy of the Demand for Arbitration filed by Seattle Genetics, Inc. on November 11, 2019.

5.      Attached as **Exhibit 4** is a true and correct copy of a letter from Jean Liu (General Counsel for SGI) to Naoto Tsukaguchi (General Counsel for DSC), dated August 19, 2019.

6.      Attached as **Exhibit 5** is a true and correct copy of a letter from Naoto Tsukaguchi (General Counsel for DSC) to Jean Liu (General Counsel for SGI), dated August 27, 2019.

7.     Attached as **Exhibit 6** is a true and correct copy of a letter from Jean Liu (General Counsel for SGI) to Naoto Tsukaguchi (General Counsel for DSC), dated August 30, 2019.

8.     Attached as **Exhibit 7** is a true and correct copy of a letter from Naoto Tsukaguchi (General Counsel for DSC) to Jean Liu (General Counsel for SGI), dated September 4, 2019.

9.     Attached as **Exhibit 8** is a true and correct copy of a letter from Jean Liu (General Counsel for SGI) to Naoto Tsukaguchi (General Counsel for DSC), dated October 4, 2019.

10.     Attached as **Exhibit 9** is a true and correct copy of a letter from Naoto Tsukaguchi (General Counsel for DSC) to Jean Liu (General Counsel for SGI), dated October 9, 2019.

11.     Attached as **Exhibit 10** is a true and correct copy of a letter from Jean Liu (General Counsel for SGI) to Naoto Tsukaguchi (General Counsel for DSC), dated October 11, 2019.

12.     Attached as **Exhibit 11** is a true and correct copy of a press release titled "Daiichi Sankyo Files Declaratory Judgement Action Related to its Proprietary Antibody Drug Conjugate Technology", date November 4, 2019.

13.     Attached as **Exhibit 12** is a true and correct copy of a letter from Toshinori Agatsuma (DSC's VP of Biologics Pharmacology Research Laboratories) to Jean Liu (General Counsel for SGI), dated April 1, 2015.

14.     Attached as **Exhibit 13** is a true and correct copy of the Commercial Arbitration Rules and Mediation Procedures for the American Arbitration Association, *available online at* adr.org/commercial.

15.     Attached as **Exhibit 14** is a true and correct copy of a letter from Naoto Tsukaguchi (General Counsel for DSC) to Jean Liu (General Counsel for SGI), dated September 23, 2019.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and corrected.  Executed this 19th day of November, 2019, at San Francisco, California.

_____

Matthew A. Chivvis

# EXHIBIT 2

EX-10.2 5 dex102.htm COLLABORATION AGREEMENT DATED JULY 2, 2008

**Exhibit 10.2**

Confidential treatment has been requested for portions of this exhibit. The copy filed herewith omits the information subject to the confidentiality request. Omissions are designated as [***]. A complete version of this exhibit has been filed separately with the Securities and Exchange Commission.

<div align="center">

**COLLABORATION AGREEMENT**

</div>

This Agreement is entered into as of July 2, 2008 by and between:

> **SEATTLE GENETICS, INC.**, a Delaware corporation, having its principal place of business at 21823 30th Drive S.E., Bothell, Washington 98021
>
> (hereinafter referred to as "SGI")

and

> **DAIICHI SANKYO CO., LTD.**, a corporation organized under the laws of Japan, having its place of business at 1-2-58, Hiromachi, Shinagawa-ku,
> Tokyo, Japan, 140-8710
>
> (hereinafter referred to as "Licensee").

<div align="center">

**WITNESSETH**

</div>

**WHEREAS,** SGI owns or Controls (as defined below) intellectual property rights relating to certain technology useful for linking certain proprietary cytotoxins to other molecules, such as antibodies capable of directing such cytotoxins to specific tissues and/or cells;

**WHEREAS,** Licensee owns or Controls (as defined below) intellectual property rights relating to antibodies to the Designated Antigen (as defined below), and is currently conducting research and development programs to incorporate such antibodies into pharmaceutical compounds that may have activity in certain disease-related pathways, and to develop antibodies that bind to the Designated Antigen;

**WHEREAS,** Licensee wishes to acquire from SGI an exclusive worldwide license under SGI patent rights and know-how related to SGI's proprietary cytotoxin and linker technology for use in conjunction with Licensee's development, commercialization, manufacture, marketing and sale of Licensee's antibodies that bind to the Designated Antigen; and

**WHEREAS,** SGI wishes to grant to Licensee an exclusive worldwide license to SGI's cytotoxin and linker technology for use in conjunction with Licensee's development, commercialization, manufacture, marketing and sale of Licensed Products (as defined below);

**NOW, THEREFORE**, in consideration of the mutual covenants and obligations set forth herein, the Parties hereto, intending to be legally bound, agree as follows:

**ARTICLE 1 - DEFINITIONS AND INTERPRETATION**

    **1.1 Definitions**: For the purposes of this Agreement the following words and phrases shall have the following meanings:

        1.1.1 "**AAA**" has the meaning set forth in Section 19.3.4.

**1.1.2** "**ADC**" or **"Antibody-Drug Conjugate"** means an Antibody that is linked to a cytotoxin or cytostatic compound and that contains, uses or is made using Drug Conjugation Technology.

**1.1.3** "**ADC Access Fee**" has the meaning set forth in Section 6.1.1.

**1.1.4 "ADC Data"** has the meaning set forth in Section 2.6.

**1.1.5** "**Affiliate**" of a Party means any corporation or other business entity that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with a Party. As used herein, the term "control" means the direct or indirect ownership of [***] or more of the stock having the right to vote for directors thereof or the ability to otherwise control the management thereof.

**1.1.6** "**Agreement**" means this agreement, all amendments and supplements to this Agreement and all schedules to this Agreement, including the following:

Schedule A - Research Plan.

Schedule B - SGI Patents.

Schedule C - SGI In-Licenses.

**1.1.7** "**Antibody**" or "**Antibodies**" means any antibody, or fragment thereof, that has a unique amino acid sequence and that selectively binds to the Designated Antigen.

**1.1.8** "**Breaching Party**" has the meaning set forth in Section 13.3.

**1.1.9 "Calendar Quarter"** means any of the three-month periods beginning on January 1, April 1, July 1 or October 1 of any year.

**1.1.10 "Change in Control"** has the meaning set forth in Article 16.

**1.1.11 "Claims"** has the meaning set forth in Section 14.1.1.

**1.1.12 "Confidential Information"** has the meaning set forth in Section 8.1.

**1.1.13 "Control"** means, with respect to any information or intellectual property right, possession by a Party of the ability to grant the right to access or use, or to grant a license or a sublicense to, such information or intellectual property right as provided for herein without violating the terms of any agreement or other arrangement with any Third Party.

**1.1.14 "Cost of Goods"** shall mean with respect to Drug Conjugation Materials supplied to Licensee (a) [***]; and (b) [***].

**1.1.15 "Designated Antigen"** means the human DR5 antigen, encoded by the gene designated Gene ID: [***], [***] of the [***], and naturally occurring post-translational modifications thereof.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**1.1.16** "**Drug Conjugation Materials**" means (a) the compounds [***] and [***] and [***] thereof, (b) compounds that are useful in attaching such compounds to [***] and (c) any related raw materials and reagents SGI provides to Licensee pursuant to the Research Program, in each case to the extent included in or covered by the SGI Technology. Drug Conjugation Materials shall also include Improvements to Drug Conjugation Materials and any additional [***] compounds that are included in New Technologies and that the Parties agree to include under this Agreement pursuant to Section 3.3.2.

**1.1.17** "**Drug Conjugation Technology**" means (a) [***] compounds such as [***] and [***] and certain [***] and [***] thereof, and methods of making and using such [***] compounds (b) compositions and methods useful for attaching the foregoing [***] compounds to [***] and (c) any related assays and methods SGI provides to Licensee pursuant to the Research Program.

**1.1.18** "**Effective Date**" means the date set forth in the first line of this Agreement.

**1.1.19** "**Events of Force Majeure**" has the meaning set forth in Article 15.

**1.1.20** "**Exclusive License**" has the meaning set forth in Section 3.1.

**1.1.21 "Exclusive License Renewal Fee"** has the meaning set forth in Section 6.2.

**1.1.22** "**Existing Third Party Royalties**" has the meaning set forth in Section 6.4.1.

**1.1.23 "FD&C Act"** means the federal Food, Drug & Cosmetic Act, as amended.

**1.1.24 "FDA"** means the United States Food and Drug Administration, and any successor agency thereto.

**1.1.25** "**Field**" means monoclonal antibody targeting applications for the treatment and diagnosis of conditions and diseases in humans and animals.

**1.1.26** "**First Commercial Sale**" means, in each country of the Territory, the first commercial sale of a Licensed Product by Licensee, its Affiliates or Sublicensees to a Third Party following, if required by law, Regulatory Approval and, when Regulatory Approval is not required by law, the first commercial sale in that country, in each case for use or consumption of such Licensed Product in such country by the general public.

**1.1.27 "Fiscal Year"** means any twelve-month period beginning on April 1st and ending on March 31st of succeeding year.

**1.1.28** "**FTE Fees**" has the meaning set forth in Section 6.1.2.

**1.1.29 "GAAP"** means generally accepted accounting principles in the United States.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**1.1.30 "Generic Product"** means, on a country-by-country basis, an ADC using or incorporating SGI Technology that binds selectively to the Designated Antigen: (i) the manufacture, use or sale of which [***] in such country (provided that an enforcement action is not currently proceeding pursuant to Section 9.3 based on such ADC); and (ii) [***].

**1.1.31 "Good Laboratory Practices"** means the then current standards for laboratory activities for pharmaceuticals, as set forth in the FD&C Act and applicable regulations and guidances promulgated thereunder, including without limitation the Code of Federal Regulations, as amended from time to time.

**1.1.32** "**Improvements**" means all patentable or non-patentable inventions, discoveries or other know-how developed and Controlled by either Party after the Effective Date that utilize, incorporate, derive directly from, directly relate to, are made using or are based directly on the SGI Technology; provided that Improvements shall not include any of the foregoing developed by SGI that, within a reasonable time period after such inventions, discoveries or know-how are made or identified, [***].

**1.1.33 "IND"** means (a) an Investigational New Drug Application filed with the FDA or its equivalent in any country outside the United States where a regulatory filing is required or obtained to conduct a clinical trial; or (b) with respect to any country where a regulatory filing is not required or obtained to conduct a clinical trial, the first enrollment of a patient in the first trial involving the first use of a Licensed Product in humans.

**1.1.34** "**Indemnitee**" has the meaning set forth in Section 14.2.

**1.1.35** "**Indemnitor**" has the meaning set forth in Section 14.2.

**1.1.36** "**Initiation**" means, with respect to a human clinical trial, the dosing of the first patient with a Licensed Product pursuant to the clinical protocol for the specified clinical trial.

**1.1.37** "**Joint Patents**" has the meaning set forth in Section 9.2.2.

**1.1.38** "**Liabilities**" has the meaning set forth in Section 14.1.1.

**1.1.39** "**Licensed Product**" means any and all products utilizing or incorporating an ADC: (a) the manufacture, use, sale, offer for sale, export or import of which [***]; or (b) [***].

**1.1.40 "Licensee ADC Know-How"** means all technical information, processes, formulae, data, inventions, methods, chemical compounds, biological or physical materials, know-how and trade secrets, other than Improvements, that are Controlled by Licensee, in each case that are not in the public domain and are developed by Licensee using SGI Technology that are necessary for identifying, developing, making, using or selling ADCs.

**1.1.41 "Licensee ADC Patents"** means all patent applications and patents that are Controlled by Licensee claiming inventions (other than Improvements) that are necessary for identifying, developing, making, using or selling ADCs made using SGI Technology.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**1.1.42 "Licensee Know-How"** means all technical information, processes, formulae, data, inventions, methods, chemical compounds, biological or physical materials, know-how and trade secrets, in each case that are not in the public domain, that relate to (a) [***], or (b) [***].

**1.1.43 "Licensee Patents"** means all patent applications and patents Controlled by Licensee that claim (a) [***], or (b) [***].

**1.1.44** "**Net Sales**" means, as to each calendar quarter, the gross invoiced sales prices charged for all Licensed Products sold by or for Licensee, its Affiliates and Sublicensees to independent Third Parties during such quarter, [***]:

**(a)** [***];

**(b)** [***];

**(c)** [***]; and

**(d)** [***].

All of the foregoing deductions from the gross invoiced sales prices of Licensed Products shall be determined in accordance with GAAP. In the event that Licensee, its Affiliates or Sublicensees make any adjustments to [***] after the associated Net Sales have been reported pursuant to this Agreement, the adjustments shall be reported and reconciled in the next report and payment of any royalties due.

**1.1.45** "[***]" means any [***] that either: (a) [***] or (b) [***] (x) [***] existing as of the Effective Date, or (y) [***]. [***] shall include without limitation [***] compounds, other than those included in the Drug Conjugation Materials as of the Effective Date, that SGI Controls during the Research Program Term.

**1.1.46** "**Notice of Dispute**" has the meaning set forth in Section 19.3.1.

**1.1.47** "**Parties**" means SGI and Licensee, and "Party" means either of them.

**1.1.48** "**Phase I Clinical Trial**" means a human clinical trial, the principal purpose of which is a preliminary determination of safety in healthy individuals or patients.

**1.1.49** "**Phase II Clinical Trial**" means a controlled dose clinical trial prospectively designed to evaluate the efficacy and safety of a candidate drug in the targeted patient population and to define the optimal dosing regimen.

**1.1.50** "**Phase III Clinical Trial**" means a controlled, and usually multi-center, clinical trial, involving patients with the disease or condition of interest to obtain sufficient efficacy and safety data to support Regulatory Approval of a candidate drug.

