# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAIICHI SANKYO COMPANY, LTD., | )<br>)<br>) C.A. No. 19-2087-CFC |
| *Plaintiff*, | )<br>) |
| v. | )<br>) |
| SEATTLE GENETICS, INC., | )<br>) |
| *Defendant*. | ) |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANT SEATTLE GENETICS, INC.'S MOTION TO DISMISS

*Of Counsel:*

MORRISON & FOERSTER LLP
Michael A. Jacobs
Matthew A. Chivvis
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000
mjacobs@mofo.com
mchivvis@mofo.com

MORRISON & FOERSTER LLP
Bryan Wilson
Pieter S. de Ganon
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600
bwilson@mofo.com
pdeganon@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6727
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant
Seattle Genetics, Inc.*

Dated: December 17, 2019

sf-4146317

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ..........................................................................................................2

    A. "Scope Of Any Patent . . . Rights" In Section 19.3.6 Does Not Encompass Contractual Ownership Issues ............................................2

    B. DSC's Interpretation Of The Exception Would Swallow The Agreement To Arbitrate .....................................................................4

    C. The Arbitrator Decides Arbitrability......................................................7

    D. Even Under DSC's Theory, At Least A Stay Is Warranted.................9

    E. DSC Should Have, But Failed, To Follow The Dispute Resolution Procedure ........................................................................10

III. CONCLUSION.....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appforge, Inc. v. Extended Sys., Inc.*,
  No. C.A.04-704-GMS, 2005 WL 705341 (D. Del. Mar. 28, 2005) ............... 9, 10

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
  935 F.3d 274 (5th Cir. 2019) ...................................................................................9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ..................................................................................................9

*Bd. of Regents, Univ. of Tex. Sys., ex rel. Univ. of Tex. v. Nippon Tel. &
  Tel. Corp.*,
  414 F.3d 1358 (Fed. Cir. 2005) ..........................................................................3

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
  809 F.3d 746 (3d Cir. 2016) ..................................................................................8

*Delta & Pine Land Co.* v. *Monsanto Co.*,
  No. Civ.A.1970-N, 2006 WL 1510417 (Del. Ch. May 24, 2006) ............... 4, 6, 9

*EPOS Techs. Ltd. v. Pegasus Techs. Ltd.*,
  766 F.3d 1338 (Fed. Cir. 2014) ..........................................................................2

*Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*,
  561 F.3d 1340 (Fed. Cir. 2009) ..........................................................................4

*Gunn v. Minton*,
  568 U.S. 251 (2013) ..............................................................................................4, 9

*Jarecki v. G. D. Searle & Co.*,
  367 U.S. 303 (1961) ..................................................................................................3

*Liveware Publishing, Inc. v. Best Software, Inc.*,
  252 F. Supp. 2d 74 (D. Del. 2003) .......................................................... 6, 10, 11

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  247 F.3d 44 (3d Cir. 2001) ..................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ..............................................................................8

*Promptu Sys. Corp. v. Comcast Corp.*,
   No. 2:16-cv-06516, 2017 WL 4475966 (E.D. Pa. May 18, 2017) .......................8

*Rhone-Poulenc Specialties Chimiques v. SCM Corp.*,
   769 F.2d 1569 (Fed. Cir. 1985) ...........................................................................3

*Temsa Ulasim Araclari Sanayi Ve Ticaret A.S. v. CH Bus Sales, LLC*,
   No. 18-698-RGA, 2018 WL 4905593 (D. Del. Oct. 9, 2018).............................7

## I.     INTRODUCTION

This is a dispute about *ownership* of technology under a contract, not the scope of patent rights.  The parties agreed to arbitrate *any* dispute or disagreement that arises in respect of the contractual terms of their Agreement.  (Ex. 1[1] § 19.3.) It follows that the application and interpretation of the ownership provision of the Agreement's Improvements clause are arbitrable issues.  If this were a patent infringement action, the limited carve-out of Section 19.3.6 would apply because such suits involve ascertaining the scope of the claims against an accused product, and inventorship, validity, and enforceability are potential defenses.  But the Agreement does not carve out ownership or breach of contract, issues implicating state law that pertain to the claims at issue here.

