# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAIICHI SANKYO COMPANY, LIMITED, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | C.A. No. 19-2087-CFC |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| SEATTLE GENETICS, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |

## PLAINTIFF'S ANSWERING BRIEF IN
## <u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
*Of Counsel:*                                   P.O. Box 1150
                                                Wilmington, DE 19899
Preston K. Ratliff II                           (302) 654-1888
Joseph M. O'Malley                              sbalick@ashbygeddes.com
Isaac S. Ashkenazi                              amayo@ashbygeddes.com
Ashley N. Mays-Williams
Paul Hastings LLP                               *Attorneys for Plaintiff*
200 Park Avenue
New York, NY 10166
(212) 318-6000

December 10, 2019

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

SUMMARY OF ARGUMENT ...............................................................5

CONCISE STATEMENT OF KEY FACTS ...........................................6

ARGUMENT ...........................................................................................7

    A.    Under Applicable Precedent, This Court Decides the Threshold
           Issue of Arbitrability ................................................................7

    B.    The Agreement Unambiguously Directs That This Dispute
           Must Be Resolved By "a Court of Competent Jurisdiction" ..............9

           1.    Subsection 19.3.6 Is an Independent Dispute Resolution
                 Provision That Governs This Dispute......................................10

           2.    Well-Settled Principles of Contract Interpretation
                 Foreclose SGI's Strained Construction....................................11

    C.    The Parties' Dispute Falls Within §19.3.6 .......................................12

           1.    Subsection 19.3.6 Requires Disputes Related to the
                 Scope of Patent Rights Held by Each Party to Be
                 Litigated in Court ...................................................................12

           2.    SGI Ignores the Agreement's Language and Rewrites
                 §19.3.6 to Cover Only Disputes Relating to Patent Scope......15

           3.    The Current Dispute Must Be Resolved in Court Even If
                 the Court Agrees with SGI's Interpretation of §19.3.6 ..........17

    D.    DSC Was Not Required to Follow Pre-Arbitration Procedures
           Before Filing Its Action in District Court .........................................18

CONCLUSION ......................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*,
    604 F.3d 1354 (Fed. Cir. 2010) ............................................................2

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
    935 F.3d 274 (5th Cir. 2019) ...............................................................9

*Carl Schenck, A.G. v. Nortron Corp.*,
    713 F.2d 782 (Fed. Cir. 1983) ............................................................13

*Casper v. Gen. Med., P.C.*,
    2005 WL 1540489 (Mich. Ct. App. June 30, 2005).........................19

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
    809 F.3d 746 (3d Cir. 2016) ...........................................................8, 10

*Cipla Ltd. v. Amgen Inc.*,
    778 F. App'x 135 (3d Cir. 2019) .......................................................10

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006)........................................................................2, 13

*Engelhard Corp. v. NLRB*,
    437 F.3d 374 (3d Cir. 2006) ..............................................................12

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*,
    766 F.3d 1338 (Fed. Cir. 2014) .........................................................16

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)....................................................................3, 7, 8

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
    527 U.S. 627 (1999)............................................................................15

*Gen. Elec. Co. v. Deutz AG*,
    270 F.3d 144 (3d Cir. 2001) ................................................................7

*In re The Estate of Anches*,
    2019 WL 3417100 (Wash. Ct. App. July 29, 2019)............................8

*Intel Corp. v. Broadcom Corp.*,
  173 F. Supp. 2d 201 (D. Del. 2001).....................................................................12

*Jones Lang Lasalle Ams. Inc. v. Int'l Bhd. of Elec. Workers Local*
  *Union No. 313*,
  2017 WL 6417631 (D. Del. Dec. 15, 2017) .......................................................10

*Local 827, Int'l Bhd. of Elec. Workers v. Verizon N.J., Inc.*,
  458 F.3d 305 (3d Cir. 2006) ................................................................................10

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  247 F.3d 44 (3d Cir. 2001) .............................................................................11, 12

*Motion Picture Patents Co. v. Universal Film Mfg. Co.*,
  243 U.S. 502 (1917)..............................................................................................16

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
  770 F.3d 1010 (2d Cir. 2014) ................................................................................9