**1.1.51** "**Program Inventions**" has the meaning set forth in Section 9.1.1.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**1.1.52 "Program Licensee Patents"** has the meaning set forth in Section 9.3.3.

**1.1.53** "**Publication**" has the meaning set forth in Section 8.5.

**1.1.54** "**Regulatory Approval**" means final regulatory approval (including, where applicable, pricing approval in the event that actual sales do not take place before such approval) required to market a Licensed Product for a disease or condition in accordance with the applicable laws and regulations of a given country. In the United States, its territories and possessions, Regulatory Approval means approval of a New Drug Application ("NDA"), Biologics License Application ("BLA") or an equivalent by the FDA.

**1.1.55** "**Reports**" has the meaning set forth in Section 7.1.1.

**1.1.56** "**Research Fees**" has the meaning set forth in Section 6.1.2.

**1.1.57** "**Research Fees Report**" has the meaning set forth in Section 6.1.2.

**1.1.58** "**Research Plan**" means the plan for the Research Program agreed upon by the Parties and attached hereto as Schedule A.

**1.1.59** "**Research Program**" means the research program conducted pursuant to Article 2 and the Research Plan.

**1.1.60** "**Research Program Term**" means the term of the Research Program set forth in Section 2.2.

**1.1.61** "**Royalty Term**" means, on a Licensed Product-by-Licensed Product and country-by-country basis, until the later to occur of: (a) [***]; or (b) [***].

**1.1.62** "**SGI In-Licenses**" means the following agreements between SGI and the indicated Third Parties: (a) the License Agreement between [***] ("[***]") and SGI dated [***], as amended (the "[***]"); (b) the License Agreement between [***] ("[***]") and SGI dated [***], as amended (the "[***]"); and (c) any other license agreement between SGI and a Third Party covering [***] under which Licensee is granted a sublicense under this Agreement as provided in Section 3.3.2.

**1.1.63** "**SGI Know-How**" means any and all technical information, processes, formulae, data, inventions, methods, chemical compounds, biological or physical materials, know-how and trade secrets, in each case that are not in the public domain, that relate to or are useful to practice the Drug Conjugation Technology and that have been, or hereafter are during the Research Program Term, Controlled by SGI. SGI Know-How shall include Improvements Controlled by SGI but shall exclude New Technologies unless included pursuant to Section 3.3.2.

**1.1.64 "SGI Patents"** means:

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**(a)** any existing patents and patent applications listed in Schedule B to this Agreement, which shall be amended from time to time to reflect any other patents and patent applications;

**(b)** any patents and patent applications covering Improvements and, solely to the extent the parties so agree pursuant to Section 3.3.2, New Technologies, in each case that are Controlled by SGI;

**(c)** any future patents issued from any patent applications referred to above and any future patents issued from any continuation, continuation-in part (to the extent Controlled by SGI), or divisional of any of the foregoing patent applications or any patent applications from which the foregoing patents issued, in each case to the extent Controlled by SGI; and

**(d)** any reissues, reexaminations, confirmations, renewals, registrations, substitutions, extensions, or counterparts of any of the foregoing, in each case to the extent Controlled by SGI.

For clarification, SGI's interest in any Joint Patents shall not be considered SGI Patents.

**1.1.65** "**SGI Technology**" means the SGI Patents and the SGI Know-How.

**1.1.66** "**Sublicensee**" means any person or entity that is granted a sublicense under the SGI Technology by Licensee or its Affiliates in accordance with the terms of this Agreement.

**1.1.67 "Supply Fees"** has the meaning set forth in Section 6.1.2.

**1.1.68** "**Term**" has the meaning set forth in Article 13.

**1.1.69** "**Territory**" means all countries in the world.

**1.1.70** "**Third Party**" means any person or entity other than Licensee, SGI and their respective Affiliates.

**1.1.71** "**Valid Patent Claim**" means an unexpired claim of an issued patent which has not been found to be unpatentable, invalid or unenforceable by an unreversed and unappealable decision of a court or other authority in the subject country.

**1.2** Certain Rules of Interpretation in this Agreement and the Schedules.

**1.2.1** Unless otherwise specified, all references to monetary amounts are to United States of America currency (U.S. Dollars);

**1.2.2** The preamble to this Agreement and the descriptive headings of Articles and Sections are inserted solely for convenience of reference and are not intended as complete or accurate descriptions of the content of this Agreement or of such Articles or Sections;

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**1.2.3** The use of words in the singular or plural, or with a particular gender, shall not limit the scope or exclude the application of any provision of this Agreement to such person or persons or circumstances as the context otherwise permits;

**1.2.4** The words "include" and "including" have the inclusive meaning frequently identified with the phrases "without limitation" and "but not limited to";

**1.2.5** Unless otherwise specified, time periods within or following which any payment is to be made or act is to be done shall be calculated by excluding the day on which the period commences and including the day on which the period ends and by extending the period to the next business day following if the last day of the period is not a business day in the jurisdiction of the Party to make such payment or do such act; and

**1.2.6** Whenever any payment is to be made or action to be taken under this Agreement is required to be made or taken on a day other than a business day, such payment shall be made or action taken on the next business day following such day to make such payment or do such act.

## ARTICLE 2 - RESEARCH PROGRAM

**2.1 Objective and Conduct of the Research Program.** Licensee intends to conduct a Research Program, with SGI's support, to evaluate ADCs for research, development and commercialization under this Agreement. Licensee acknowledges that, in addition to the licenses to the SGI Patents granted hereunder, the SGI Know-How transferred to Licensee during the Research Program contains valuable information that is critical to Licensee's development of ADCs hereunder. All research work performed by Licensee and SGI hereunder shall be performed in a good scientific manner and in compliance with all applicable laws.

**2.2 Term of the Research Program.** The term of the Research Program shall initially be for a period of two (2) years after the Effective Date (the "Research Program Term"), unless terminated earlier in accordance with Article 13. Licensee shall have a one-time right to extend the Research Program Term for an additional year by providing written notice to SGI not less than [***] prior to the expiration of the initial Research Program Term. SGI shall submit, within [***] from the expiration of the Research Program Term (in the case that the Research Program Term is extended by Licensee as set forth above, within [***] from the expiration of such extended term), a written report to Licensee which describes the research activities conducted by SGI during such Research Program Term.

**2.3 Delivery of Drug Conjugation Materials.** In support of the Research Program, during the Research Program Term, SGI will (a) deliver Drug Conjugation Materials to Licensee in accordance with the Research Plan; and (b) at Licensee's request, provide Licensee with the [***] provided to the Licensee to enable [***]. All Drug Conjugation Materials and other information provided by SGI to Licensee hereunder will be deemed Confidential Information of SGI pursuant to Article 8.

**2.4 SGI Preparation of ADCs.** SGI will use reasonable commercial efforts to prepare ADCs using Antibodies supplied by Licensee to SGI which shall meet and satisfy

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

specifications mutually agreed upon by SGI and Licensee, and shall deliver the resulting ADCs to Licensee in accordance with the Research Plan.

**2.5 Payment.** Licensee shall pay SGI the amounts set forth in Section 6.1.2 for any research efforts or other assistance provided by SGI.

**2.6 Ownership of Data.** Licensee shall own all right, title and interest in and to the data, research and results related specifically to ADCs arising out of activities conducted pursuant to the Research Program ("ADC Data"). SGI shall disclose to Licensee any ADC Data that are developed, conceived, or otherwise made, solely or jointly, by or on behalf of SGI in the course of, as a result of, or in connection with the Research Program, promptly after the same is developed, conceived or otherwise made. SGI hereby assigns to Licensee any and all right, title, and interest SGI may have in, to and under ADC Data; provided, that SGI may retain copies of, and use, all ADC Data for any purpose related to this Agreement, including but not limited to, patent prosecution and defense pursuant to [***].

**2.7 Disclaimer.** EXCEPT AS MAY BE OTHERWISE EXPRESSLY PROVIDED IN ARTICLE 12 OR THE RESEARCH PLAN, SGI MAKES NO REPRESENTATIONS AND GRANTS NO WARRANTIES, EXPRESS OR IMPLIED, EITHER IN FACT OR BY OPERATION OF LAW, BY STATUTE OR OTHERWISE, REGARDING THE DRUG CONJUGATION MATERIALS OR ANY ADCs PREPARED BY SGI, INCLUDING ANY WARRANTY OF QUALITY, MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR USE OR PURPOSE.

## ARTICLE 3 - EXCLUSIVE LICENSE

**3.1 Exclusive License Grant.**

**3.1.1** Upon execution of this Agreement, subject to the terms and conditions of this Agreement, including payment of the ADC Access Fee set forth in Section 6.1.1, SGI shall be automatically deemed to grant to Licensee a worldwide, exclusive (even as to SGI), royalty-bearing license under the SGI Technology, with the right to sublicense as permitted in Section 3.2, to discover, research, develop, make, have made, import, export, use, offer for sale, and sell Licensed Products that bind selectively to the Designated Antigen within the Field in the Territory (the "Exclusive License"). The Exclusive License shall continue for the Royalty Term, unless earlier terminated pursuant to Article 13, subject to Licensee's compliance with the terms and conditions of this Agreement, including payment of all applicable fees, milestones and royalties hereunder.

**3.1.2** During the Term, SGI shall not carry out, by itself or in collaboration with any third parties, to discover, research, develop, make, have made, import, export, use, offer for sale, and sell any antibody-drug conjugate products that bind selectively to the Designated Antigen within the Field in the Territory.

**3.2 Rights to Sublicense.**

**3.2.1** Licensee shall have the right to grant sublicenses of the rights granted to Licensee pursuant to this Agreement to any Affiliate or any Third Party, subject to the terms and

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

conditions of the SGI In-Licenses listed on Schedule C. Licensee shall not have the right to sublicense the SGI Technology outside the scope of the license granted in Section 3.1, including to develop further Drug Conjugation Technology on a stand-alone basis or to create antibody-drug conjugates that include or are based upon any antibodies that bind selectively to an antigen other than the Designated Antigen.

**3.2.2** Licensee agrees to contractually obligate any Sublicensee to make all payments due to SGI pursuant to this Agreement by reason of achievement of any fees, milestones and royalties set forth herein, as well as to comply with all terms of this Agreement applicable to Licensee (including all terms of this Agreement identified as applicable to Sublicensee). Licensee shall also require any such Sublicensee to agree in writing to keep books and records and permit SGI to review the information concerning such books and records in accordance with the terms of this Agreement.

**3.2.3** Licensee shall notify SGI of each sublicense granted to Affiliates or Third Parties and shall provide SGI with the name and address of each Sublicensee and a description of the rights granted and the territory covered by each Sublicensee.

**3.3 Improvements and New Technologies.**

**3.3.1 Improvements.** In the event that, during the Term, Licensee conceives, develops or reduces to practice an Improvement that relates to the Drug Conjugation Technology, Licensee shall promptly notify SGI of the discovery of such Improvement. SGI shall own all such Improvements that relate to the Drug Conjugation Technology and, to the extent that such Improvements shall have been conceived, developed or reduced to practice by Licensee, Licensee hereby assigns all of its right, title and interest therein to SGI. SGI's interest in any such Improvements that it Controls shall be included in the SGI Technology and made available to Licensee via the Exclusive License provided in Article 3. Licensee may use such Improvement assigned to SGI by Licensee for any purpose within the scope of the Exclusive License granted herein solely during the Term of this Agreement.

**3.3.2 [***].** Subject to the bona fide rights of Third Parties that may exist, Licensee shall have the right to practice any New Technologies in the Research Program pursuant to the Exclusive License granted under Article 3 as follows: SGI shall [***] of any [***] to which it obtains rights (with the right to grant sublicenses thereunder) during the Research Program Term by providing to Licensee a [***] of the [***], including all [***] under which Licensee would be able to access such [***]. If Licensee is interested in practicing such [***], the Parties shall discuss in good faith modifications to this Agreement to reflect the terms governing Licensee's access to any [***] pursuant to this Agreement, which shall include without limitation Licensee's agreement to [***]; provided that the [***] shall be deemed to include [***] and [***] (as applicable) relating to or covering such [***] only after the Parties execute an amendment to this Agreement specifying such modified terms.

**3.3.3 Amendment of Schedule B.** Schedule B shall be amended from time to time to add the patents and patent applications Controlled by SGI covering New Technologies or Improvements in accordance with this Section 3.3.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**3.4 Compliance with the SGI In-Licenses.**

**3.4.1** Licensee, its Affiliates and Sublicensees shall comply with all obligations, covenants and conditions of the SGI In-Licenses listed in Schedule C, and any amendments thereto following written disclosure thereof to Licensee, that apply under each of the SGI In-Licenses. The Parties agree that BMS is a Third Party beneficiary to this Agreement to the extent SGI Technology includes technology sublicensed under the BMS Agreement.

**3.4.2** SGI will not enter into any amendment to an SGI In-License that imposes additional monetary obligations on Licensee or materially reduces the scope of the licenses granted to Licensee hereunder without the prior written consent of Licensee.

**3.5 License to SGI.** Subject to the provisions of this Agreement, Licensee hereby grants to SGI, during the Research Program Term, a non-exclusive, royalty-free, sublicenseable license under the Licensee Patents and Licensee Know-How in the Territory, to enable SGI to conduct the Research Program.