DSC attempts to avoid arbitration by mischaracterizing the dispute and SGI's position.  Just as SGI has not asserted that DSC infringes any patents, SGI did not read the word "rights" out of Section 19.3.6.  (D.I. 20 ("DSC Opp'n") at 15.)  To the contrary, SGI was clear that the "'scope' of a patent *right* means what the patent covers, which is conceptually and legally separate from who owns it." (D.I. 7 ("SGI Br.") at 16 (emphasis added).)  SGI's cases—which DSC fails to address, much less distinguish—were clear that patent "claims . . . define the scope

---

[1] All references to "Ex." are to D.I. 9.

1

of the patent *right*" and "claim construction . . . [is a] legal statement of the scope of the patent *right*." (*Id.* at 17 (emphases added, citations and quotations omitted).)

Had the parties intended to send ownership disputes to court, they could have added "ownership" to Section 19.3.6. They did not. The Agreement thus draws a clear distinction between ownership and the scope of patent rights. (SGI Br. at 15–18.) Section 19.3.6 commits only disputes concerning the latter to a federal court of competent jurisdiction. (Ex. 1 § 19.3.6.) Under the parties' agreed-upon framework, this case belongs in arbitration.

**II.    ARGUMENT**

    **A.    "Scope Of Any Patent . . . Rights" In Section 19.3.6 Does Not Encompass Contractual Ownership Issues**

Section 19.3.6 is a limited exception to the parties' commitment to arbitrate "*any* dispute or disagreement [that] arises between [the parties] in respect of this Agreement." (Ex. 1 § 19.3 (emphasis added).) As DSC concedes, "[t]his is [a] contract case." (D.I. 14 at 1.) To give effect to the broad command to arbitrate, Section 19.3.6 cannot be expanded to cover the contractual disputes at issue here.

Against that backdrop, the only reasonable interpretation of "scope of any patent . . . rights" is that it refers to claim scope, an issue ordinarily resolved by claim construction in federal court. *EPOS Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014) ("Claim construction is a legal statement of the scope of the patent right.") (internal quotations omitted). That "scope of patent . . .

2

rights" refers to the breadth of a patent's claims as opposed to ownership is supported by the way the parties drafted Section 19.3.6. "[A] word is known by the company it keeps." *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961). In addition to "scope," Section 19.3.6 mentions "inventorship," "validity," and "enforceability"—all of which are "substantial questions of patent law." *Bd. of Regents, Univ. of Tex. Sys., ex rel. Univ. of Tex. v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363 (Fed. Cir. 2005). So, too, is the scope of a patent. As the Federal Circuit explained in *Rhone-Poulenc*, "issues of scope and infringement should be considered together as they are not separate and distinct issues." *Rhone-Poulenc Specialties Chimiques v. SCM Corp.*, 769 F.2d 1569, 1572 (Fed. Cir. 1985).

Nor does the definition of "SGI Technology" limit this case to scope issues concerning "SGI Patents," as DSC would have this Court believe. (DSC Opp'n at 17.) "SGI Technology" also includes "SGI Know-How," defined as all information not in the public domain related to SGI's Drug Conjugation Technology. (Ex. 1 §§ 1.1.65 (SGI Technology), 1.1.63 (SGI Know-How).) DSC is silent about the know-how component to this dispute because it does not fit into DSC's "scope of patent . . . rights" theory. The SGI Patents component does not mesh either, because that definition incorporates a list of patents *and applications*. (*Id.* at Schedule B.) At the time of the Agreement's execution, these applications would have had unissued claims without scope to interpret. What SGI Technology

3

refers to, then, is a collection of SGI-developed subject matter from which to judge Improvements, an analysis that involves comparing technology descriptions, not the breadth of patent claims.