*Oil, Chem. & Atomic Workers Int'l Union v. Texaco Ref. & Mktg., Inc.*,
  660 F. Supp. 1350 (D. Del. 1987)...................................................................10, 11

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ............................................................................8, 9

*Propat Int'l Corp. v. RPost, Inc.*,
  473 F.3d 1187 (Fed. Cir. 2007) ...........................................................................13

*Puleo v. Chase Bank USA, N.A.*,
  605 F.3d 172 (3d Cir. 2010) ..................................................................................7

*Shepler Constr., Inc. v. Leonard*,
  306 P.3d 988 (Wash. Ct. App. 2013).............................................................18, 19

*Spokane Sch. Dist. No. 81 v. Spokane Educ. Ass'n*,
  331 P.3d 60 (Wash. Ct. App. 2014)......................................................................11

*Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc.*,
  156 P.3d 293 (Wash. Ct. App. 2007)...........................................................9, 11, 12

*Temsa Ulasim Araclari Sanayi Ve Ticaret A.S. v. CH Bus Sales, LLC*,
  2018 WL 4905593 (D. Del. Oct. 9, 2018) .............................................................8

**Statutes**

35 U.S.C. §261 (2018) ...............................................................................................13

**INTRODUCTION**

Seattle Genetics, Inc.'s ("SGI") Motion to Dismiss Daiichi Sankyo Company, Limited's ("DSC") Complaint should be denied.  As SGI admits, the parties' dispute concerns who owns or holds patent rights to the technology claimed in certain DSC patents and patent applications (the "Patents and Patent Applications at Issue").[1]  SGI relies on §19.3.4 of the parties' July 2, 2008 Collaboration Agreement (the "Agreement"), which provides that certain kinds of disputes under the Agreement are to be resolved via arbitration, and sets forth a procedure to be followed in such situations.  However, §19.3.6 of the Agreement specifically provides that, notwithstanding any other dispute resolution clause in the Agreement, "any disputes relating to . . . the . . . scope of any patent . . . rights shall be submitted for resolution by a court of competent jurisdiction."  Consistent with the parties' binding agreement, DSC filed this suit to resolve the parties' dispute, which "relat[es] to" the scope of patent rights for each of the Patents and Patent Applications at Issue and to which SGI now (wrongly) claims ownership.

SGI seeks to avoid having this Court determine patent issues by characterizing §19.3.6 as covering only disputes regarding "patent scope," but the ***actual*** contractual phrase is broader covering any dispute about the "scope of any

---

[1]      *See* D.I. 7 at 6-8.

patent . . . *rights*."[2]  "Patent rights" refer to the rights conferred to patent owners, including the fundamental "right to *exclude* others from making, using, offering for sale, or selling invention[s]."[3]  "Scope," standing alone, may refer to the breadth, extent, or coverage of a patent claim, but §19.3.6 explicitly refers to the scope of patent rights, not the scope of patent claims.  "Scope" in the context of §19.3.6 refers to the breadth or extent of patent rights held by the parties, which is precisely what this suit is about.  Indeed, DSC's Complaint squarely alleges a dispute about the scope of DSC's and SGI's patent rights, a critical predicate for the declaration of ownership sought by DSC.[4]

Even if SGI's revised language ("patent scope") were applied, SGI's Motion to Dismiss should still be denied because this case does raise a dispute of "patent scope."  SGI asserts that DSC's revolutionary antibody drug conjugate ("ADC") technology is an "Improvement" that relates to "Drug Conjugation Technology," which must be assigned to SGI pursuant to the terms of the Agreement.  "Improvements" are defined in §1.1.32 as "inventions . . . that utilize, incorporate, derive directly from, directly relate to, are made using or are based directly on the

---

[2]     *See, e.g.*, D.I. 7 at 2.  Unless otherwise indicated, all internal citations have been omitted, and all emphases have been added.

[3]     *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006); *see also Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1360-63 (Fed. Cir. 2010) (explaining the "bundle of rights" associated with patents).

[4]     *See* D.I. 1, at ¶¶12-14, 35-36, 46-47.