## ARTICLE 4 - TECHNOLOGY DISCLOSURE

**4.1 Disclosure of Drug Conjugation Technology.** During the Research Program Term, SGI shall (a) disclose to Licensee such SGI Know-How as is reasonably useful to enable Licensee to use the Drug Conjugation Materials and Drug Conjugation Technology as provided in the Research Plan or to practice the Exclusive License on the terms, and subject to the conditions, of this Agreement and (b) upon Licensee's reasonable request and with adequate notice to SGI, make available to Licensee at SGI's facilities, SGI's personnel to provide a reasonable amount of technical assistance and training to Licensee's personnel. Licensee shall pay to SGI for such assistance an amount equal to the FTE Fees in accordance with Section 6.1.2 for SGI employees providing such assistance.

## ARTICLE 5 - DEVELOPMENT AND COMMERCIALIZATION; MANUFACTURING

**5.1 Diligence.** Licensee shall use commercially reasonable efforts to research, develop, commercialize and market Licensed Products, such efforts to be consistent with the exercise of prudent scientific and business judgment and comparable to the efforts Licensee applies to its other projects of similar potential and market size. Without limiting the foregoing, Licensee shall, as commercially prudent, (a) [***], (b) [***], and (c) [***].

**5.2 Joint Research Meetings.** During the Research Program Term, SGI and Licensee shall hold joint meetings, from time to time, in accordance with the Research Plan, to discuss and consult on research and development activities of the Research Program, by video conference, teleconference or face to face, as mutually agreed between the Parties.

**5.3 Funding and Progress Reports.** Except as set forth herein, as between SGI and Licensee, [***]. Licensee shall keep SGI informed in a timely manner as to the progress of the development of Licensed Products. Beginning on [***], and [***] thereafter within [***] following the end of each [***], Licensee shall provide SGI with a written report summarizing Licensee's significant activities related to research and development of Licensed Products and status of clinical trials and applications for Regulatory Approval necessary for marketing

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

Licensed Products. Such reports shall be deemed Licensee's Confidential Information for the purposes of Article 8.

**5.4 Manufacturing.** Except as otherwise expressly set forth in this Agreement, Licensee shall be responsible for all manufacturing and supply of Licensed Products. Notwithstanding the foregoing, at any time during the Term of this Agreement [***]. Licensee shall [***]. In the event SGI [***], the Parties shall [***], including [***].

**ARTICLE 6 - FEES, MILESTONES AND ROYALTIES.**

**6.1 Research Fees.** Licensee shall pay to SGI the following amounts in consideration of the Research Program:

**6.1.1** Within [***] of the Effective Date, Licensee shall pay to SGI the sum of Four Million U.S. Dollars ($4,000,000) by wire transfer of immediately available funds (the "ADC Access Fee").

**6.1.2** Licensee shall pay SGI at an annual rate of [***] per FTE who performs research, development, consultation or support work as requested by Licensee pursuant to this Agreement (the "FTE Fees"). Commencing upon the [***] of the Effective Date and upon [***] thereafter, the FTE Fees will [***] in accordance with the [***]. The Parties agree that the total FTE Fees for the first [***] of the Research Program Term shall not exceed an amount [***] without the written consent of Licensee; provided, however, that SGI shall not be required to provide any services requested by Licensee under this Agreement if such services would exceed the limit set forth above unless Licensee provides its written consent and agrees to reimburse SGI for such excess FTE Fees. Upon renewal of the Research Program Term as provided for in Section 2.2 above, Licensee and SGI shall mutually agree upon a budget for FTE Fees to be incurred during such [***] renewal period. Licensee shall also pay SGI for all Drug Conjugation Materials supplied by SGI to Licensee hereunder at the rate of [***] of SGI's Cost of Goods therefor (the "Supply Fees"). The FTE Fees and the Supply Fees are collectively referred to herein as the "Research Fees". Within [***] after the end of each [***], SGI shall submit a report to Licensee supporting the calculation of the Research Fees due for such Calendar Quarter (a "Research Fees Report"). Licensee shall pay all Research Fees to SGI within [***] of receipt of each Research Fees Report.

**6.2 License Maintenance Fees.** Licensee shall be required to make a payment to SGI in the sum of [***] by wire transfer of immediately available funds (the "Exclusive License Renewal Fee") on [***] of the Effective Date until Licensee receives the first Regulatory Approval for a Licensed Product in the Territory. Notwithstanding the foregoing, the Exclusive License Renewal Fee will be offset by the amount of any payments made under Section 6.5 of this Agreement during the [***] period preceding the date on which an Exclusive License Renewal Fee is due. If Licensee fails to make any payment required by this Section 6.2 within [***] after written notice thereof from SGI, then the Exclusive License will terminate immediately.

**6.3 Royalties Payable by Licensee.** In consideration for the Exclusive License granted to Licensee herein, during the Royalty Term, and subject to Sections 6.4.2 and 6.4.3,

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

Licensee shall pay to SGI royalties on Net Sales of Licensed Products on a Licensed Product by Licensed Product basis. Such royalties shall be paid at the following rates as set forth below:

**(a)** [***] of the first [***] in aggregate [***] of each [***] in each [***];

**(b)** [***] of the portion of aggregate [***] of each [***] between [***] and [***] in each [***];

**(c)** [***] of the portion of aggregate [***] of each [***] in excess of [***] in each [***]; and

**(d)** In establishing the royalty structure of this Section 6.3, the Parties recognize, and Licensee acknowledges, the substantial value of the various actions and investments undertaken by SGI prior to the Effective Date. Such value is significant and in addition to the value of SGI's grant to Licensee of the Exclusive License pursuant to Section 3.1, as it enables the rapid and effective development and commercialization of the Licensed Products in the Territory. Therefore, the Parties agree that the royalty payments calculated as a percentage of [***] (plus the fees and milestone payments provided for elsewhere herein) provide fair compensation to SGI for these additional benefits.

**(e)** If and for so long as there is a [***], then the [***]:

| | |
|---|---|
| [***] | [***] |
| [***] | [***] |
| [***] | [***] |
| [***] | [***] |
| [***] | [***] |

**6.4 <u>Third Party Royalties</u>.**

**6.4.1** Licensee shall be solely responsible for paying all royalties owed to Third Parties by either Licensee or SGI on account of sales of Licensed Products, including royalties owed due to use of the SGI Technology. SGI represents and warrants that **(i)** [***], (ii) it has provided Licensee with true and complete copies, except for certain redactions, of all agreements and amendments to the extent such agreements are relevant to determining the amount of royalties owed and (iii) [***].

**6.4.2** If the sum of (a) the royalties payable by Licensee, its Affiliates or Sublicensees to SGI under [***], (b) the Existing Third Party Royalties payable by Licensee, its

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

Affiliates or Sublicensees pursuant to Section 6.4.1 and (c) any other royalties payable by Licensee, its Affiliates or Sublicensees to Third Parties necessary in order to practice the SGI Technology [***] of a [***] in any [***], then the royalties otherwise due and payable by Licensee under Section 6.3 shall be [***] of any royalties due by Licensee with respect to [***] in such year that [***] of such [***]; provided, however, that the royalty payments due and payable to SGI pursuant to Section 6.3 with respect to a Licensed Product in any [***] shall not be [***] to the extent the royalty payments due to SGI are not [***]. For clarity, (c) in this Section 6.4.2 shall not include the royalties payable to the UAB Research Foundation, which has granted Licensee an exclusive license to use patents concerning Antibodies.

**6.4.3** If Licensee commercializes a Licensed Product and must pay a royalty to [***] under the [***] pursuant to Section 6.4.1 above and such royalty is reduced to less than [***] of [***] for a [***] (the amount of any such [***]") by reason of negotiation by SGI and [***], then the royalty otherwise due and payable by Licensee to SGI under Section 6.3 for such Licensed Product shall be increased by an amount equal to [***] of the [***].

**6.5 Milestone Payments.** As additional consideration for the licenses, rights and privileges granted to it hereunder, Licensee shall pay to SGI the following milestone payments within [***] of the first occurrence in the Territory of each event set forth below with respect to the first Licensed Product to achieve such event, whether such events are achieved by Licensee, its Affiliates or Sublicensees, as follows:

**(a)** Upon decision by Licensee to [***];

**(b)** Upon Initiation of a [***];

**(c)** Upon Initiation of a [***];

**(d)** Upon Initiation of a [***];

**(e)** Upon receipt of [***];

**(f)** Upon receipt of [***];

**(g)** Upon receipt of [***];

**(h)** Upon the date of [***]; and

**(i)** Upon the date of [***].

If any of the milestones in (a) through (e) above is achieved before one or more preceding milestones, then such preceding milestone payment(s) shall be deemed to become due within thirty (30) days after the achievement of the subsequent milestone. Furthermore if either of the milestones in (f) or (g) above is achieved before any of the preceding milestones in (a) through (d) above, then payments for all such preceding milestones (a) through (d) that have not yet been paid shall be deemed to become due within thirty (30) days after the achievement of either of the milestones in (f) or (g) above.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

For avoidance of doubt, any milestones in (a) through (g) that are paid for the first Licensed Product shall not apply to any subsequent Licensed Product.

**6.6 Payment Terms.** Royalties shown to have accrued by each Report provided for under Article 7 of this Agreement shall be paid within [***] from such Report is due pursuant to Section 7.1.3.

**6.7 Payment Method.** All payments by Licensee to SGI under this Agreement shall be paid in U.S. dollars, and all such payments shall be made by bank wire transfer in immediately available funds to the bank account designated by SGI in writing.

**6.8 Exchange Control.** If at any time legal restrictions prevent the prompt remittance of part or all royalties with respect to any country in the Territory where Licensed Product is sold, payment shall be made through such lawful means or method as the Parties reasonably shall determine.

**6.9 Withholding Taxes.** Except as otherwise provided below, all amounts due from Licensee to SGI provided under this Agreement are written as gross amounts. Licensee shall be entitled to deduct the amount of any withholding taxes payable or required to be withheld by Licensee, its Affiliates or Sublicensees, to the extent Licensee, its Affiliates or Sublicensees pay such withheld amounts to the appropriate governmental authority on behalf of SGI, if any. Licensee shall use commercially reasonable efforts to minimize any such taxes, levies or charges required to be withheld on behalf of SGI by Licensee, its Affiliates or Sublicensees. Licensee promptly shall deliver to SGI proof of payment of all such taxes, levies and other charges, together with copies of all communications from or with such governmental authority with respect thereto, and shall cooperate with SGI in seeking any related tax credits that may be available to SGI with respect thereto.

**ARTICLE 7 - ROYALTY REPORTS AND ACCOUNTING**

**7.1 Reports, Exchange Rates.**

**7.1.1** During the Royalty Term, Licensee shall furnish to SGI, with respect to each [***], a written report showing, on a consolidated basis in reasonably specific detail and on a country-by-country basis, (a) the gross sales of Licensed Products sold by Licensee, its Affiliates and its Sublicensees in the Territory during the [***] and the calculation of Net Sales from such gross sales; (b) the royalties payable in U.S. dollars, if any, which shall have accrued hereunder based upon such Net Sales of Licensed Products; (c) the withholding taxes, if any, required by law to be deducted in respect of such royalties; (d) the dates of the First Commercial Sale of each Licensed Product in each country in the Territory, if it has occurred during the corresponding [***]; and (e) the exchange rates (as determined pursuant to Section 7.1.4 herein) used in determining the royalty amount expressed in U.S. dollars (collectively, "Reports").

**7.1.2** Licensee shall include in each permitted sublicense granted by it pursuant to this Agreement a provision requiring its Affiliates and Sublicensees to make Reports to Licensee within [***] of the close of each [***] and to keep and maintain records of sales made pursuant to such sublicense as if such sales were by Licensee for the purpose of Section 7.1.1.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**7.1.3** Reports shall be due on the [***] following the end of the Calendar Quarter to which such Report relates. Licensee shall keep complete and accurate records in sufficient detail to properly reflect all gross sales and Net Sales and to enable the royalties payable hereunder to be determined.

**7.1.4** With respect to sales of Licensed Products invoiced in U.S. dollars, the gross sales, Net Sales, and royalties payable shall be expressed in U.S. dollars. With respect to sales of Licensed Products invoiced in a currency other than U.S. dollars, the gross sales, Net Sales and royalties payable shall be expressed in the currency of the invoice issued by the Party making the sale together with the U.S. dollars equivalent of the royalty due, [***].

**7.2 Audits.**

**7.2.1** Upon the written request of SGI and with at least [***] prior written notice, but not more than [***] in any [***], Licensee shall permit an independent certified public accounting firm of internationally recognized standing, selected by SGI and reasonably acceptable to Licensee, at [***], to have access during normal business hours to such of the records of Licensee as required to be maintained under this Agreement to verify the accuracy of the Reports due hereunder. Such accountants may audit records relating to Reports made for any year ending not more than [***] prior to the date of such request. The accounting firm shall disclose to SGI only whether the Reports were correct or not, and the specific details concerning any discrepancies. No other information obtained by such accountants shall be shared with SGI.

**7.2.2** If such accounting firm concludes that any royalties were owed but not paid to SGI, Licensee shall pay the additional royalties within [***] of the date SGI delivers to Licensee such accounting firm's written report so concluding. The fees charged by such accounting firm shall be paid by SGI; provided, however, if the audit discloses that the royalties payable by Licensee for the audited period are more than [***] of the royalties actually paid for such period, then [***] charged by such accounting firm. If such accounting firm concludes that the royalties paid were more than what was owed during such period, SGI shall refund the overpayments within [***] of the date SGI receives such accounting firm's written report so concluding.

**7.3 Confidential Financial Information.** SGI shall treat all financial information subject to review under this Article 7 or under any sublicense agreement as Confidential Information of Licensee as set forth in Article 8, and shall cause its accounting firm to retain all such financial information in confidence under terms substantially similar to those set forth in Article 8.