Section 19.3.6 does *not* mention, as DSC would have it, "licensing," "assignment," or "ownership." In contrast to patent "scope," these are contract issues governed by a separate body of law. *See, e.g.*, *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, 561 F.3d 1340, 1343 (Fed. Cir. 2009) ("Construction of patent assignment agreements is a matter of state contract law."); *Delta & Pine Land Co.* v. *Monsanto Co.*, No. Civ.A.1970-N, 2006 WL 1510417, at *3 n.16 (Del. Ch. May 24, 2006) ("State courts have jurisdiction to resolve disputes arising out of licensing agreements.") (citation omitted). Arbitrators are well equipped to handle these types of disputes, and the parties here agreed to send them to arbitration. While resolving them may, at times, touch on patent issues, they do not raise a substantial question of federal patent law. *Accord Gunn v. Minton*, 568 U.S. 251, 258 (2013) (holding that malpractice disputes with embedded patent law issues do not raise a substantial patent law question).

      **B.**    **DSC's Interpretation Of The Exception Would Swallow The Agreement To Arbitrate**

DSC's expansive reading of Section 19.3.6 does not withstand scrutiny. The limited carve-out phrase "scope of any patent . . . rights" cannot be interpreted to mean any and all disputes that involve a patent. Many clauses in the Agreement

4

mention patents. As DSC acknowledges, the Agreement allocates patent rights, including patent licensing and ownership rights. (*E.g.*, D.I. 1 ¶ 6, ¶ 29, ¶ 35.) DSC was, after all, obtaining a license to use SGI's technology, including SGI's patents on that technology. Yet DSC argues that disputes involving "the breadth or extent of the patent rights held by the parties"—including "practic[ing]," "licens[ing]," and "transfer[ring] rights in the patent"—may not be arbitrated. (DSC Opp'n at 12–13.) None of these terms appear in Section 19.3.6.

On DSC's reading, Section 19.3.6 swallows the rule that "any dispute or disagreement [that] arises . . . in respect of this Agreement" must be arbitrated. (Ex. 1 § 19.3.) If, as DSC proposes, the "scope of any patent . . . rights" under Section 19.3.6 includes any dispute that relates to a patent license, the provision directing disputes arising in respect of the Agreement to arbitration would have no meaning. DSC would have the Agreement let either party opt out of arbitration merely by asserting that a dispute *could* implicate patents. (DSC Opp'n at 13–14.) The command to arbitrate "any" dispute arising in respect of the Agreement cannot coexist with DSC's boundless interpretation of the exception. *Any* dispute under the Agreement might arguably have some tangential relation to patents.

In a closely analogous case, the Delaware Court of Chancery rejected a similar exception-swallows-the-rule interpretation of a license agreement. There, the dispute concerned a license agreement incorporating a broad mandatory

arbitration provision with a carve-out for "issues involving patent rights." *Delta & Pine Land Co.*, 2006 WL 1510417, at *1. In finding the dispute arbitrable, the court explained:

> In a sense, every disagreement among the parties under the License Agreement or the Option Agreement involves patent rights because, but for those patent rights, there would be no agreements. . . . Accordingly, a broad reading of the patent rights exclusion would subsume the parties' intent to arbitrate any issue.

*Id.* at *3; *see also Liveware Publishing, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 83 (D. Del. 2003) (warning against broad construction of exception to binding arbitration clause).

DSC's claim that SGI would have any dispute "automatically be subject to arbitration, regardless of whether that dispute fell within §19.3.6 or not" (DSC Opp'n at 12) is a strawman that bears no resemblance to SGI's actual position. A patent infringement suit would fall under that provision, and thus be subject to litigation in federal court. Similarly, a party would be free to pursue *inter partes* review of a patent that relates to the Agreement before the Patent Trial and Appeal Board at the U.S. Patent Office. These claims clearly relate to "validity, enforceability or scope" of patent rights, and thus would not be arbitrable. (Ex. 1 § 19.3.6.)