SGI Technology," which is defined to include the "SGI Patents."[5]  To resolve the parties' dispute, the Court must, *inter alia*, make a gateway finding regarding the scope of SGI's patents.  Without that foundational analysis and determination of what is within the scope of SGI's patents (and conversely, what is outside and within the public domain to be freely practiced or improved upon), the Court cannot properly determine whether the Patents and Patent Applications at Issue are "Improvements."

In trying to avoid having this Court decide even the question of arbitrability in favor of an arbitrator, SGI ignores Supreme Court precedent that requires a district court to decide the issue of arbitrability unless the party moving to dismiss proves a "clea[r] and unmistakabl[e]" agreement otherwise.[6]  That high bar has not been met here.  SGI's final efforts to avoid district court resolution of the patent issues, through arguments concerning a purported premature action by DSC, are factually unsupported.  They are also irrelevant because the procedural clauses cited by SGI are not applicable to §19.3.6, which applies here.

## NATURE AND STAGE OF THE PROCEEDINGS

DSC is a pioneering pharmaceutical company with a rich pipeline of products utilizing its own ADC technology—including one

---

[5]     *See infra* pp. 17-18.

[6]     *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

(DS-8201)—recognized by the FDA as being a potentially significant advancement in cancer therapy.  (*See* D.I. 1 at ¶¶7, 21-24; *see also* Exh.[7] 2; Exh. 3.)  DSC began developing its ADC technology by devoting significant resources to research into cytotoxic payloads and conjugating materials for cytotoxic drug delivery in the 1990s—before SGI existed.  (*See* D.I. 1 at ¶3.)

Separately, in 2008, DSC and SGI entered into the Agreement in hopes of developing different ADCs that combined some DSC proprietary antibodies with two SGI cytotoxins.  (*See* D.I. 1 at ¶¶28-37.)  The ADC research under the Agreement did not result in any viable clinical drug candidate.  (*See* D.I. 1 at ¶37.)  DSC sent SGI a notice of termination, which took effect on June 30, 2015.  (*See* Exh. 4.)  DSC paid SGI a license fee for the work performed pursuant to the Agreement, but because the research did not produce any viable clinical drug candidate, SGI was not entitled to any milestone payments or royalties.

On August 19, 2019, nearly two years after DSC announced it had received Breakthrough Therapy designation for DS-8201, and four years after the termination of the Agreement, SGI sent DSC a letter claiming that under the

---

[7]     "Exh." refers to the exhibits attached to the December 10, 2019 Declaration of Preston K. Ratliff II submitted in support of Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss.  All references and citations to the Agreement refer to Exhibit 1.

Agreement, DSC was obligated to surrender its rights to the Patents and Patent

Applications at Issue covering, *inter alia*, DS-8201.[8]  (*See* D.I. 1 at ¶11.)

On November 4, 2019, DSC filed this action to protect its patent rights in its

extensive and innovative work.  In response, on November 12, 2019, SGI filed a

demand for arbitration of the same dispute with the American Arbitration

Association ("AAA") in contravention of the parties' contractual obligations.  (*See*

D.I. 9 at Exh. 3.)  On November 19, 2019, SGI moved to dismiss this action in

favor of arbitration.

## SUMMARY OF ARGUMENT

1.      Under §19.3 of the Agreement, this Court should determine the

arbitrability of the parties' dispute because there is no "clear and unmistakable"

intent to arbitrate the issue of arbitrability.

2.      Subsection 19.3.6 of the Agreement mandates that a court of

competent jurisdiction (and not an arbitrator) resolve this dispute because this

dispute relates to the "scope of any patent . . . rights."

---

[8]      SGI's motion asserts that it only recently learned of DSC's ADC technology
and related intellectual property (*see* D.I. 7 at 2), an incredible statement in view of
the many publicly accessible patents, publications, and presentations describing
this technology, which have been available for many years.

3.      SGI claims rights to the Patents and Patent Applications at Issue, which puts this dispute squarely within §19.3.6, even under SGI's improper interpretation of this provision.

4.      The pre-arbitration procedures in the Agreement do not apply because, under §19.3.6, this dispute should not be arbitrated.

## CONCISE STATEMENT OF KEY FACTS

The Agreement contains two mutually exclusive methods of dispute resolution:  §19.3.4 (in arbitration) and §19.3.6 (in court).  Each clause sets forth the exclusive option for resolution of any disputes within its terms.