## ARTICLE 8 – CONFIDENTIALITY

**8.1 Non-Disclosure Obligations.** Except as otherwise provided in this Article 8, during the Term and for a period of [***] thereafter, each Party shall maintain in confidence, and use only for purposes as expressly authorized and contemplated by this Agreement, all confidential or proprietary information, data, documents or other materials supplied by the other Party under this Agreement and marked or otherwise identified as "Confidential." Confidential Information of SGI shall include SGI Know-How, Drug Conjugation Technology disclosed to

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

Licensee that is Controlled by SGI, SGI's interest in any Improvements and [***]. Confidential Information of a Party may also include information relating to such Party's research programs, development, marketing and other business practices and finances. For purposes of this Agreement, information and data described above shall be hereinafter referred to as "Confidential Information." Each Party shall use at least the same standard of care as it uses to protect its own Confidential Information to ensure that its and its Affiliates' employees, agents, consultants and clinical investigators only make use of the other Party's Confidential Information for purposes as expressly authorized and contemplated by this Agreement and do not disclose or make any unauthorized use of such Confidential Information.

**8.2 Permitted Disclosures.** Notwithstanding the foregoing, but subject to the last sentence of this Section 8.2, the provisions of Section 8.1 shall not apply to information, documents or materials that the receiving Party can conclusively establish with competent evidence:

**(a)** have become published or otherwise entered the public domain other than by breach of this Agreement by the receiving Party or its Affiliates;

**(b)** are permitted to be disclosed by prior consent of the other Party;

**(c)** have become known to the receiving Party by a Third Party, provided such Confidential Information was not obtained by such Third Party directly or indirectly from the other Party under this Agreement on a confidential basis;

**(d)** prior to disclosure under the Agreement, was already in the possession of the receiving Party, its Affiliates or Sublicensees, provided such Confidential Information was not obtained directly or indirectly from the other Party under this Agreement;

**(e)** are required to be disclosed by the receiving Party to comply with any applicable law, regulation or court order, or are reasonably necessary to obtain patents, copyrights or authorizations to conduct clinical trials with, and to commercially market, Licensed Product(s), provided that the receiving Party shall provide prior notice of such disclosure to the other Party and take reasonable and lawful actions to avoid or minimize the degree of disclosure;

**(f)** solely to the extent reasonably necessary in a patent application claiming Program Inventions made hereunder to be filed with the United States Patent and Trademark Office and/or any similar foreign agency, provided that the Party filing the patent shall provide at least thirty (30) days prior written notice of such disclosure to the other Party and take reasonable and lawful actions to avoid or minimize the degree of disclosure;

**(g)** to a Sublicensee as permitted hereunder, provided that such Sublicensee is then subject to obligations of confidentiality and limitations on use of such Confidential Information substantially similar to those contained herein; and

**(h)** to a bona fide collaborator or manufacturing, development or sales contractor or partner, but only to the extent directly relevant to the collaboration, partnership or contract and provided that such collaborator, partner or contractor is then subject to obligations

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

of confidentiality and limitations on use of such Confidential Information substantially similar to those contained herein.

Notwithstanding the disclosures permitted under subsections (e)-(h), if the information, documents or materials covered by such subsection is otherwise protected by obligations of confidentiality, then the confidentiality obligations of Section 8.1 shall still apply.

**8.3 Terms of the Agreement.** Licensee and SGI shall not disclose any terms or conditions of this Agreement to any Third Party other than a prospective Sublicensee or in connection with either Party's merger or acquisition discussions without the prior consent of the other Party, except as required by applicable laws, regulations or a court order or to comply with rules of a securities exchange, in which case the disclosing Party shall provide notice to the other Party and take reasonable and lawful actions to avoid or minimize the degree of such disclosures, including obtaining confidentiality obligations from prospective Sublicensees or merger or acquisition candidates at least as protective as those provided for herein. Notwithstanding the foregoing, Licensee may disclose and provide a copy of this Agreement to the UAB Research Foundation; provided, that the UAB Research Foundation maintains the confidentiality of this Agreement pursuant to confidentiality provisions at least as protective as those provided for herein.

**8.4 Press Releases and Other Disclosures to Third Parties.** Neither SGI nor Licensee will, without the prior consent of the other, issue any press release or make any other public announcement or furnish any statement to any person or entity (other than either Parties' respective Affiliates) concerning the existence of this Agreement, its terms and the transactions contemplated hereby, except for (i) an initial press release mutually agreed upon by the Parties, (ii) disclosures made in compliance with Sections 8.2 and 8.3, (iii) attorneys, consultants, and accountants retained to represent the Parties in connection with the transactions contemplated hereby.

**8.5 Publications.** Neither Party may publish, present or announce results of ADCs developed hereunder either orally or in writing (a "Publication") without complying with the provisions of this Section 8.5. The other Party shall have [***] from receipt of a proposed Publication to provide comments and/or proposed changes to the publishing Party. The publishing Party shall take into account the comments and/or proposed changes made by the other Party on any Publication and shall agree to designate employees or others acting on behalf of the other Party as co-authors on any Publication describing results to which such persons have contributed in accordance with standards applicable to authorship of scientific publications. If the other Party reasonably determines that the Publication would entail the public disclosure of such Party's Confidential Information and/or of a patentable invention upon which a patent application should be filed prior to any such disclosure, submission of the concerned Publication to Third Parties shall be delayed for [***] for deleting any such Confidential Information of the other Party (if the other Party has requested deletion thereof from the proposed Publication), and/or the drafting and filing of a patent application covering such invention, provided such additional period shall not exceed [***] from the date the publishing Party first provided the proposed Publication to the other Party.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**ARTICLE 9 - INVENTIONS AND PATENTS**

**9.1 Ownership of Inventions.**

**9.1.1 Disclosure of Inventions.** Each Party shall promptly disclose to the other Party, including without limitation at the joint meetings provided in Section 5.2, the making, conception or reduction to practice of any inventions directly arising out of activities conducted under this Agreement ("Program Inventions").

**9.1.2 Ownership of Program Inventions.** All right, title and interest in all Program Inventions that are discovered, made or conceived as part of the activities conducted under this Agreement shall be owned as follows:

**(a)** [***] shall own all Program Inventions that (i) are invented solely by one or more employees, agents or consultants of [***] and do not primarily relate to the [***] or (ii) are invented solely or jointly by employees, agents or consultants of [***] and/or [***] and primarily relate to the [***]. To the extent that any such Program Inventions relating primarily to the [***] shall have been invented by [***] and are owned by [***], [***] hereby assigns all of its right, title and interest therein to [***];

**(b)** [***] shall own all Program Inventions that (i) are invented solely by one or more employees, agents or consultants of [***] and do not primarily relate to the [***] or (ii) are invented solely or jointly by employees, agents or consultants of [***] and/or [***] and primarily relate to the [***]. To the extent that any Program Inventions relating primarily to Drug Conjugation Technology shall have been invented by [***] and are owned by [***], Licensee hereby assigns all of its right, title and interest therein to [***]; and

**(c)** Except as set forth in Sections 9.1.2(a) and 9.1.2(b), Licensee and SGI shall jointly own all other Program Inventions. For purposes of clarification and notwithstanding anything to the contrary set forth herein, all Program Inventions that relate primarily to ADCs, including without limitation, patents or patent applications claiming compositions of matter or methods of use of Licensed Products, shall be jointly owned.

**(d)** Inventorship, for purposes of this Agreement, shall be determined in accordance with applicable national patent laws. To the extent permissible under applicable national patent laws, each Party will cause each employee and contractor conducting work on such Party's behalf under this Agreement to be subject to a contract that (a) compels prompt disclosure to the Party of all inventions and other intellectual property conceived, created or reduced to practice by such employee or contractor during his or her performance under the Research Program and (b) assigns to such Party all right, title and interest in and to all such inventions and other intellectual property and all related Patents. Each Party will require each employee and contractor conducting work on such Party's behalf under this Agreement to maintain records in sufficient detail and in a good scientific manner appropriate for patent purposes to properly reflect all work done. To the extent any royalties are owed to an employee or contractor of a Party relating to an invention, that Party shall be solely responsible for such royalties.

**9.2 Patent Prosecution and Maintenance.**

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**9.2.1** SGI shall be responsible for and shall control the preparation, filing, prosecution, grant and maintenance of all SGI Patents. Throughout the Term of this Agreement, SGI shall, at its sole expense, prepare, file, prosecute and maintain such SGI Patents in good faith consistent with its customary patent policy and its reasonable business judgment, and shall consider in good faith the interests of Licensee in so doing.

**9.2.2** Each Party shall be responsible for and shall control the preparation, filing, prosecution, grant and maintenance, of any patents and patent applications claiming Program Inventions owned **solely** by it in accordance with [***] and shall, at its [***] in good faith consistent with [***]. Patents and patent applications claiming Program Inventions [***] by both Parties in accordance with Section 9.1 ("Joint Patents") shall be [***]. The costs for all other Joint Patents shall be [***]; provided, that the [***].

**9.2.3** If either Party decides not to continue prosecuting any Joint Patents or not to maintain any Joint Patent claiming a Program Invention then such Party shall promptly so notify the other Party (which notice shall be at least [***] before any relevant deadline for such patent). Thereafter, the other Party shall have the right to prosecute or maintain such patent, at such Party's [***].

**9.2.4** The Parties shall at all times fully cooperate with each other in order to reasonably implement the foregoing provisions of this Section 9.2. Such cooperation may include each Party's execution of necessary legal documents, coordinating filing and/or prosecution of applications for Joint Patents to avoid potential conflicts with SGI Patents during prosecution (including novelty, enablement, estoppel and double patenting, execution of amendments and documents for reliance on the CREATE Act, if mutually agreed upon by both parties), and the assistance of each Party's relevant personnel. Without limiting the foregoing, it is understood that even if a Party is permitted to reference the other Party's technology in a patent application pursuant to this Agreement, the filing Party shall not file any such patent application without first confirming with the non-filing Party in writing that any such filing could not reasonably be expected to adversely affect the non-filing Party's patent strategy. If the non-filing Party determines that any such filing could adversely affect its filing strategy, the filing Party shall not file any such patent application and the Parties shall cooperate in accordance with this Section 9.2.4 to determine a strategy that would protect each Party's interests, including, without limitation, delaying the filing or co-owning such patent application, as the case may be. Except as otherwise expressed authorized in this Agreement, Licensee shall not disclose and/or claim in any patent application, patent or publication any Confidential Information within the SGI Technology, Drug Conjugation Technology or Drug Conjugation Materials without SGI's prior written consent. Except as otherwise expressly authorized in this Agreement, SGI shall not disclose and/or claim in any patent application, patent or publication any Confidential Information within the Licensee technology without Licensee's prior written consent.

**9.3 Enforcement of SGI Patents.**

**9.3.1** SGI shall have the first right, at its sole expense, but not the obligation, to determine the appropriate course of action to enforce the SGI Patents or otherwise abate the infringement thereof, to take (or refrain from taking) appropriate action to enforce the SGI Patents, to control any litigation or other enforcement action and to enter into, or permit, the

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

settlement of any such litigation or other enforcement action with respect to the SGI Patents. SGI shall in good faith consider the interests of Licensee in conducting the foregoing activities. All monies recovered upon the final judgment or settlement of any such suit to enforce any SGI Patents with respect to the manufacture, use or sale by Third Parties of products competitive with Licensed Products or technologies competitive with Drug Conjugation Technology shall be [***]. Licensee shall reasonably cooperate with SGI in any such action at SGI's expense, to enforce the SGI Patents, including being joined as a party to such action if necessary. In no event may SGI assert an argument or settle a suit in a manner that would materially prejudice the rights granted to Licensee under this Agreement without Licensee's prior written consent.

**9.3.2** If SGI fails to take any action to enforce the SGI Patents or control any litigation with respect to the SGI Patents with respect to the manufacture, use or sale by Third Parties of products competitive with Licensed Products or technologies competitive with Drug Conjugation Technology within a period of [***] after the Parties receive reasonable notice of the infringement of the SGI Patents, or in the case of an ANDA filing, within [***] of receipt of the notice of submission of the ANDA filing, then Licensee shall have the right to bring and control any such action by counsel of its own choice, at its [***]. In such case, all monies recovered upon the final judgment or settlement of any such suit to enforce any SGI Patents shall be [***]. In such a case, SGI shall cooperate fully with Licensee, at [***], in its efforts to enforce the SGI Patents, including being joined as a party to such action if necessary. In no event may Licensee assert an argument or settle a suit in a manner which would render a claim in the SGI Patents invalid or unenforceable without SGI's prior written consent.

**9.3.3** Licensee shall have the right, at its [***], to determine the appropriate course of action to enforce patents claiming Program Inventions owned [***] by [***] in accordance with [***], or otherwise to abate the infringement thereof, to take (or refrain from taking) appropriate action to enforce the Program Licensee Patents, to control any litigation or other enforcement action and to enter into, or permit, the settlement of any such litigation or other enforcement action with respect to the Program Licensee Patents. All monies recovered upon the final judgment or settlement of any such suit to enforce any Program Licensee Patents shall be retained by [***]. SGI shall fully cooperate with Licensee, at [***], in any action to enforce the Program Licensee Patents.