That is not the case, however, for the parties' ownership dispute—a dispute SGI raises through quiet title and breach of contract claims (Ex. 3 ¶¶ 36–46) and

DSC raises through a declaratory relief claim (D.I. 1)—which will require analysis under Washington state law. These claims are distinct from the patent law issues enumerated within Section 19.3.6's limited exception, and any question about whether they fit within the exception should be resolved in favor of arbitration. *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) ("Federal policy favors arbitration and thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration.").

### C. The Arbitrator Decides Arbitrability

The rule that governs who decides arbitrability in this case cannot be contested. In bilateral agreements like this one, incorporation of the AAA rules provides "clear and unmistakable evidence that arbitrability is to be determined by the arbitration panel, and not the court." *Temsa Ulasim Araclari Sanayi Ve Ticaret A.S. v. CH Bus Sales, LLC*, No. 18-698-RGA, 2018 WL 4905593, at *2 (D. Del. Oct. 9, 2018). Unable to refute *Temsa*, DSC dismisses the case as inapplicable because it involved two separate agreements. (DSC Opp'n at 8 n.10.) The number of agreements, however, is irrelevant. What matters, the court found, is that the agreement incorporating the AAA rules, like the parties' Agreement here, "serve[d] as the basis of [the parties'] claims in the arbitration." *Temsa*, 2018 WL 4905593, at *2.

sf-4146317

*Chesapeake*, DSC's principal authority, involved *class arbitrability*, which "implicates a particular set of concerns that are absent in the bilateral context." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 764 (3d Cir. 2016). The contract there was silent on classwide arbitration, raising concerns about whether arbitration of class action claims was intended. *Id.* at 759–60. But the Third Circuit recognized that in the bilateral context—the situation we have here—incorporation of the AAA rules means that the arbitrator decides arbitrability. *Id.* at 763–64; *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1071 (9th Cir. 2013).

Contrary to DSC's lengthy footnote (DSC Opp'n at 9 n.11), incorporation of the AAA rules has that effect even when the arbitration provision contains exceptions. "Delaware courts have repeatedly rejected [the] argument that, if an arbitration provision contains any exceptions, then the parties did not intend to empower the arbitrator to determine substantive arbitrability for all other contractual claims." *Promptu Sys. Corp. v. Comcast Corp.*, No. 2:16-cv-06516, 2017 WL 4475966, at *5 (E.D. Pa. May 18, 2017) (incorporation of AAA rules means that arbitrator decides arbitrability despite intellectual property dispute exception).

DSC's authorities either do not address the AAA rules or concern situations where there was "no plausible argument" that the arbitration provision applied.

*See, e.g.*, *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 278 (5th Cir. 2019). Here, it may not "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" this dispute. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). If there are any legitimate questions as to arbitrability, the arbitrator should resolve them.

### D. Even Under DSC's Theory, At Least A Stay Is Warranted

DSC's framing of this case as a patent dispute mischaracterizes it. SGI's claims are for "Declaratory Relief/Quiet Title" and "Breach of Contract." (Ex. 3 at 13–14.) "The FAA provides for a stay of the proceedings when 'any issue' is referable to arbitration." *Appforge, Inc. v. Extended Sys., Inc.*, No. C.A.04-704-GMS, 2005 WL 705341, at *9 (D. Del. Mar. 28, 2005) (citing 9 U.S.C. § 3). SGI's claims plainly raise substantive non-patent issues under state law, including interpretation and application of the Agreement's Improvements clause and the Washington statute governing quiet title actions. (*See* Ex. 3 ¶¶ 36–42 (citing RCW 7.28.310).) Under the Agreement, these non-patent issues must be decided in arbitration.

Even if analysis of these issues were to implicate some substantial question regarding the scope of patent rights—which is doubtful, *see Delta & Pine Land Co.*, 2006 WL 1510417, at *3; *cf. Gunn*, 568 U.S. at 258 (patent issue not sufficiently substantial to trigger federal court jurisdiction)—the proper course is to

9

stay these proceedings until the arbitrable issues are resolved. *Appforge*, 2005 WL 705341, at *10. In *Liveware*, the parties' contract committed to court "injunctive relief" and "intellectual property rights" issues, while providing for arbitration of all other disputes. 252 F. Supp. 2d at 79, 84. The court there found the parties' contractual claims "not within the explicit exception," and stayed the case pending their resolution. *Id.* at 82–83. For when a dispute includes arbitrable and non-arbitrable issues, the arbitrable issues should be heard first. *Id.* at 82 n.7.