Subsection 19.3.4 provides that if disputes "in respect of this Agreement" cannot be resolved, they "shall be submitted . . . for resolution by an arbitral body . . . *except as otherwise provided herein*."  (§§19.3, 19.3.4.)

The alternative path in §19.3.6 provides that "[*n*]*otwithstanding the foregoing* [including §19.3.4]" disputes involving, *inter alia*, the "scope of any patent . . . rights shall be submitted for resolution by a court of competent jurisdiction."  (§19.3.6.)  Read together with §19.3.4, the parties contracted that any disputes relating to the scope of any patent rights, as this dispute is, cannot be arbitrated but must be decided by a court of competent jurisdiction.

## ARGUMENT

### A.   Under Applicable Precedent, This Court Decides the Threshold Issue of Arbitrability

Although SGI argues that this Court possesses the authority to rule that the parties' dispute falls outside of the §19.3.6 court clause, SGI *also* argues that this Court possesses no such authority because any question regarding arbitrability allegedly "must be resolved by the arbitrator."  (D.I. 7 at 18-19.)  DSC addresses this issue here because it is a threshold issue.

Although SGI does not mention the case in its brief, the Supreme Court has declared that courts "should not assume that . . . parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944.  Numerous Third Circuit decisions have followed *First Options* for the proposition that a court (and not an arbitrator) must determine arbitrability unless the parties "clearly and unmistakably" decided otherwise.  *See, e.g.*, *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 187-88 (3d Cir. 2010) (court determines the question of arbitrability when a signed contract does not designate the issue for the arbitrators); *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 154 (3d Cir. 2001) (same).

Here, the Agreement contains no "clear and unmistakable" intent to arbitrate arbitrability.  On the contrary, §19.3.6 expressly provides that disputes regarding the scope of any patent rights must be submitted for resolution to "a court of

competent jurisdiction."  As *First Options* makes plain, SGI may not circumvent the explicit jurisdictional mandate of §19.3.6 by attempting to block this Court from deciding the arbitrability of the parties' dispute.

SGI argues that because the §19.3.4 arbitration clause incorporates the AAA rules, the parties clearly and unmistakably intended for an arbitrator to decide the issue of arbitrability.  (*See* D.I. 7 at 18-19.)  SGI relies on *dicta* from *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, which quotes from *Oracle America, Inc. v. Myriad Group A.G.*[9]  (*See* D.I. 7 at 19.)  However, SGI ignores that *Chesapeake Appalachia* **rejected** the categorical position SGI advocates; there, the Third Circuit held that incorporation of the AAA rules was "not enough" to relegate a threshold jurisdictional question, the availability of class arbitration, to the arbitrator.  *See Chesapeake Appalachia*, 809 F.3d at 749, 761-62.[10]  In its brief, SGI also ignores that the Third Circuit (as well as certain other circuits), have

---

[9]      *See* 809 F.3d 746, 763 (3d Cir. 2016) (citing 724 F.3d 1069, 1074 (9th Cir. 2013)).

[10]      The other cases SGI invokes are also inapposite.  Contrary to the facts here, in *Temsa Ulasim Araclari Sanayi Ve Ticaret A.S. v. CH Bus Sales, LLC*, the parties signed two separate agreements, the first directing arbitration and incorporating the AAA rules, and the second directing litigation.  *See* 2018 WL 4905593, at *1 (D. Del. Oct. 9, 2018).  The court rejected the argument that the latter agreement superseded the former as to all dispute resolution.  *See id.* at *2.  And the agreement in *In re The Estate of Anches* specifically dictated that an arbitrator would decide the arbitrability of any claims.  *See* 2019 WL 3417100, at *2 (Wash. Ct. App. July 29, 2019).  It also contained no division of jurisdiction, in contrast to the Agreement at issue here.  *See id.*

found that incorporation of the AAA rules is not necessarily a clear and

unmistakable agreement to arbitrate arbitrability.  *See id.*[11]

### B. The Agreement Unambiguously Directs That This Dispute Must Be Resolved By "a Court of Competent Jurisdiction"

The dispute at the heart of this action—the scope of patent rights—falls

squarely within §19.3.6, and thus is for this Court to decide.[12]