**9.3.4** In the event either Party becomes aware of an infringement by a Third Party of a Joint Patent, it shall promptly notify the other Party which shall be followed by a written notice. Subject to the rights of both Parties set forth in Sections 9.3.1 and 9.3.2 above, Licensee shall have the right to bring and control any such action related to a Joint Patent related to a Licensed Product, by counsel of its own choice at its sole expense. For all other Joint Patents, the Parties shall cooperate in selecting an outside legal firm mutually agreeable to both Parties and shall equally share control of the suit and all expenses. In such case, all monies recovered upon the final judgment or settlement of any such suit to enforce any Joint Patents shall be allocated first to any Third Party from which either Party obtained license with respect to such Joint Patents, to the extent required under the relevant in-license to either Party, second to the Parties to the extent necessary to compensate each for its respective expenses in its enforcement, and finally any remaining amounts shall be treated as Net Sales subject to the royalty obligations described in Article 6 of this Agreement if the suit is solely related to a Licensed Product and otherwise, shall be prorated between the Parties in accordance with the

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

damages for which such judgment or settlement is reasonably intended to compensate. If the monies recovered are not sufficient to compensate for all expenses of both Parties, such monies shall be divided on a pro rata basis based on the proportion of each Parties expenses to the total combined expenses of enforcement. If either Party chooses not to participate in the enforcement action to the extent it is required, it shall forfeit its right to share in the recovery, but shall nonetheless cooperate fully with the other Party, at the other Party's expense, in its efforts to enforce the Joint Patents, including being joined as a party to such action if necessary. In no event shall a Party make an argument or settle a dispute which would render a claim in a Joint Patent to be invalid or unenforceable without the other Party's prior written consent.

**9.4 Prior Patent Rights.** Notwithstanding anything to the contrary in this Agreement, with respect to any SGI Patents that are subject to the SGI In-Licenses, the rights and obligations of the Parties under Section 9.2 and 9.3 shall be subject to the rights of the licensor of the SGI In-License to participate in and control prosecution, maintenance and enforcement of such SGI Patents, and to receive a share of damages recovered in such action, in accordance with the terms and conditions of the applicable SGI In-License.

## ARTICLE 10 - INFRINGEMENT ACTIONS BROUGHT BY THIRD PARTIES

If Licensee, SGI or any of their respective Affiliates, or any of Licensee's Sublicensees, is sued by a Third Party for infringement of a Third Party's patent because of the use of the Drug Conjugation Technology in connection with activities conducted pursuant to this Agreement, the Party that has been sued shall promptly notify the other Party within [***] of its receipt of notice of such suit. The notice shall set forth the facts of such infringement available to the relevant Party. The Parties shall then meet to discuss each Party's commercial interests in the defense of the suit, a plan for the defense of the suit, how the costs of the suit should be allocated, and which Party should have primary control of the suit, provided that if such infringement relates primarily to Drug Conjugation Technology, then SGI shall have the first right to control such suit. In no event may one Party settle or otherwise consent to an adverse judgment in such suit that materially diminishes the rights or interests of the other Party without the express written consent of the other Party.

## ARTICLE 11 - REGULATORY ASSISTANCE

Should Licensee desire to file an IND or an application for Regulatory Approval, or equivalents of the foregoing, for a Licensed Product, SGI will use reasonable commercial efforts to provide at Licensee's request, technical information SGI has created or possesses that is reasonably required by Licensee, including information relating to the [***], as well as documents related specifically to Drug Conjugation Technology that are necessary to compile the Chemistry Manufacturing and Controls section of an application for Regulatory Approval and any other relevant information SGI has created or possesses as the Parties may mutually agree. If SGI has a drug master file with the FDA or equivalent that contains information useful to support an IND or application for Regulatory Approval, [***]. In the event SGI agrees to provide regulatory assistance beyond the limited activities described above, the Parties shall [***].

## ARTICLE 12 – REPRESENTATIONS AND WARRANTIES

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**12.1 Representations and Warranties.**

**12.1.1** This Agreement has been duly executed and delivered by each Party and constitutes the valid and binding obligation of each Party, enforceable against such Party in accordance with its terms, except as enforceability may be limited by bankruptcy, fraudulent conveyance, insolvency, reorganization, moratorium or other laws relating to or affecting creditors' rights generally and by general equitable principals. The execution, delivery and performance of this Agreement has been duly authorized by all necessary action on the part of each Party, its officers and directors.

**12.1.2** The execution, delivery and performance of the Agreement by each Party does not conflict with any agreement, instrument or understanding, oral or written, to which it is a party or by which it is bound, nor violate any law or regulation of any court, governmental body or administrative or other agency having jurisdiction over it.

**12.1.3** SGI represents and warrants that it has the right to grant the licenses granted herein and that as of the Effective Date it has [***] of the SGI Patents or other SGI Technology in connection with activities to be conducted hereunder. Licensee represents and warrants that it has the right to grant the licenses granted to SGI herein and that as of the Effective Date it has [***] to be conducted by the Parties hereunder.

**12.2 Performance by Affiliates.** The Parties recognize that each may perform some or all of its obligations under this Agreement through Affiliates, provided, however, that each Party shall remain responsible and be a guarantor of the performance by its Affiliates and shall cause its Affiliates to comply with the provisions of this Agreement in connection with such performance.

## ARTICLE 13 – TERM AND TERMINATION

**13.1 Term.** Unless earlier terminated pursuant to this Article 13, the term of this Agreement (the "Term") shall commence on the Effective Date and shall remain in full force and effect until the expiration of the last to expire Royalty Term.

**13.2 Termination by Licensee.** Licensee shall have the right, at any time after the Effective Date, to terminate this Agreement in its entirety by providing not less than [***] prior written notice to SGI of such termination; provided that Licensee must make payment of the ADC Access Fee if notice of termination is made within [***] from execution of this Agreement and such ADC Access Fee shall be considered non-refundable upon execution of this Agreement.

**13.3 Termination for Cause.** Either Party may terminate this Agreement for material breach by the other Party (the "Breaching Party") of any material provision of the Agreement, if the Breaching Party has not cured such breach within [***] after notice thereof.

**13.4 Termination Upon Insolvency.** Either Party may terminate this Agreement if, at any time, (a) the other Party shall file in any court or agency pursuant to any statute or regulation of any state, country or jurisdiction, a petition in bankruptcy or insolvency or for reorganization or for an arrangement or for the appointment of a receiver or trustee of that Party or of its assets,

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

(b) such other Party proposes a written agreement of composition or extension of its debts, (c) such other Party shall be served with an involuntary petition against it, filed in any insolvency proceeding, and such petition shall not be dismissed within [***] after the filing thereof, (d) such other Party shall propose or be a party to any dissolution or liquidation, or (e) such other Party shall make an assignment for the benefit of its creditors. All rights and licenses granted under this Agreement are, and shall be deemed to be, for purposes of Section 365(n) of the United States Bankruptcy Code, licenses of rights to "intellectual property" as defined under Section 101(56) of the United States Bankruptcy Code.

**13.5 Termination of SGI In-Licenses.** SGI shall provide Licensee with a copy of any claim of material breach by the licensor of any SGI In-License that could be reasonably expected to materially prejudice Licensee's rights under this Agreement. All rights and obligations under an SGI In-License sublicensed under this Agreement shall terminate upon [***] prior written notice by SGI if Licensee performs any action that would constitute a breach of any material provision of such SGI In-License Agreement , as described in a notice of default from the licensor of the SGI In-License, and fails to cure or commence and continue actions to cure such breach within such [***] period; provided, however, such cure period may be extended by mutual written consent of the Parties. SGI covenants that it will use reasonable commercial efforts to maintain all SGI In-Licenses for the duration of this Agreement. All rights and obligations under the [***] shall automatically terminate if Licensee fails to maintain the insurance required under the [***] for so long as such insurance is required pursuant to the [***]. SGI will cooperate with Licensee to cure any claimed material breach under an SGI In-License Agreement and will not take any action that could be reasonably expected to materially prejudice the rights of Licensee under an SGI In-License without the prior written consent of Licensee.

**13.6 Effect of Expiration and Termination.**

**13.6.1** Except where explicitly provided within this Agreement or by operation of any applicable law, termination of this Agreement for any reason, or expiration of this Agreement, will not affect any: (a) obligations, including payment of any royalties or other sums which have accrued as of the date of termination or expiration, and (b) rights and obligations which are intended to survive termination or expiration of this Agreement, including provisions of Articles 1, 8, 9, 10, 14 (as to actions arising during the term of this Agreement or in the course of a Party practicing any licenses retained by such Party thereafter), 18 and 19, Sections 7.2, 7.3 and 13.6 and any payment obligations pursuant to Section 6 incurred prior to termination. Notwithstanding the foregoing, all licenses granted by SGI to Licensee hereunder, including all Exclusive Licenses, and all sublicenses granted by Licensee hereunder, will immediately terminate upon termination of this Agreement pursuant to Sections 13.2, 13.3 (if SGI is terminating party) 13.4 (if SGI is terminating party) or 13.5.

**13.6.2 License to Licensee.** Upon the expiration of the Royalty Term or termination by Licensee under Section 13.3 or Section 13.4, SGI shall grant, and shall by this provision be deemed to have granted, to Licensee a perpetual, worldwide, nonexclusive license to use the SGI Technology (including Improvements assigned to SGI by Licensee) to make, use, sell, offer for sale and import Licensed Products that bind selectively to the Designated Antigen. If such license is granted upon expiration of the Royalty Term, then such license shall be royalty-

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

free. If such license is granted upon termination by Licensee under Sections 13.3 or 13.4 and Licensee so desires to obtain such license, then SGI shall grant such license to Licensee with terms and conditions to be mutually agreed upon by both Parties. Under all circumstances, any royalties owed to a Third Party pursuant to an SGI In-License shall not be affected by this Section 13.6.2 and shall be paid by Licensee under Section 6.4 of this Agreement.

**13.6.3 License to SGI.** Upon any termination of the Exclusive License or termination by SGI under Section 13.3 or Section 13.4, Licensee shall grant a license to SGI in the Territory under the Licensee ADC Know-How described in Section 1.1.42 and Licensee ADC Patents described in Section 1.1.43 to identify, develop and commercialize products that contain an ADC upon the terms and conditions to be mutually agreed upon by both Parties. In no circumstances shall the license granted to SGI under this Section 13.6.3 include any rights to Licensee Know-How or Licensee Patents.

## ARTICLE 14 - INDEMNITY

**14.1 Direct Indemnity.**

**14.1.1** Each Party shall defend, indemnify and hold harmless the other Party from and against all liabilities, losses, damages, and expenses, including reasonable attorneys' fees and costs, (collectively, the "Liabilities") resulting from all Third Party claims, suits, actions, terminations or demands (collectively, the "Claims") that are incurred, relate to or arise out of (a) the breach of any material provision of this Agreement by the indemnifying Party (or the inaccuracy of any representation or warranty made by such Party in this Agreement), or (b) the gross negligence, recklessness or willful misconduct of the indemnifying Party in connection with the performance of its obligations hereunder.

**14.1.2** Licensee shall defend, indemnify and hold harmless SGI from and against all Liabilities resulting from all Claims that are incurred, relate to or arise out of the development, manufacture or commercialization of Licensed Products by SGI for Licensee or by Licensee, its Affiliates or Sublicensees, including any failure to test for or provide adequate warnings of adverse side effects, or any manufacturing defect in any Licensed Product; except in each case to the extent such Liabilities resulted from the negligence, recklessness or willful misconduct by SGI or the inaccuracy of any representation or warranty made by SGI in this Agreement or from any other action for which SGI must indemnify Licensee under Section 14.1.3.

**14.1.3** SGI shall defend, indemnify and hold harmless Licensee from and against all Liabilities resulting from all Claims that are incurred, relate to or arise out of any claims of infringement of Third Party rights arising out of the use of SGI Technology to make ADCs or Licensed Products (but not any other technology, including the composition or methods of making or using Antibodies or technology not relating to Drug Conjugation Technology), except to the extent such Liabilities resulted from the negligence, recklessness or willful misconduct by Licensee or the inaccuracy of any representation or warranty made by Licensee in this Agreement or any other action for which Licensee must indemnify SGI hereunder.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**14.2 Procedure.** A Party (the "Indemnitee") that intends to claim indemnification under this Article 14 shall promptly provide notice to the other Party (the "Indemnitor") of any Liability or action in respect of which the Indemnitee intends to claim such indemnification, which notice shall include a reasonable identification of the alleged facts giving rise to such Liability, and the Indemnitor shall have the right to participate in, and, to the extent the Indemnitor so desires, jointly with any other Indemnitor similarly noticed, to assume the defense thereof, including the defense of Indemnitee, with counsel selected by the Indemnitor at its own cost. However, notwithstanding the foregoing, the Indemnitee shall have the right to retain its own counsel, with the fees and expenses to be paid by the Indemnitee. Regardless of whether Indemnitor exercises its right to select its counsel and to defend Indemnitee directly or the Parties proceed with separate counsel, the Parties shall exercise reasonable efforts to cause their respective counsel to enter into a joint defense agreement providing for the protection of confidential communication among SGI, Licensee and their respective counsel and to otherwise cooperate in all aspects of the defense of such Claim if such agreement is appropriate. Any settlement of a Liability for which any Indemnitee seeks to be indemnified, defended or held harmless under this Article 14 that could adversely affect the Indemnitee shall be subject to prior consent of such Indemnitee, provided that such consent shall not be withheld unreasonably.

## ARTICLE 15 - FORCE MAJEURE

No Party (or any of its Affiliates) shall be held liable or responsible to the other Party (or any of its Affiliates), or be deemed to have defaulted under or breached the Agreement, for failure or delay by such Party in fulfilling or performing any term of the Agreement when such failure or delay is caused by or results from causes beyond the reasonable control of the affected Party (or any of its Affiliates), including fire, floods, embargoes, war, acts of war (whether war be declared or not), insurrections, riots, civil commotions, acts of God, earthquakes, or omissions or delays in acting by any governmental authority (collectively, "Events of Force Majeure"); provided, however, that the affected Party shall exert all reasonable efforts to eliminate, cure or overcome any such Event of Force Majeure and to resume performance of its obligations promptly. Notwithstanding the foregoing, to the extent that an Event of Force Majeure continues for a period in excess of [***], the affected Party shall promptly notify in writing the other Party of such Event of Force Majeure and within [***] of the other Party's receipt of such notice, the Parties shall negotiate in good faith either (a) a resolution of the Event of Force Majeure, if possible, (b) an extension by mutual agreement of the time period to resolve, eliminate, cure or overcome such Event of Force Majeure, (c) an amendment of this Agreement to the extent reasonably possible, or (d) an early termination of this Agreement.