### E. DSC Should Have, But Failed, To Follow The Dispute Resolution Procedure

DSC concedes, by failing to refute, that it initially engaged in the dispute resolution process under the Agreement. (SGI Br. at 20–21.) These procedures are not optional. The Agreement states, without exception, that the parties "*shall* follow the following procedure in an attempt to resolve the dispute or disagreement." (Ex. 1 § 19.3 (emphasis added).) DSC's argument that it may now skip some of the procedures outlined in Section 19.3.4 because Section 19.3.6 is an "independent dispute resolution clause" (DSC Opp'n at 18) makes no sense. On that logic, DSC could also choose to skip Section 19.3.5, covering outstanding payments under the Agreement.

More to the point, in an apparent effort to forum select and to avoid the commitment to arbitrate, DSC chose to skip Section 19.3.3 by suing *before* the contractually-mandated meeting already scheduled between SGI's President and

CEO and DSC's Executive Officer. Yet DSC did so *after* participating in (and acknowledging that it was participating in) Section 19.3's procedures (SGI Br. at 20–21)—a clear concession that they apply.

## III. CONCLUSION

"Few things in the law have been the subject of so consistent and insistent language from Congress and the courts as the deference that should be given to contractual agreements to arbitrate." *Liveware*, 252 F. Supp. 2d at 81. Because this dispute arises in respect of the Agreement, it belongs in arbitration.

Dated: December 17, 2019

*Of Counsel:*

MORRISON & FOERSTER LLP
Michael A. Jacobs
Matthew A. Chivvis
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

MORRISON & FOERSTER LLP
Bryan Wilson
Pieter S. de Ganon
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600

YOUNG CONAWAY STARGATT & TAYLOR, LLP

 /s/ *Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6727
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant*
*Seattle Genetics, Inc.*

11

sf-4146317

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document complies with the Court's type and number limitations because it has been prepared in Times New Roman 14-point typeface using Microsoft Word, and contains less than 2500 words as determined by the Word Count feature of Microsoft Word 2016, exclusive of the caption, tables, and signature blocks.

Dated: December 17, 2019               */s/ Anne Shea Gaza*
                                        Anne Shea Gaza (No. 4093)

## **CERTIFICATE OF SERVICE**

I, Anne Shea Gaza, hereby certify that on December 17, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Steven J. Balick
>Andrew C. Mayo
>ASHBY & GEDDES
>500 Delaware Avenue, 8th Floor
>P.O. Box 1150
>Wilmington, DE 19899
>(302) 654-1888
>sbalick@ashbygeddes.com
>amayo@ashbygeddes.com

*Attorneys for Plaintiff*

I further certify that on December 17, 2019**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following counsel:

>Preston K. Ratliff II
>Joseph M. O'Malley
>Isaac S. Ashkenazi
>Ashley N. Mays-Williams
>PAUL HASTINGS LLP
>200 Park Avenue
>New York, NY 10166
>(212) 318-6000
>prestonratliff@paulhastings.com
>josephomalley@paulhastings.com
>isaacashkenazi@paulhastings.com
>ashleymayswilliams@paulhastings.com

*Attorneys for Plaintiff*

25594836.1

2

| | |
|---|---|
| Dated:  December 17, 2019 | YOUNG CONAWAY STARGATT  & TAYLOR, LLP |
| | |
| | */s/ Anne Shea Gaza*  |
| | Anne Shea Gaza (No. 4093) |
| | Samantha G. Wilson (No. 5816) |
| | Rodney Square |
| | 1000 North King Street |
| | Wilmington, Delaware 19801 |
| | (302) 571-6600 |
| | agaza@ycst.com |
| | swilson@ycst.com |
| | |
| | *Attorneys for Seattle Genetics, Inc.* |