---

[11]   The sentence at issue in *Oracle* is very different from the sentence that SGI relies on because in *Oracle* the sentence contains no language of exception. *See* 724 F.3d 1069, 1071 (9th Cir. 2013).  In contrast, here, and in other cases that have decided there was no agreement to arbitrate arbitrability, the parties incorporated language of exception into the AAA sentence.  The AAA sentence here concludes with the explicit provision "***except as otherwise provided herein***." (§19.3.4.)  *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 277, 280 (5th Cir. 2019) ("[a]ny dispute . . . except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property . . . shall be resolved . . . in accordance with the [AAA Rules]") (emphasis omitted); *NASDAQ OMX Grp., Inc. v. UBS Sec. LLC*, 770 F.3d 1010, 1016 (2d Cir. 2014) ("Except as otherwise provided herein or by agreement of the Parties, any arbitration proceeding shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . .").  Washington courts have also found that incorporation of arbitration rules does not alone establish clear and unmistakable agreement to arbitrate.  *See Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc.*, 156 P.3d 293, 298-300 (Wash. Ct. App. 2007) (finding no clear agreement to arbitrate arbitrability in agreement that incorporated arbitration rules).

[12]   Despite moving this Court to decide whether the parties' dispute should continue in district court or proceed in arbitration, SGI recently told the AAA it should proceed with administration of its arbitration demand.  Although DSC objects to the arbitration, it is not delaying administration of that proceeding. Should the arbitration move significantly forward while SGI's motion is pending, DSC may seek the Court's assistance for relief.

### 1. Subsection 19.3.6 Is an Independent Dispute Resolution Provision That Governs This Dispute

Subsection 19.3.6 is a free-standing dispute resolution provision for an array of issues.  Broad language in §19.3.6 mandates that:  "***Notwithstanding*** the foregoing, ***any disputes relating to*** . . . the . . . scope of any patent . . . rights shall be submitted for resolution by a court of competent jurisdiction."  (§19.3.6.)  The unequivocal "notwithstanding" language expressly demonstrates that §19.3.6 operates independently from the rest of §19.3.  *See Cipla Ltd. v. Amgen Inc.*, 778 F. App'x 135, 139 (3d Cir. 2019) ("[A] 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.").  Likewise, the relevant sentence of §19.3.4 emphasizes §19.3.6's independence by concluding with the phrase "***except as otherwise provided herein***."  (§19.3.4.)

SGI argues for a "presumption in favor of arbitration" (*See* D.I. 7 at 10-11), but this presumption does not apply when an agreement clearly distinguishes between claims that are arbitrable and those that are not, as is the case with §19.3.4 and §19.3.6.[13]

---

[13]     *See, e.g.*, *Local 827, Int'l Bhd. of Elec. Workers v. Verizon N.J., Inc.*, 458 F.3d 305, 311 (3d Cir. 2006) ("If the clause is not ambiguous and clearly delimits the issues subject to arbitration, the presumption of arbitrability does not apply."); *Jones Lang Lasalle Ams. Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 313*, 2017 WL 6417631, at *3 (D. Del. Dec. 15, 2017) (applying *Chesapeake Appalachia* to bilateral arbitration agreements); *Oil, Chem. & Atomic Workers Int'l*

### 2.   Well-Settled Principles of Contract Interpretation Foreclose SGI's Strained Construction

Notwithstanding the structure and language of §19.3, SGI argues that §19.3 compels a "broad construction" of the §19.3.4 arbitration clause because it allegedly directs arbitration of "*any* dispute or disagreement [that] *arises . . . in respect of* this Agreement."  (D.I. 7 at 13 (emphasis in original).)  But the §19.3.6 court clause is a part of §19.3 and provides important language—*[n]otwithstanding* the foregoing, ***any disputes relating to*** . . ."—that reserves certain disputes exclusively for judicial determination.  Indeed, §19.3.6 is precisely the kind of express provision excluding a particular type of dispute from arbitration that allows a court to say "with positive assurance" that the arbitration clause does not cover disputes relating to the scope of patent rights.  *See Tacoma*, 156 P.3d at 300 (Wash. Ct. App. 2007).[14]