## ARTICLE 16 - ASSIGNMENT

This Agreement may not be assigned or otherwise transferred, nor, except as expressly provided hereunder, may any right or obligations hereunder be assigned or transferred to any Third Party by either Party without the consent of the other Party, such consent not to be unreasonably withheld; provided, however, that either Party may, without such consent but with notification, assign this Agreement and its rights and obligations hereunder to any of its Affiliates or in connection with the transfer or sale of all or substantially all of its business, or in the event of its merger or consolidation of such Party (such merger or consolidation shall be hereinafter referred to as a "Change in Control"). Any permitted assignee shall assume all rights

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

and obligations of its assignor under this Agreement; provided, however, that [***]. Any attempted assignment of this Agreement not in accordance with this Article 16 shall be void and of no effect. Any attempted assignment of this Agreement not in accordance with this Article 16 shall be void and of no effect.

## ARTICLE 17 - SEVERABILITY

Each Party hereby agrees that it does not intend to violate any public policy, statutory or common laws, rules, regulations, treaty or decision of any government agency or executive body thereof of any country or community or association of countries. Should one or more provisions of this Agreement be or become invalid, the Parties hereto shall substitute, by mutual consent, valid provisions for such invalid provisions, in their economic effect, are sufficiently similar to the invalid provisions that it can be reasonably assumed that the Parties would have entered into this Agreement based on such valid provisions. In case such alternative provisions cannot be agreed upon, the invalidity of one or several provisions of this Agreement shall not affect the validity of this Agreement as a whole, unless the invalid provisions are of such essential importance to this Agreement that it is to be reasonably assumed that the Parties would not have entered into this Agreement without the invalid provisions.

## ARTICLE 18 – INSURANCE

During the Term and thereafter for the period of [***], each Party shall maintain on an ongoing basis comprehensive general liability insurance covering its obligations and activities hereunder with reputable and financially secure insurance carriers in a form and at levels as customary for a company of this size in the pharmaceutical or biotechnology industry, as applicable, in the Territory (or reasonable self-insurance sufficient to provide materially the same level and type of protection as required pursuant to Section 11.5 of the BMS Agreement). In addition, Licensee agrees to provide the information regarding its self-insurance plan as set forth in Section 4.2(b) of the BMS Agreement and otherwise comply with the requirements set forth therein regarding self-insurance plans.

## ARTICLE 19 - MISCELLANEOUS

**19.1 Notices.** Any consent, notice or report required or permitted to be given or made under this Agreement by one of the Parties hereto to the other shall be in writing, delivered personally or by facsimile (and promptly confirmed by personal delivery, first class air mail or courier), first class air mail or courier, postage prepaid (where applicable), addressed to such other Party at its address indicated below, or to such other address as the addressee shall have last furnished in writing to the address or in accordance with this Section 19.1 and (except as otherwise provided in this Agreement) shall be effective upon receipt by the addressee.

If to SGI:
Seattle Genetics, Inc.
21823 30th Drive S.E.
Bothell, WA 98021
Attention: General Counsel
Telephone: (425) 527-4000

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

Facsimile: (425) 527-4109

If to Licensee:
Daiichi Sankyo Co. Ltd.,
1-2-58, Hiromachi, Shinagawa-ku,
Tokyo, Japan, 140-8710

Attention: Dr. Hideyuki Haruyama
Corporate Officer
General Manager, R&D Planning
R&D Division

Telephone: :+81-3-3492-3131
Facsimile: :+81-3-5436-8561

**19.2 Applicable Law.** The Agreement shall be governed by and construed in accordance with the laws of the State of Washington and the United States of America, without regard to the conflict of law principles thereof that may dictate application of the laws of any other state.

**19.3 Dispute Resolution.** The Parties agree that if any dispute or disagreement arises between Licensee on the one hand and SGI on the other in respect of this Agreement, they shall follow the following procedure in an attempt to resolve the dispute or disagreement.

**19.3.1** The Party claiming that such a dispute exists shall give notice in writing ("Notice of Dispute") to the other Party of the nature of the dispute;

**19.3.2** Within [***] of receipt of a Notice of Dispute, a nominee or nominees of Licensee and a nominee or nominees of SGI shall meet in person and exchange written summaries reflecting, in reasonable detail, the nature and extent of the dispute, and at this meeting they shall use their reasonable endeavors to resolve the dispute;

**19.3.3** If, within a further period of [***], the dispute has not been resolved, the President of SGI and an Executive Officer of Licensee shall meet at a mutually agreed upon time and location for the purpose of resolving such dispute;

**19.3.4** If, within a further period of [***], the dispute has not been resolved or if, for any reason, the required meeting has not been held, then the same shall be submitted by the Parties for resolution by an arbitral body in Seattle, Washington in accordance with the then-current commercial arbitration rules of the American Arbitration Association ("AAA") except as otherwise provided herein. The Parties shall choose, by mutual agreement, [***] within [***] of receipt of notice of the intent to arbitrate. If no arbitrator is appointed within the times herein provided or any extension of time that is mutually agreed upon, the AAA shall make such appointment within [***] of such failure. The judgment rendered by the arbitrator shall include costs of arbitration, reasonable attorneys' fees and reasonable costs for expert and other witnesses. Nothing in this Agreement shall be deemed as preventing either Party from seeking injunctive relief (or any other equitable or provisional remedy). If the issues in dispute involve scientific, technical or commercial matters, any arbitrator chosen hereunder shall have

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

educational training and/or industry experience sufficient to demonstrate a reasonable level of relevant scientific, medical and industry knowledge.

**19.3.5** In the event of a dispute regarding any payments owing under this Agreement, all undisputed amounts shall be paid promptly when due and the balance, if any, promptly after resolution of the dispute.

**19.3.6** Notwithstanding the foregoing, any disputes relating to inventorship or the validity, enforceability or scope of any patent or trademark rights shall be submitted for resolution by a court of competent jurisdiction.

**19.4 Entire Agreement.** This Agreement contains the entire understanding of the Parties with respect to the specific subject matter hereof. All express or implied agreements and understandings, either oral or written, heretofore made are expressly superseded by this Agreement. This Agreement may be amended, or any term hereof modified, only by a written instrument duly executed by both Parties hereto.

**19.5 Independent Contractors.** SGI and Licensee each acknowledge that they shall be independent contractors and that the relationship between the two Parties shall not constitute a partnership, joint venture, agency or any type of fiduciary relationship. Neither SGI nor Licensee shall have the authority to make any statements, representations or commitments of any kind, or to take any action, which shall be binding on the other Party, without the prior consent of the other Party to do so.

**19.6 Affiliates.** Each Party shall cause its respective Affiliates to comply fully with the provisions of this Agreement to the extent such provisions specifically relate to, or are intended to specifically relate to, such Affiliates, as though such Affiliates were expressly named as joint obligors hereunder.

**19.7 Waiver.** The waiver by either Party hereto of any right hereunder or the failure to perform or of a breach by the other Party shall not be deemed a waiver of any other right hereunder or of any other breach or failure by said other Party whether of a similar nature or otherwise.

**19.8 Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**SEATTLE GENETICS, INC.**

By: /s/ Clay B. Siegall
Name: Clay B. Siegall, Ph.D.
Title: President & CEO

**DAIICHI SANKYO CO., LTD.**

By: /s/ Kazunori Hirokawa
Name: Kazunori Hirokawa, MD, Ph.D.
Title: Executive Officer, Head of R&D Division

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**SCHEDULE A**

**RESEARCH PLAN**

[***]

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**SCHEDULE B**

**SGI PATENTS**

[***]

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

**SCHEDULE C**

**SGI IN-LICENSES**

[***]

[***] Certain information on this page has been omitted and filed separately with the Securities and Exchange Commission. Confidential treatment has been requested with respect to the omitted portions.

# EXHIBIT 11

Passion for Innovation.
Compassion for Patients.™



## Press Release

# Daiichi Sankyo Files Declaratory Judgement Action Related to its Proprietary Antibody Drug Conjugate Technology

**Tokyo, Japan, Munich, Germany, Basking Ridge, NJ (November 4, 2019):**  Daiichi Sankyo Co., Ltd announced today that the company has filed a Declaratory Judgement action in the District Court of Delaware in response to receiving communications from Seattle Genetics, Inc. with respect to a collaboration between the two companies from 2008 to 2015 for the development of antibody-drug conjugates (ADCs).

Seattle Genetics is claiming certain intellectual property rights related to Daiichi Sankyo's ADC products. Daiichi Sankyo believes any such claim to be without merit and the company will vigorously defend its position that our ADC technology patents are the exclusive intellectual property of Daiichi Sankyo.

Between July 2008 and June 2015, Seattle Genetics and Daiichi Sankyo collaborated in an exclusive, worldwide development agreement focused on ADCs which are distinct from ADC products currently being developed in the Daiichi Sankyo pipeline.

**About Daiichi Sankyo**

Daiichi Sankyo Group is dedicated to the creation and supply of innovative pharmaceutical therapies to improve standards of care and address diversified, unmet medical needs of people globally by leveraging our world-class science and technology. With more than 100 years of scientific expertise and a presence in more than 20 countries, Daiichi Sankyo and its 15,000 employees around the world draw upon a rich legacy of innovation and a robust pipeline of promising new medicines to help people. In addition to a strong portfolio of medicines for cardiovascular diseases, under the Group's 2025 Vision to become a "Global Pharma Innovator with Competitive Advantage in Oncology," Daiichi Sankyo is primarily focused on providing novel therapies in oncology, as well as other research areas centered around rare diseases and immune disorders. For more information, please visit: www.daiichisankyo.com.

Refer to

**US:**

Kimberly Wix

Daiichi Sankyo, Inc.

kwix@dsi.com

+1 908 992 6633 (office)

**Japan:**

Koji Ogiwara

Daiichi Sankyo, Co., Ltd

ogiwara.koji.ay@daiichisankyo.co.jp

+81 3 6225 1126 (office)

**Investor Relations Contact:**

DaiichiSankyoIR@daiichisankyo.co.jp

# EXHIBIT 13



# Commercial

## Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/commercial**

Rules Amended and Effective October 1, 2013

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone: 202.223.7093
Email: BakerJ@adr.org

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone: 617.695.6062
Email: JalkutK@adr.org

**States: Alaska, California, Oregon, Washington**
Aaron Gothelf, Esq.
Vice President
Phone: 415.671.4053
Email: GothelfA@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Hawaii, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

---

## Case Management Vice Presidents and Assistant Vice President

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, CA, CO, HI, ID, MT, NV, NM, OR, UT, WA, WY**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Rod Toben
Vice President
Phone: 972.774.6923
Email: TobenR@adr.org
**Administers Cases in: AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**

# Table of Contents

Important Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Standard Arbitration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Large, Complex Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9


Commercial Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

R-1. Agreement of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

R-2. AAA and Delegation of Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

R-3. National Roster of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

R-4. Filing Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

R-5. Answers and Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

R-6. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

R-7. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

R-8. Interpretation and Application of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

R-9. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

R-10. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

R-11. Fixing of Locale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

R-12. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

R-13. Direct Appointment by a Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties. . . . . . . . .16

R-15. Nationality of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

R-16. Number of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

R-17. Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

R-18. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

R-19. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

R-20. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

R-21. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

R-22. Pre-Hearing Exchange and Production of Information . . . . . . . . . . . . . . . . . . . . . .19

R-23. Enforcement Powers of the Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

R-24. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

R-25. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-26. Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-27. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-28. Stenographic Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-29. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-30. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-31. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . .22

R-32. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-33. Dispositive Motions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-35. Evidence by Written Statements and Post-Hearing Filing of Documents or
Other Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-37. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-38. Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-39. Closing of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

R-40. Reopening of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-41. Waiver of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-42. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-43. Serving of Notice and Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-44. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-45. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-46. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-47. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-48. Award Upon Settlement—Consent Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-49. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-50. Modification of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-51. Release of Documents for Judicial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-52. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-53. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-54. Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-55. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-56. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-57. Remedies for Nonpayment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-58. Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

**Preliminary Hearing Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

P-1. General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

P-2. Checklist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**Expedited Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-1. Limitation on Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-2. Changes of Claim or Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-3. Serving of Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-4. Appointment and Qualifications of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-5. Exchange of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E-6. Proceedings on Documents and Procedures for the Resolution of Disputes
Through Document Submission  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E-7. Date, Time, and Place of Hearing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E-8. The Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E-9. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E-10. Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**Procedures for Large, Complex Commercial Disputes** . . . . . . . . . . . . . . . . . . . . . 37

L-1. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

L-2. Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

L-3. Management of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**Administrative Fee Schedules (Standard and Flexible Fees)** . . . . . . . . . . . . . . . . 38

**Commercial Mediation Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-3. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-4. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

M-5. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

M-6. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

M-7. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

M-8. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M-9. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M-10. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M-11. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-12. Termination of Mediation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-13. Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-14. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-15. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

M-16. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

M-17. Cost of the Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44



# Commercial Arbitration Rules and Mediation Procedures

(Including Procedures for Large, Complex Commercial Disputes)

## Important Notice

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA®. To ensure that you have the most current information, see our web site at **www.adr.org.**

## Introduction

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association® (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

> *Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

> *We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following Controversy: (describe briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

## Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees. The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

## Mediation

Subject to the right of any party to opt out, in cases where a claim or counterclaim exceeds $75,000, the rules provide that the parties shall mediate their dispute upon the administration of the arbitration or at any time when the arbitration is pending. In mediation, the neutral mediator assists the parties in

reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional filing fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

Although these rules include a mediation procedure that will apply to many cases, parties may still want to incorporate mediation into their contractual dispute settlement process. Parties can do so by inserting the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission agreement:

> *The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs. The key features of these procedures include:

> A highly qualified, trained Roster of Neutrals;

> A mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;

> Broad arbitrator authority to order and control the exchange of information, including depositions;

> A presumption that hearings will proceed on a consecutive or block basis.