---

*Union v. Texaco Ref. & Mktg., Inc.*, 660 F. Supp. 1350, 1355-56 (D. Del. 1987) (Even when presumption in favor of arbitration is considered, "[w]here the language of the exclusion [from arbitration] is clear . . . courts will enforce it because a party may not be forced to arbitrate a dispute when it did not contractually agree to do so."); *see also Spokane Sch. Dist. No. 81 v. Spokane Educ. Ass'n*, 331 P.3d 60, 65 (Wash. Ct. App. 2014) ("While favoring arbitration, the [Washington] cases respect any clear agreement . . . that certain types of grievances are not arbitrable.").  In this case, because §19.3.6 identifies those disputes that are not subject to arbitration, the presumption is inapplicable.

[14]   The general policy favoring arbitration does not require arbitration of disputes that the parties agreed they would not arbitrate.  *See, e.g.*, *Tacoma*, 156 P.3d at 300-02 (finding dispute was beyond scope of arbitration agreement despite the general policy); *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) ("[T]here is a limit as to how far a court should go

SGI therefore overreads the scope of the "arises . . . in respect of" phrase of §19.3.  In contrast to SGI's position, basic principles of contract law require interpreting agreements "in a manner that gives effect to all of its provisions" and without "'read[ing] out' the rights expressly granted" in other sections.  *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 221 (D. Del. 2001); *see also Engelhard Corp. v. NLRB*, 437 F.3d 374, 381 (3d Cir. 2006) (contract interpretation requires a court "to read, if possible, all provisions of a contract together as a harmonious whole").  Under SGI's interpretation, any dispute that arises "in respect" of the Agreement would automatically be subject to arbitration, regardless of whether that dispute fell within §19.3.6 or not.  That would impermissibly read §19.3.6 out of the Agreement.

## C.    The Parties' Dispute Falls Within §19.3.6

### 1.    Subsection 19.3.6 Requires Disputes Related to the Scope of Patent Rights Held by Each Party to Be Litigated in Court

The operative phrase of §19.3.6 is "scope of any patent . . . rights" ***not*** "patent scope."  The "scope of any patent . . . rights" refers to the breadth or extent of the patent rights held by the parties.  A closer examination of the terms "patent rights" and "scope" illustrates why.

---

in resolving a dispute in favor of arbitration because . . . 'a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt.'").

The term "patent rights" stems from the commonly understood proposition that patents "have the attributes of personal property."  35 U.S.C. §261 (2018); *see Carl Schenck, A.G. v. Nortron Corp.*, 713 F.2d 782, 784, 786 n.3 (Fed. Cir. 1983) ("Patents and licenses are exemplifications of property rights.").  These attributes mean a patent provides the owner the fundamental "right to exclude others from making, using, offering for sale, or selling the invention" claimed in the patent. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006).  The scope of patent rights includes, *inter alia*, the right to:  1) practice the patent; 2) license the invention; 3) enforce a license of the patent; 4) seek new patents on the underlying invention (i.e., pursue continuation or divisional applications); 5) transfer rights in the patent; and 6) sue for infringement.  *See Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189-94 (Fed. Cir. 2007) (analyzing "the respective rights allocated to each party under [the] agreement" at issue).  Parties can apportion patent rights by delineating the scope each party shall possess.  *See id.*

The Agreement reflects the allocation of patent rights among SGI, DSC, and third parties.  For example, Article 9 describes the allocation of several patent rights, including:  1) the right of ownership (§9.1); 2) the right to prosecute patents (§9.2); and 3) the right to sue for infringement (§9.3).  Additionally, §9.4 (titled "Prior Patent Rights") demonstrates that patent rights such as the right to prosecute patents and to sue for infringement, in certain inventions, are reserved to a third

13

party.[15]  The choice to include the phrase "scope of any patent or trademark rights" in §19.3.6 flows logically from the understanding that disputes could arise relating to the scope of each party's patent rights.