## Commercial Arbitration Rules

### R-1. Agreement of Parties*

**(a)** The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA. Any disputes regarding which AAA rules shall apply shall be decided by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**(b)** Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest, attorneys' fees, and arbitration fees and costs.

Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

**(c)** Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000 or more, exclusive of claimed interest, attorneys' fees, arbitration fees and costs. Parties may also agree to use the procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-3 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

**(d)** Parties may, by agreement, apply the Expedited Procedures, the Procedures for Large, Complex Commercial Disputes, or the Procedures for the Resolution of Disputes through Document Submission (Rule E-6) to any dispute.

**(e)** All other cases shall be administered in accordance with Sections R-1 through R-58 of these rules.

*\* Beginning October 1, 2017, AAA will apply the Employment Fee Schedule to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements. A dispute arising out of an employment plan will be administered under the AAA's Employment Arbitration Rules and Mediation Procedures. A dispute arising out of a consumer arbitration agreement will be administered under the AAA's Consumer Arbitration Rules.*

### R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

### R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

### R-4. Filing Requirements

**(a)** Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ("claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration.

**(b)** Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration.

   **i.** The filing party shall include a copy of the court order.

   **ii.** The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party to either make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

   **iii.** The party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action. Parties may request that the arbitrator alter the order of proceedings if necessary pursuant to R-32.

**(c)** It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing for an arbitration, as well as any time requirements associated with the filing. Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination.

(d) Parties to any existing dispute who have not previously agreed to use these rules may commence an arbitration under these rules by filing a written submission agreement and the administrative filing fee. To the extent that the parties' submission agreement contains any variances from these rules, such variances should be clearly stated in the Submission Agreement.

(e) Information to be included with any arbitration filing includes:

    **i.**   the name of each party;

    **ii.**  the address for each party, including telephone and fax numbers and e-mail addresses;

    **iii.** if applicable, the names, addresses, telephone and fax numbers, and e-mail addresses of any known representative for each party;

    **iv.** a statement setting forth the nature of the claim including the relief sought and the amount involved; and

    **v.**  the locale requested if the arbitration agreement does not specify one.

(f) The initiating party may file or submit a dispute to the AAA in the following manner:

    **i.**   through AAA WebFile, located at **www.adr.org;** or

    **ii.**  by filing the complete Demand or Submission with any AAA office, regardless of the intended locale of hearing.

(g) The filing party shall simultaneously provide a copy of the Demand and any supporting documents to the opposing party.

(h) The AAA shall provide notice to the parties (or their representatives if so named) of the receipt of a Demand or Submission when the administrative filing requirements have been satisfied. The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration. However, all disputes in connection with the AAA's determination of the date of filing may be decided by the arbitrator.

(i) If the filing does not satisfy the filing requirements set forth above, the AAA shall acknowledge to all named parties receipt of the incomplete filing and inform the parties of the filing deficiencies. If the deficiencies are not cured by the date specified by the AAA, the filing may be returned to the initiating party.

## R-5. Answers and Counterclaims

(a) A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the Demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of any answering statement to the claimant and to all other parties to the arbitration. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(b)** A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of the filing of any counterclaim.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in administrative fee, the balance of the fee is due before the change of claim amount may be accepted by the arbitrator.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

## R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

### R-8. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

### R-9. Mediation

In all cases where a claim or counterclaim exceeds $75,000, upon the AAA's administration of the arbitration or at any time while the arbitration is pending, the parties shall mediate their dispute pursuant to the applicable provisions of the AAA's Commercial Mediation Procedures, or as otherwise agreed by the parties. Absent an agreement of the parties to the contrary, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings. However, any party to an arbitration may unilaterally opt out of this rule upon notification to the AAA and the other parties to the arbitration. The parties shall confirm the completion of any mediation or any decision to opt out of this rule to the AAA. Unless agreed to by all parties and the mediator, the mediator shall not be appointed as an arbitrator to the case.

### R-10. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, mediation of the dispute, potential exchange of information, a timetable for hearings, and any other administrative matters.

### R-11. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. Any disputes regarding the locale that are to be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar days from the date of the AAA's initiation of the case or the date established by the AAA. Disputes regarding locale shall be determined in the following manner:

**(a)** When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA may initially determine the place of

arbitration, subject to the power of the arbitrator after appointment, to make a final determination on the locale.

**(b)** When the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, or a determination by the arbitrator upon appointment that applicable law requires a different locale, the locale shall be that specified in the arbitration agreement.

**(c)** If the reference to a locale in the arbitration agreement is ambiguous, and the parties are unable to agree to a specific locale, the AAA shall determine the locale, subject to the power of the arbitrator to finally determine the locale.

The arbitrator, at the arbitrator's sole discretion, shall have the authority to conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process.

### R-12. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

**(a)** The AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

**(b)** If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 14 calendar days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. The parties are not required to exchange selection lists. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable to that party. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

**(c)** Unless the parties agree otherwise, when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

### R-13. Direct Appointment by a Party

**(a)** If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. The notice of appointment, with the name and address of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

**(b)** Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-18 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-18(b) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

**(c)** If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

**(d)** If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 14 calendar days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

### R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

**(a)** If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

**(b)** If no period of time is specified for appointment of the chairperson, and the party-appointed arbitrators or the parties do not make the appointment within 14 calendar days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

**(c)** If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

### R-15. Nationality of Arbitrator

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these rules.

### R-16. Number of Arbitrators

**(a)** If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. A party may request three arbitrators in the Demand or Answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

**(b)** Any request for a change in the number of arbitrators as a result of an increase or decrease in the amount of a claim or a new or different claim must be made to the AAA and other parties to the arbitration no later than seven calendar days after receipt of the R-6 required notice of change of claim amount. If the parties are unable to agree with respect to the request for a change in the number of arbitrators, the AAA shall make that determination.

### R-17. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration. Failure on the part of a party or a representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-41.

**(b)** Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

**(c)** Disclosure of information pursuant to this Section R-17 is not an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

### R-18. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

    **i.** partiality or lack of independence,

    **ii.** inability or refusal to perform his or her duties with diligence and in good faith, and

    **iii.** any grounds for disqualification provided by applicable law.

**(b)** The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be non-neutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

**(c)** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

### R-19. Communication with Arbitrator

**(a)** No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**(b)** Section R-19(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-18(b), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-18(b), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-19(a) should nonetheless apply prospectively.

**(c)** In the course of administering an arbitration, the AAA may initiate communications with each party or anyone acting on behalf of the parties either jointly or individually.

**(d)** As set forth in R-43, unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## R-20. Vacancies

**(a)** If for any reason an arbitrator is unable or unwilling to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

**(b)** In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

**(c)** In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## R-21. Preliminary Hearing

**(a)** At the discretion of the arbitrator, and depending on the size and complexity of the arbitration, a preliminary hearing should be scheduled as soon as practicable after the arbitrator has been appointed. The parties should be invited to attend the preliminary hearing along with their representatives. The preliminary hearing may be conducted in person or by telephone.

**(b)** At the preliminary hearing, the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute. Sections P-1 and P-2 of these rules address the issues to be considered at the preliminary hearing.

## R-22. Pre-Hearing Exchange and Production of Information

**(a)** *Authority of arbitrator.* The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.

**(b)** *Documents.* The arbitrator may, on application of a party or on the arbitrator's own initiative:

    **i.** require the parties to exchange documents in their possession or custody on which they intend to rely;

    **ii.** require the parties to update their exchanges of the documents on which they intend to rely as such documents become known to them;

    **iii.** require the parties, in response to reasonable document requests, to make available to the other party documents, in the responding party's possession or custody, not otherwise readily available to the party seeking the documents, reasonably believed by the party seeking the documents to exist and to be relevant and material to the outcome of disputed issues; and

iv. require the parties, when documents to be exchanged or produced are maintained in electronic form, to make such documents available in the form most convenient and economical for the party in possession of such documents, unless the arbitrator determines that there is good cause for requiring the documents to be produced in a different form. The parties should attempt to agree in advance upon, and the arbitrator may determine, reasonable search parameters to balance the need for production of electronically stored documents relevant and material to the outcome of disputed issues against the cost of locating and producing them.

## R-23. Enforcement Powers of the Arbitrator

The arbitrator shall have the authority to issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation:

(a) conditioning any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing, on appropriate orders to preserve such confidentiality;

(b) imposing reasonable search parameters for electronic and other documents if the parties are unable to agree;

(c) allocating costs of producing documentation, including electronically stored documentation;

(d) in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

(e) issuing any other enforcement orders which the arbitrator is empowered to issue under applicable law.

## R-24. Date, Time, and Place of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 calendar days in advance of the hearing date, unless otherwise agreed by the parties.

## R-25. Attendance at Hearings

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person.

## R-26. Representation

Any party may participate without representation (*pro se*), or by counsel or any other representative of the party's choosing, unless such choice is prohibited by applicable law. A party intending to be so represented shall notify the other party and the AAA of the name, telephone number and address, and email address if available, of the representative at least seven calendar days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

## R-27. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

## R-28. Stenographic Record

**(a)** Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three calendar days in advance of the hearing. The requesting party or parties shall pay the cost of the record.

**(b)** No other means of recording the proceedings will be permitted absent the agreement of the parties or per the direction of the arbitrator.

**(c)** If the transcript or any other recording is agreed by the parties or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

**(d)** The arbitrator may resolve any disputes with regard to apportionment of the costs of the stenographic record or other recording.

### R-29. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

### R-30. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

### R-31. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

### R-32. Conduct of Proceedings

(a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

(c) When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephonic conferences and means other than an in-person presentation. Such alternative means must afford a full opportunity for all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and, when involving witnesses, provide an opportunity for cross-examination.

(d) The parties may agree to waive oral hearings in any case and may also agree to utilize the Procedures for Resolution of Disputes Through Document Submission, found in Rule E-6.

### R-33. Dispositive Motions

The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines that the moving party has shown that the motion is likely to succeed and dispose of or narrow the issues in the case.

### R-34. Evidence

**(a)** The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

**(c)** The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

### R-35. Evidence by Written Statements and Post-Hearing Filing of Documents or Other Evidence

**(a)** At a date agreed upon by the parties or ordered by the arbitrator, the parties shall give written notice for any witness or expert witness who has provided a written witness statement to appear in person at the arbitration hearing for examination. If such notice is given, and the witness fails to appear, the arbitrator may disregard the written witness statement and/or expert report of the witness or make such other order as the arbitrator may consider to be just and reasonable.

**(b)** If a witness whose testimony is represented by a party to be essential is unable or unwilling to testify at the hearing, either in person or through electronic or other means, either party may request that the arbitrator order the witness to appear in person for examination before the arbitrator at a time and location where the witness is willing and able to appear voluntarily or can legally be compelled to do so. Any such order may be conditioned upon payment by the requesting party of all reasonable costs associated with such examination.

**(c)** If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

### R-36. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

### R-37. Interim Measures

**(a)** The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

**(c)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

### R-38. Emergency Measures of Protection

**(a)** Unless the parties agree otherwise, the provisions of this rule shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after October 1, 2013.

**(b)** A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile or e-mail or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

**(c)** Within one business day of receipt of notice as provided in section (b), the AAA shall appoint a single emergency arbitrator designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed on the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

**(d)** The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such a schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone or video conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Rule 7, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Rule 38.

**(e)** If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim order or award granting the relief and stating the reason therefore.

**(f)** Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

**(g)** Any interim award of emergency relief may be conditioned on provision by the party seeking such relief for appropriate security.

**(h)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this rule, the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in this rule and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

**(i)** The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the tribunal to determine finally the apportionment of such costs.

## R-39. Closing of Hearing

**(a)** The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

**(b)** If documents or responses are to be filed as provided in Rule R-35, or if briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If no documents, responses, or briefs are to be filed, the arbitrator shall declare the hearings closed as of the date of the last hearing (including telephonic hearings). If the case was heard without any oral hearings, the arbitrator shall close the hearings upon the due date established for receipt of the final submission.

**(c)** The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing. The AAA may extend the time limit for rendering of the award only in unusual and extreme circumstances.

### R-40. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or by the direction of the arbitrator upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed to by the parties in the arbitration agreement, the matter may not be reopened unless the parties agree to an extension of time. When no specific date is fixed by agreement of the parties , the arbitrator shall have 30 calendar days from the closing of the reopened hearing within which to make an award (14 calendar days if the case is governed by the Expedited Procedures).

### R-41. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

### R-42. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

### R-43. Serving of Notice and Communications

**(a)** Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**(b)** The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), or electronic (e-mail) to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by e-mail or other methods of communication.

**(c)** Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

**(d)** Unless otherwise instructed by the AAA or by the arbitrator, all written communications made by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

**(e)** Failure to provide the other party with copies of communications made to the AAA or to the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained therein.

**(f)** The AAA may direct that any oral or written communications that are sent by a party or their representative shall be sent in a particular manner. The failure of a party or their representative to do so may result in the AAA's refusal to consider the issue raised in the communication.

### R-44. Majority Decision

**(a)** When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement or section (b) of this rule, a majority of the arbitrators must make all decisions.