This action falls within the ambit of §19.3.6.  SGI has demanded that DSC assign the Patents and Patent Applications at Issue to SGI.  Such an assignment would transfer the entire "scope of any patent . . . rights" from DSC to SGI, and thereby interfere with DSC's right as owner to exclude any other from using, or otherwise exploiting, the Patents and Patent Applications at Issue.  This, therefore, is the most comprehensive type of dispute relating to patent rights that the Agreement dictates must be adjudicated in a court, i.e., a dispute regarding the entirety of the scope of patent rights held by DSC.[16]  (*See also* D.I. 1 at ¶¶12-14, 35-36, 46-47.)

---

[15]     Section 9.4 does this by stating that "the rights and obligations of the Parties under Section 9.2 and 9.3 shall be subject to the rights of the licensor of the SGI In-License . . . ."

[16]     A court of competent jurisdiction in this context is a federal court that has familiarity with patent issues given that patent law is foundational to the assessment of patent rights for the parties' dispute.  U.S. District Courts are particularly suited and trusted for such assessments.  *See, e.g.*, *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 659 (1999) (explaining that "[s]tate judges have never had the exposure to patent litigation that federal judges have experienced for decades . . . .").

### 2.    SGI Ignores the Agreement's Language and Rewrites §19.3.6 to Cover Only Disputes Relating to Patent Scope

SGI's motion seeks to read the word "*rights*" out of §19.3.6, and rewrite §19.3.6 to cover only disputes relating to "patent scope."  The parties used the term "scope" in §19.3.6, however, more broadly in speaking of disputes relating to "any patent or trademark *rights*"—not just the word "patent."  (*See supra* pp. 1-2.) Instead, SGI repeatedly refers to "patent scope" misleadingly transposing the words "scope" and "patent," and conveniently omitting the term "rights" in §19.3.6.  (*See, e.g.*, D.I. 7 at 2 ("But patent scope is not at issue."); *id.* at 3 ("the dispute is not over patent 'scope' . . . .").)

The term "rights" is of critical importance.  As SGI concedes, the "parties used the word 'ownership' in [Article] 9 to mean '*right*, title, and interest'" (D.I. 7 at 15-16), confirming that ownership of any particular patent depends on the "scope of any patent . . . rights."  Additionally, §9.2.2 distinguishes "patent rights" from "patent scope" by stating "*the scope of any patent* or patent application cover[s] Program Inventions or . . . the *rights of the Parties in such inventions* . . . ."  (§9.2.2.)  The Agreement, therefore, demonstrates that the "scope of any patent . . . rights" in §19.3.6 does *not* refer to just the "scope of any patent" as SGI argues.  If it did, §19.3.6 would not contain the term "rights" and would be limited to the "scope of any patent or trademark."  SGI glosses over this distinction in its citation to—and selective quoting of—§9.2.2.  (*See* D.I. 7 at 16.)

15

SGI further argues that "'scope of any patent' rights in Section 19.3.6 means patent coverage, not title" and that the parties used the term scope specifically "to mean what 'any patent' covers—to mean its claims." (D.I. 7 at 16.)  Again, SGI self-servingly ends its quote after the term "patent" and ignores that the parties used the term "scope" in §19.3.6 to modify "patent or trademark *rights*." (*See supra* pp. 1-2, 15.)

Relying on its rewritten §19.3, SGI cites case law related to "patent scope," but that is irrelevant to the "scope of any patent . . . rights"—the actual operative phrase in the Agreement.  SGI's cited cases discuss claim construction and patent tying (an antitrust issue), *not* the scope of patent rights allocated to each party.[17]  In any event, the present action will involve careful consideration of SGI's and DSC's patents and what they claim as the invention.

SGI also argues that the parties' dispute is not within §19.3.6 because the "words [of §19.3.6] necessarily implicate substantive federal patent law." (D.I. 7 at 17.)  SGI's interpretation reads words into §19.3.6 that are not there.  Notwithstanding that, even if the Court accepted this interpretation of §19.3.6, it would be consistent with the parties' dispute fitting within §19.3.6 because, as

---

[17]     *See, e.g.*, *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502, 518 (1917) (finding that the patent owner could not tie use of a patented machine to materials "wholly outside of the patent in suit"); *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1341 (Fed. Cir. 2014) (construing claims in a patent infringement suit).

explained below, an analysis and determination under the patent laws as to what is within the scope of SGI's patents is foundational to the resolution of the parties' dispute.