**(b)** Where there is a panel of three arbitrators, absent an objection of a party or another member of the panel, the chairperson of the panel is authorized to resolve any disputes related to the exchange of information or procedural matters without the need to consult the full panel.

### R-45. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the due date set for receipt of the parties' final statements and proofs.

### R-46. Form of Award

**(a)** Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the form and manner required by law.

**(b)** The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

### R-47. Scope of Award

**(a)** The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

**(c)** In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-53, R-54, and R-55. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

**(d)** The award of the arbitrator(s) may include:

    **i.** interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

    **ii.** an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

### R-48. Award Upon Settlement—Consent Award

**(a)** If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

**(b)** The consent award shall not be released to the parties until all administrative fees and all arbitrator compensation have been paid in full.

### R-49. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at their last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

### R-50. Modification of Award

Within 20 calendar days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other

parties shall be given 10 calendar days to respond to the request. The arbitrator shall dispose of the request within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto.

### R-51. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party to the arbitration, furnish to the party, at its expense, copies or certified copies of any papers in the AAA's possession that are not determined by the AAA to be privileged or confidential.

### R-52. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

(e) Parties to an arbitration under these rules may not call the arbitrator, the AAA, or AAA employees as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

### R-53. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe administrative fees to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

### R-54. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and

the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

### R-55. Neutral Arbitrator's Compensation

(a) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.

(b) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

(c) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

### R-56. Deposits

(a) The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

(b) Other than in cases where the arbitrator serves for a flat fee, deposit amounts requested will be based on estimates provided by the arbitrator. The arbitrator will determine the estimated amount of deposits using the information provided by the parties with respect to the complexity of each case.

(c) Upon the request of any party, the AAA shall request from the arbitrator an itemization or explanation for the arbitrator's request for deposits.

### R-57. Remedies for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment.

(a) Upon receipt of information from the AAA that payment for administrative charges or deposits for arbitrator compensation have not been paid in full, to the extent the law allows, a party may request that the arbitrator take specific measures relating to a party's non-payment.

(b) Such measures may include, but are not limited to, limiting a party's ability to assert or pursue their claim. In no event, however, shall a party be precluded from defending a claim or counterclaim.

**(c)** The arbitrator must provide the party opposing a request for such measures with the opportunity to respond prior to making any ruling regarding the same.

**(d)** In the event that the arbitrator grants any request for relief which limits any party's participation in the arbitration, the arbitrator shall require the party who is making a claim and who has made appropriate payments to submit such evidence as the arbitrator may require for the making of an award.

**(e)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative or at the request of the AAA or a party, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(f)** If the arbitration has been suspended by either the AAA or the arbitrator and the parties have failed to make the full deposits requested within the time provided after the suspension, the arbitrator, or the AAA if an arbitrator has not been appointed, may terminate the proceedings.

## R-58. Sanctions

**(a)** The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

**(b)** The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application.

## Preliminary Hearing Procedures

### P-1. General

(a) In all but the simplest cases, holding a preliminary hearing as early in the process as possible will help the parties and the arbitrator organize the proceeding in a manner that will maximize efficiency and economy, and will provide each party a fair opportunity to present its case.

(b) Care must be taken to avoid importing procedures from court systems, as such procedures may not be appropriate to the conduct of arbitrations as an alternative form of dispute resolution that is designed to be simpler, less expensive and more expeditious.

### P-2. Checklist

(a) The following checklist suggests subjects that the parties and the arbitrator should address at the preliminary hearing, in addition to any others that the parties or the arbitrator believe to be appropriate to the particular case. The items to be addressed in a particular case will depend on the size, subject matter, and complexity of the dispute, and are subject to the discretion of the arbitrator:

    (i) the possibility of other non-adjudicative methods of dispute resolution, including mediation pursuant to R-9;

    (ii) whether all necessary or appropriate parties are included in the arbitration;

    (iii) whether a party will seek a more detailed statement of claims, counterclaims or defenses;

    (iv) whether there are any anticipated amendments to the parties' claims, counterclaims, or defenses;

    (v) which

        (a) arbitration rules;

        (b) procedural law; and

        (c) substantive law govern the arbitration;

    (vi) whether there are any threshold or dispositive issues that can efficiently be decided without considering the entire case, including without limitation,

        (a) any preconditions that must be satisfied before proceeding with the arbitration;

        (b) whether any claim or counterclaim falls outside the arbitrator's jurisdiction or is otherwise not arbitrable;

        (c) consolidation of the claims or counterclaims with another arbitration; or

        (d) bifurcation of the proceeding.

**(vii)** whether the parties will exchange documents, including electronically stored documents, on which they intend to rely in the arbitration, and/or make written requests for production of documents within defined parameters;

**(viii)** whether to establish any additional procedures to obtain information that is relevant and material to the outcome of disputed issues;

**(ix)** how costs of any searches for requested information or documents that would result in substantial costs should be borne;

**(x)** whether any measures are required to protect confidential information;

**(xi)** whether the parties intend to present evidence from expert witnesses, and if so, whether to establish a schedule for the parties to identify their experts and exchange expert reports;

**(xii)** whether, according to a schedule set by the arbitrator, the parties will

    **(a)** identify all witnesses, the subject matter of their anticipated testimonies, exchange written witness statements, and determine whether written witness statements will replace direct testimony at the hearing;

    **(b)** exchange and pre-mark documents that each party intends to submit; and

    **(c)** exchange pre-hearing submissions, including exhibits;

**(xiii)** the date, time and place of the arbitration hearing;

**(xiv)** whether, at the arbitration hearing,

    **(a)** testimony may be presented in person, in writing, by videoconference, via the internet, telephonically, or by other reasonable means;

    **(b)** there will be a stenographic transcript or other record of the proceeding and, if so, who will make arrangements to provide it;

**(xv)** whether any procedure needs to be established for the issuance of subpoenas;

**(xvi)** the identification of any ongoing, related litigation or arbitration;

**(xvii)** whether post-hearing submissions will be filed;

**(xviii)** the form of the arbitration award; and

**(xix)** any other matter the arbitrator considers appropriate or a party wishes to raise.

**(b)** The arbitrator shall issue a written order memorializing decisions made and agreements reached during or following the preliminary hearing.

## Expedited Procedures

### E-1. Limitation on Extensions

Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the Demand for Arbitration or counterclaim as provided in Section R-5.

### E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, upon the agreement of the other party, or the consent of the arbitrator. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $75,000, the case will be administered under the regular procedures unless all parties and the arbitrator agree that the case may continue to be processed under the Expedited Procedures.

### E-3. Serving of Notices

In addition to notice provided by Section R-43, the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

### E-4. Appointment and Qualifications of Arbitrator

**(a)** The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

**(b)** The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

**(c)** The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Section R-18. The parties shall notify the AAA within seven calendar days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

## E-5. Exchange of Exhibits

At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

## E-6. Proceedings on Documents and Procedures for the Resolution of Disputes Through Document Submission

Where no party's claim exceeds $25,000, exclusive of interest, attorneys' fees and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. Where cases are resolved by submission of documents, the following procedures may be utilized at the agreement of the parties or the discretion of the arbitrator:

**(a)** Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator may convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

**(b)** The arbitrator has the discretion to remove the case from the documents-only process if the arbitrator determines that an in-person hearing is necessary.

**(c)** If the parties agree to in-person hearings after a previous agreement to proceed under this rule, the arbitrator shall conduct such hearings. If a party seeks to have in-person hearings after agreeing to this rule, but there is not agreement among the parties to proceed with in-person hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

**(d)** The arbitrator shall establish the date for either written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing and the time for the rendering of the award shall commence.

**(e)** Unless the parties have agreed to a form of award other than that set forth in rule R-46, when the parties have agreed to resolve their dispute by this rule, the arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(f)** If the parties agree to a form of award other than that described in rule R-46, the arbitrator shall have 30 calendar days from the date the hearing is declared closed in which to render the award.

**(g)** The award is subject to all other provisions of the Regular Track of these rules which pertain to awards.

### E-7. Date, Time, and Place of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, and place of the hearing, to be scheduled to take place within 30 calendar days of confirmation of the arbitrator's appointment. The AAA will notify the parties in advance of the hearing date.

### E-8. The Hearing

**(a)** Generally, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two business days after the hearing. For good cause shown, the arbitrator may schedule additional hearings within seven business days after the initial day of hearings.

**(b)** Generally, there will be no stenographic record. Any party desiring a stenographic record may arrange for one pursuant to the provisions of Section R-28.

### E-9. Time of Award

Unless otherwise agreed by the parties, the award shall be rendered not later than 14 calendar days from the date of the closing of the hearing or, if oral hearings have been waived, from the due date established for the receipt of the parties' final statements and proofs.

### E-10. Arbitrator's Compensation

Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

## Procedures for Large, Complex Commercial Disputes

### L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA shall, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call. The conference will take place within 14 calendar days after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

**(a)** to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

**(b)** to discuss the views of the parties about the technical and other qualifications of the arbitrators;

**(c)** to obtain conflicts statements from the parties; and

**(d)** to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

### L-2. Arbitrators

**(a)** Large, complex commercial cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. With the exception in paragraph (b) below, if the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

**(b)** In cases involving the financial hardship of a party or other circumstance, the AAA at its discretion may require that only one arbitrator hear and determine the case, irrespective of the size of the claim involved in the dispute.

**(c)** The AAA shall appoint arbitrator(s) as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator(s) shall not have served as the mediator in the mediation phase of the instant proceeding.

### L-3. Management of Proceedings

**(a)** The arbitrator shall take such steps as deemed necessary or desirable to avoid delay and to achieve a fair, speedy and cost-effective resolution of a Large, Complex Commercial Dispute.

**(b)** As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be scheduled in accordance with sections P-1 and P-2 of these rules.

**(c)** The parties shall exchange copies of all exhibits they intend to submit at the hearing at least 10 calendar days prior to the hearing unless the arbitrator(s) determines otherwise.

**(d)** The parties and the arbitrator(s) shall address issues pertaining to the pre-hearing exchange and production of information in accordance with rule R-22 of the AAA Commercial Rules, and the arbitrator's determinations on such issues shall be included within the Scheduling and Procedure Order.

**(e)** The arbitrator, or any single member of the arbitration tribunal, shall be authorized to resolve any disputes concerning the pre-hearing exchange and production of documents and information by any reasonable means within his discretion, including, without limitation, the issuance of orders set forth in rules R-22 and R-23 of the AAA Commercial Rules.

**(f)** In exceptional cases, at the discretion of the arbitrator, upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator may order depositions to obtain the testimony of a person who may possess information determined by the arbitrator to be relevant and material to the outcome of the case. The arbitrator may allocate the cost of taking such a deposition.

**(g)** Generally, hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

## Administrative Fee Schedules (Standard and Flexible Fees)

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT* **www.adr.org/feeschedule.**

## Commercial Mediation Procedures

### M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedural guidelines, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

### M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a request for mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for mediation may also be filed online via WebFile at **www.adr.org.**

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

(i) A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.

(ii) The names, regular mail addresses, email addresses, and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.

(iii) A brief statement of the nature of the dispute and the relief requested.

(iv) Any specific qualifications the mediator should possess.

### M-3. Representation

Subject to any applicable law, any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

## M-4. Appointment of the Mediator

If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

**(i)** Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

**(ii)** If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

**(iii)** If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-5. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

### M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-4.

### M-7. Duties and Responsibilities of the Mediator

(i) The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

(ii) The mediator is authorized to conduct separate or *ex parte* meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.

(iii) The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

(iv) The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

(v) In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

(vi) The mediator is not a legal representative of any party and has no fiduciary duty to any party.

## M-8. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-9. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-10. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

- **(i)** Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;
- **(ii)** Admissions made by a party or other participant in the course of the mediation proceedings;
- **(iii)** Proposals made or views expressed by the mediator; or
- **(iv)** The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

### M-11. No Stenographic Record

There shall be no stenographic record of the mediation process.

### M-12. Termination of Mediation

The mediation shall be terminated:

**(i)** By the execution of a settlement agreement by the parties; or

**(ii)** By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

**(iii)** By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

**(iv)** When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

### M-13. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures.

### M-14. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

### M-15. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

### M-16. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

### M-17. Cost of the Mediation

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT* **www.adr.org/feeschedule.**

*© 2018 American Arbitration Association, Inc. All rights reserved. These rules are the copyrighted property of the*
*American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.*
*Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws.*
*Please contact 800.778.7879 or websitemail@adr.org for additional information.*

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone: 202.223.7093
Email: BakerJ@adr.org

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone: 617.695.6062
Email: JalkutK@adr.org

**States: Alaska, California, Oregon, Washington**
Aaron Gothelf, Esq.
Vice President
Phone: 415.671.4053
Email: GothelfA@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Hawaii, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

---

## Case Management Vice Presidents and Assistant Vice President

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, CA, CO, HI, ID, MT, NV, NM, OR, UT, WA, WY**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Rod Toben
Vice President
Phone: 972.774.6923
Email: TobenR@adr.org
**Administers Cases in: AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**



AMERICAN ARBITRATION ASSOCIATION®

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Shea Gaza, hereby certify that on November 19, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Steven J. Balick
Andrew C. Mayo
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

I further certify that on November 19, 2019**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following counsel:

Preston K. Ratliff II
Joseph M. O'Malley
Isaac S. Ashkenazi
Ashley N. Mays-Williams
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000
prestonratliff@paulhastings.com
josephomalley@paulhastings.com
isaacashkenazi@paulhastings.com
ashleymayswilliams@paulhastings.com

*Attorneys for Plaintiff*

25594836.1

Dated:  November 19, 2019

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
*agaza@ycst.com*
*swilson@ycst.com*

*Attorneys for Seattle Genetics Inc.*

2

25594836.1