### 3. The Current Dispute Must Be Resolved in Court Even If the Court Agrees with SGI's Interpretation of §19.3.6

Even if, as urged by SGI, §19.3.6 covers only disputes relating to just "patent scope," SGI's Motion to Dismiss should still be denied because the Court will be considering the scope of the claims of both the SGI Patents licensed under the Agreement and the Patents and Patent Applications at Issue. For example, patent scope will relate to whether any of the Patents and Patent Applications at Issue are assignable "Improvement[s] that relate[] to the Drug Conjugation Technology" under the Agreement. (§3.3.1.)

The Patents and Patent Applications at Issue can only be "Improvements" under the Agreement if they "utilize, incorporate, derive directly from, directly relate to, are made using or are based directly on the SGI Technology," which is defined in the Agreement to include "SGI Patents." (*See* D.I. 1 at ¶36; §§1.1.32, 1.1.65.) The Court therefore must, *inter alia*, determine the scope of SGI's patents (analyze the patent specification and claims pursuant to the patent laws), otherwise, the Court cannot properly determine whether any of DSC's patents are "Improvements"—which they are not. The Court must also make a finding regarding patent scope in order to determine if the Patents and Patent Applications

at Issue relate to "Drug Conjugation Technology"—which they do not.  Because the action raises a dispute that requires analyzing and determining the scope of the foregoing patents, the dispute relates to patent scope.  By SGI's own argument, this action is properly decided by the Court.

### D.     DSC Was Not Required to Follow Pre-Arbitration Procedures Before Filing Its Action in District Court

SGI's assertion that this case should be "dismissed as unripe" because DSC "violated the Agreement's dispute resolution procedures" is baseless.  (*See* D.I. 7 at 20.)  Despite acknowledging that §19.3.6 does in fact provide an "alternative to arbitration" for certain disputes, SGI simply asserts that the alternative "does not dispose of the mandated 30-day waiting period."  (*See id.* at 21.)

SGI's argument collapses because §19.3.6 is an independent dispute resolution clause free of any limitations contained within §19.3.4.  (*See supra* pp. 9-10.)  There is no reason why jurisdiction over the instant case would depend on adherence to procedures not found in §19.3.6.  Further, §19.3.4 does not provide that failure to follow the procedures results in any waiver to pursue claims in court.  *See Shepler Constr., Inc. v. Leonard*, 306 P.3d 988, 992 (Wash. Ct. App. 2013) (trial court's dismissal was inappropriate where "the contract here does not state that . . . failure to follow the dispute resolution procedures expressly waives [the] right to pursue . . . claims in court").

18

For these reasons, SGI's scattershot citations—three unpublished cases from Delaware state court, Michigan state court, and the Northern District of California, (*see* D.I. 7 at 21-22)—are inapposite.  They merely stand for the unremarkable proposition that a contract that "***clearly*** provides" that "***any material*** dispute" must first go through mediation procedures, can result in prematurely filed litigation being dismissed.  *See Casper v. Gen. Med., P.C.*, 2005 WL 1540489, at *1, *3 (Mich. Ct. App. June 30, 2005).  That is certainly not the case here, particularly where SGI has now initiated its own Demand for Arbitration (*see* D.I. 9 at Exh. 3), thereby acknowledging that the dispute is ripe for consideration.

## CONCLUSION

For the foregoing reasons, DSC respectfully requests that the Court deny SGI's Motion to Dismiss in its entirety.

ASHBY & GEDDES

*/s/ Steven J. Balick*
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

19

*Of Counsel*:

Preston K. Ratliff II
Joseph M. O'Malley
Isaac S. Ashkenazi
Ashley N. Mays-Williams
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

December 10, 2019

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with the Court's type and number limitations because it has been prepared in Times New Roman 14-point typeface using Microsoft Word, and contains 4,723 words as determined by the Word Count feature of Microsoft Word, exclusive of the caption, tables, and signature blocks.


Dated:  December 10, 2019

ASHBY & GEDDES

*/s/ Steven J. Balick*
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com


*Attorneys for Plaintiff*