# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAIICHI SANKYO COMPANY, LIMITED, | ) ) ) |
| *Plaintiff*, | ) ) ) C.A. No. 19-2087-LPS |
| v. | ) ) |
| SEATTLE GENETICS, INC., | ) ) ) |
| *Defendant*. | ) |

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT RECOMMENDING THAT AN ARBITRATOR DECIDE THE GATEWAY ISSUE OF ARBITRABILITY

*Of Counsel:*

Preston K. Ratliff II
Joseph M. O'Malley
Isaac S. Ashkenazi
Kevin P. Broughel
Ashley N. Mays-Williams
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Joseph R. Profaizer
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700

April 8, 2020

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

STANDARD OF REVIEW .......................................................................................................... 2

ARGUMENT ................................................................................................................................. 2

    A.    The Court, Not an Arbitrator, Must Determine Arbitrability Absent Clear and Unmistakable Evidence that the Parties Delegated this Determination to an Arbitrator .............................. 2

    B.    The Mere Incorporation of the AAA Rules Is Not "Clear and Unmistakable Evidence" of an Agreement To Arbitrate Arbitrability .................. 3

    C.    The Incorporation of the AAA Rules Does Not Apply to Disputes "Relating to" §19.3.6 of the Agreement ............................................. 8

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
 935 F.3d 274 (5th Cir. 2019), *petition for cert. filed*, No. 19-1080 (U.S. Mar. 3, 2020) ...................................................................................................................5, 10

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986) ..................................................................................................................3

*BG Grp. PLC v. Republic of Argentina*,
 572 U.S. 25 (2014) ....................................................................................................................3

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
 809 F.3d 746 (3d Cir. 2016) ..........................................................................1, 3, 4, 5, 6, 10

*Cipla Ltd. v. Amgen Inc.*,
 778 F. App'x 135 (3d Cir. 2019) .............................................................................................9

*DCK N. Am., LLC v. Burns & Roe Servs. Corp.*,
 218 F. Supp. 3d 465 (W.D. Pa. 2016) ................................................................................4, 10

*Engelhard Corp. v. NLRB*,
 437 F.3d 374 (3d Cir. 2006) ....................................................................................................9

*Howsam v. Dean Witter Reynolds, Inc.*,
 537 U.S. 79 (2002) ....................................................................................................................3

*In re Estate of Anches*,
 No. 78732-2-I, 2019 WL 3417100 (Wash. Ct. App. July 29, 2019) ...............................1, 6, 10

*First Options of Chi, Inc. v. Kaplan*,
 514 U.S. 938 (1995) ..................................................................................................................3

*Jones Lang Lasalle Ams. Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 313*,
 C.A. No. 16-190, 2017 WL 6417631 (D. Del. Dec. 15, 2017) .................................................4

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
 770 F.3d 1010 (2d Cir. 2014) ..............................................................................................5, 10

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
 724 F.3d 1069 (9th Cir. 2013) .........................................................................................5, 6, 7

*Quilloin v. Tenet Healthsystem Phila., Inc.*,
 673 F.3d 221 (3d Cir. 2012) ....................................................................................................4

*Spokane Sch. Dist. No. 81 v. Spokane Educ. Ass'n*,
   331 P.3d 60 (Wash. Ct. App. 2014) ..................................................................................... 9

*Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc.*,
   156 P.3d 293 (Wash. Ct. App. 2007) ................................................................................ 6, 7

*Taylor v. Samsung Elecs. Am., Inc.*,
   Case No. 19 C 4536, 2020 WL 1248655 (N.D. Ill. Mar. 16, 2020) ......................................... 7

*Temsa Ulasim Araclari Sanayi Ve Ticaret A.S. v. CH Bus Sales, LLC*,
   Civ. No. 18-698-RGA, 2018 WL 4905593 (D. Del. Oct. 9, 2018) ............................... 1, 6, 10

**Statutes**

28 U.S.C. § 636(b)(1)(B) ................................................................................................................ 2

28 U.S.C. § 636(b)(1)(C) ................................................................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 72 ........................................................................................................................ 1, 2

**PRELIMINARY STATEMENT**

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Plaintiff Daiichi Sankyo Company, Limited ("DSC") submits its objections to Magistrate Judge Fallon's March 25, 2020 Report and Recommendation (D.I. 31, the "Report"). DSC respectfully requests that the Court reject the Report's recommendation because it misapplies Supreme Court and Third Circuit law and would establish a troubling precedent undermining contracts where parties have agreed that certain disputes shall be resolved exclusively in a court of competent jurisdiction.

The Report incorrectly sets forth a bright-line rule that the mere incorporation of the American Arbitration Association's Commercial Arbitration Rules (the "AAA Rules") constitutes "clear and unmistakable evidence" that parties to any given agreement intended for an arbitrator, and not a court, to decide arbitrability. The Third Circuit, however, does not recognize any such rule. The Third Circuit has *never* held that the mere incorporation of the AAA Rules satisfies the Supreme Court's stringent "clear and unmistakable evidence" standard; in fact, it has suggested the opposite. The Report purports to find support for its new bright-line rule in three cases, *Chesapeake*, *Temsa*, and *Anches*.[1] But none of these cases supports the proposition that incorporation of the AAA Rules automatically establishes "clear and unmistakable evidence" in all circumstances, regardless of the specific phrasing of the contractual dispute-resolution clause.

In reaching its flawed recommendation, the Report also fails to apply basic contract interpretation principles that require construing the contract at issue as a whole. The Report does

---

[1] Report at 7-9 (discussing *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (3d Cir. 2016), *Temsa Ulasim Araclari Sanayi Ve Ticaret A.S. v. CH Bus Sales, LLC*, Civ. No. 18-698-RGA, 2018 WL 4905593 (D. Del. Oct. 9, 2018), and *In re Estate of Anches*, No. 78732-2-I, 2019 WL 3417100 (Wash. Ct. App. July 29, 2019)).

1

not analyze the specific structure and language of the dispute-resolution clause (§19.3) in the Parties' July 2, 2008 Collaboration Agreement ("the Agreement"). The structure and language of §19.3—which contains *two separate and co-equal* dispute-resolution pathways—is fundamentally distinct from the contracts at issue in the cases relied upon by the Report. Those contracts specified that *all disputes* were to be resolved in arbitration. In contrast, the dispute-resolution clause in *this* Agreement expressly differentiates between two fora: certain disputes must be arbitrated (§19.3.4) while certain other disputes must be resolved by a court of competent jurisdiction (§19.3.6). The Report fails to consider this dual-path dispute-resolution clause, which precludes the mechanical application of the "rules incorporation" presumption, thereby creating conflict with other courts within this Circuit as well as the Supreme Court's mandate that a delegation of arbitrability must be "clear and unmistakable."

## STANDARD OF REVIEW

The Magistrate Judge filed the Report pursuant to 28 U.S.C. § 636(b)(1)(B). (Report at 11.) A district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Pursuant to the Court's Standing Order for Objections filed under Federal Rule of Civil Procedure 72, DSC certifies that its objections do not raise new legal or factual arguments.

## ARGUMENT

**A.   The Court, Not an Arbitrator, Must Determine Arbitrability Absent Clear and Unmistakable Evidence that the Parties Delegated this Determination to an Arbitrator**

Binding Supreme Court precedent sets an extremely high standard for "who decides" the gateway issue of whether a particular dispute is arbitrable. According to the Supreme Court, a court must "not assume that the parties agreed to arbitrate arbitrability unless there is *clear and*

2

*unmistakable evidence* that they did so." *First Options of Chi, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotation marks and alterations omitted) (emphasis added); *see also BG Grp. PLC* v. *Republic of Argentina*, 572 U.S. 25, 34, (2014) ("courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability'"); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (same). In *Chesapeake*, the Third Circuit recognized that "[t]he burden of overcoming the presumption is *onerous*, as it requires *express contractual language unambiguously* delegating the question of arbitrability to the arbitrator." 809 F.3d 746, 753 (emphasis added).

The Report acknowledges the "clear and unmistakable" standard but, with scarce reasoning, finds the requisite "clear and unmistakable" intent in the Agreement's mere incorporation of the AAA Rules. (Report at 7-8.) That conclusion—which conflicts with decisions by other courts in this Circuit—is also erroneous. The Report fails to explain how the Agreement's dispute-resolution provision satisfies the demanding "clear and unmistakable evidence" standard and overcomes the onerous presumption that a court decides arbitrability. The Report does not interpret the structure and language of the Agreement's dispute-resolution clause, §19.3, even though it is "the court's duty to interpret the agreement" when determining arbitrability. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986).

### B. The Mere Incorporation of the AAA Rules Is Not "Clear and Unmistakable Evidence" of an Agreement To Arbitrate Arbitrability

Notwithstanding the presumption that courts must decide arbitrability absent "clear and unmistakable evidence" to the contrary, the Report incorrectly concludes that mere incorporation of the AAA Rules into any agreement between two parties, without more, delegates the question of arbitrability to an arbitrator. (Report at 7-8.)

3

The Third Circuit, however, has never held that the incorporation of the AAA Rules, standing alone, satisfies the Supreme Court's stringent "clear and unmistakable evidence" standard. In fact, the Third Circuit's decision in *Chesapeake*, which the Report invokes, concluded the opposite in the class arbitration context. There, the Third Circuit found the incorporation of the AAA Rules did ***not*** "clearly and unmistakably assign to an arbitrator the question" of arbitrability. *Chesapeake*, 809 F.3d at 764-66.

The Report attempts to limit *Chesapeake*'s reasoning to the class arbitration context, and argues that it does not apply to a bilateral arbitration (as here). (Report at 8.) The Report misreads *Chesapeake*. While *Chesapeake* rejected the application of the "incorporation" presumption in class arbitration because it "implicates a particular set of concerns that are absent in the bilateral context," the Third Circuit did not endorse the presumption's application in bilateral arbitration. 809 F.3d at 764.[2] Moreover, subsequent cases in the Third Circuit have recognized that incorporation of the AAA Rules does not automatically constitute delegation of arbitrability to an arbitrator. *Jones Lang Lasalle Ams. Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 313*, C.A. No. 16-190, 2017 WL 6417631, at *2-3 (D. Del. Dec. 15, 2017) ("[N]o precedent in this Circuit compelled the court to find that reference to the AAA Rules clearly delegated questions of arbitrability to an arbitrator."); *DCK N. Am., LLC v. Burns & Roe Servs. Corp.* 218 F. Supp. 3d 465, 473 (W.D. Pa. 2016) ("The Third Circuit has not explicitly decided the issue whether incorporation of the AAA Rules is sufficient to establish a clear and unmistakable intent of parties in a bilateral dispute to delegate to the arbitrator the question of arbitrability.").

---

[2]   In fact, in an earlier decision, the Third Circuit found that a party "did not agree to arbitrate the issue of arbitrability" even though the agreement at issue incorporated the AAA Rules. *Quilloin v. Tenet Healthsystem Phila., Inc.*, 673 F.3d 221, 228-30 (3d Cir. 2012).

4

The Report relies on *Chesapeake*'s observation (based on an earlier Ninth Circuit *Oracle* decision) that "[v]irtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (Report at 7 (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013))). But the Third Circuit did not say it endorsed that view; in fact, it expressly ***disagreed*** with it in the class arbitration context. *Chesapeake*, 809 F.3d at 764. And the Third Circuit's reasoning for rejecting that presumption applies in the bilateral context as well—and especially in cases such as this one, where arbitration is ***not*** the sole dispute-resolution mechanism adopted by the parties.

Moreover, the "rules incorporation" presumption is not absolute. Courts of appeals that have adopted that presumption have since clarified that the mere incorporation of the AAA Rules does ***not*** satisfy the "clear and unmistakable" standard. For example, the Second Circuit held that "where a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute" there is "ambiguity as to the parties' intent to have questions of arbitrability—which would include whether a dispute falls within or outside the scope of the qualifier—decided by an arbitrator" and in such instances, there could be no "clear and unmistakable" delegation. *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014). The Fifth Circuit reached the same conclusion. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 281-83 (5th Cir. 2019), *petition for cert. filed*, No. 19-1080 (U.S. Mar. 3, 2020) ("Given th[e contract's] carve-out, we cannot say that [it] evinces a 'clear and unmistakable' intent to delegate arbitrability. . . . The parties could have unambiguously delegated this question, but they did not, and we are not empowered to re-write their agreement.").

5

In support of its newly-created bright-line rule in the Third Circuit, the Report relies heavily upon *Temsa*. (Report at 7-8.) But that case is inapposite. *Temsa* concerned a distribution agreement that "submit[ted] all unresolved differences to arbitration" and the basis for the claims in the arbitration arose from that agreement and not from later agreements that the defendant argued superseded it. *Temsa*, 2018 WL 4905593 at *1-2, n. 3.

*Temsa* also relies on *Chesapeake*'s citation of the above-quoted Ninth Circuit statement in *Oracle*. *Id.* at *2 (quoting *Chesapeake*, 809 F.3d 746, 763). But, as explained above, the Third Circuit in *Chesapeake* did not endorse that view, and subsequent decisions by other circuit courts have undermined it as a categorical proposition. Nor did the *Temsa* court end its analysis with the incorporation of the AAA Rules; on the contrary, it went on to analyze the parties' intent and found critical the fact that the claims for arbitration arose from the distribution agreement that specified ***only arbitration*** as the forum. *Id.* at *2, n. 3.

Likewise, the Report's discussion of Washington state arbitration law (and *Matter of Estate of Anches* in particular) to support its conclusion is flawed. (*See* Report 8-9.) *Anches* did not find clear and unmistakable intent to delegate the issue of arbitrability to the arbitrator based on mere incorporation of the AAA Rules. Instead, the agreement in *Anches* expressly stated that "any issue about whether a claim or dispute is covered by this Agreement . . . shall be determined by the arbitrator," and that language—not incorporation of AAA Rules—formed the basis for finding a "clear and unmistakable declaration" of delegation. 2019 WL 3417100 at *2.

*Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc.*, 156 P.3d 293 (Wash. Ct. App. 2007), upon which DSC relied and which the Report disregards, is instructive in analyzing the present dispute. Despite that agreement's incorporation of arbitration rules, the court in *Tacoma Narrows* held that the parties did not "clearly and unmistakably" intend to

delegate the question of arbitrability to the arbitrator.[3] *Id*. at 299 ("[A] plain reading of the dispute resolution clause here . . . does not clearly state that the parties agreed to submit the question of arbitrability to an arbitrator.").

Further, the Report establishes a new rule for incorporation of R-7(a) of the AAA Rules without ever reconciling the contrary, non-exclusive language of the AAA Rules. Although R-7(a) of the AAA Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objection with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," it does not state that the arbitrator has the ***sole***, ***exclusive***, **or *first*** authority to rule on whether a dispute should be arbitrated.[4] In other words, "the AAA Rules themselves only give the arbitrator authority, not exclusive authority." *Taylor v. Samsung Elecs. Am., Inc.*, Case No. 19 C 4526, 2020 WL 1248655, at *4 (N.D. Ill. Mar. 16, 2020) (rejecting theory of delegation by mere incorporation of AAA Rules). As the *Taylor* court aptly observed, "[i]t is hard to see how an agreement's bare incorporation by reference of a completely separate set of rules that includes a statement that an arbitrator has authority to decide validity and arbitrability amounts to 'clear and unmistakable' evidence that the contracting parties agreed to delegate those issues to the arbitrator." *Id.* This is

---

3    The Report distinguishes *Tacoma Narrows* on the ground that its contract incorporated the arbitration rules of the International Chamber of Commerce ("ICC Rules"), and not the AAA Rules. (*See* Report at 8.) But that is irrelevant because Article 6(3) of the ICC Rules is substantively identical to AAA Rule 7-(a). (*See* Int'l Chamber of Commerce, Arbitration Rules, art. 6(3) (March 1, 2017), https://iccwbo.org/dispute-resolution-services/arbitration/rules-of-arbitration/#article_1.) Moreover, if this distinction were appropriate, then *Oracle*—which incorporated the arbitration rules of the United Nations Commission on International Trade Law rather than the AAA Rules—would also be irrelevant. *See Oracle*, 724 F.3d at 1071. This fact further demonstrates the unreasoned nature of the Report's recommendation.

4    *See* Am. Arbitration Ass'n, Commercial Arbitration Rules and Mediation Procedures, R-7(a) (October 1, 2013), https://adr.org/sites/default/files/CommercialRules_Web.pdf.

7

also the position adopted by the *Restatement*. *See Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* § 2.8, cmt. b (institutional arbitral rules "do not expressly give the tribunal exclusive authority" over issues that would "foreclose judicial consideration" of arbitrability), Reporters' n. b (iii) (same) (Am. L. Inst. 2019).  As the *Restatement*'s chief reporter explained, the American Law Institute "has concluded, after extended debate, that the[] cases [that adopted the rules incorporation presumption] were incorrectly decided because incorporation of such rules cannot be regarded as manifesting the 'clear and unmistakable' intention that *First Options* requires."  Br. of *Amicus Curiae* Professor George A. Bermann in support of Cross-Petitioner, *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 19-1080, at 2 (U.S. Apr. 2, 2020).  By treating the Agreement's generic reference to the AAA Rules (which will be present in virtually every contract that contemplates AAA arbitration) as "clear and unmistakable" evidence that the Parties intended for the arbitrator to determine the gateway issue of arbitrability, the Report effectively eviscerates the *First Options* presumption.

### C. The Incorporation of the AAA Rules Does Not Apply to Disputes "Relating to" §19.3.6 of the Agreement

In reaching the conclusion that the mere incorporation of the AAA Rules into a contract constitutes an agreement to arbitrate arbitrability, the Report ignores the structure and language of the "Dispute Resolution" section of the Agreement (§19.3).  The Report fails to analyze the Agreement, resulting in the erroneous conclusion that the demanding requirement of "clear and unmistakable evidence" that the parties intended to delegate arbitrability can be treated as automatically having been met whenever the words "AAA Rules" appear in a contract.  (*See* Report at 10 ("the incorporation of the AAA Rules indicates that the gateway issue of arbitrability should be determined by an arbitrator, and not the court").)  This is not the law, as the contract's entire dispute-resolution provision must be examined, and the presence of just a

8

handful of words in isolation should not be treated as a shortcut that permits the high "clear and unmistakable evidence standard" to be circumvented.  *See Spokane Sch. Dist. No. 81 v. Spokane Educ. Ass'n*, 331 P.3d 60, 67 (Wash. Ct. App. 2014) ("[W]e will not give effect to an interpretation that would render contractual obligations illusory."); *see also Engelhard Corp. v. NLRB*, 437 F.3d 374, 381 (3d Cir. 2006) (contract interpretation requires a court "to read, if possible, all provisions of a contract together as a harmonious whole").

Section 19.3 of the Parties' Agreement contains co-equal dispute-resolution provisions that require certain disputes to be arbitrated and certain other disputes to be litigated in a court of competent jurisdiction.  Although §19.3.4 provides for arbitration of certain disputes, it contains a dispositive exclusion:  "except as otherwise provided herein."  This exclusion is explained by §19.3.6, which specifies that "[n]otwithstanding the foregoing, any disputes relating to inventorship or the validity, enforceability or scope of any patent or trademark rights shall be submitted for resolution by a court of competent jurisdiction."  That language makes plain that §19.3.4 is limited by §19.3.6, and explicitly signals the Parties' intent that the exclusive jurisdiction of the courts residing in §19.3.6 is not subordinate to any other provision of the Agreement.  There cannot be clear and unmistakable delegation to an arbitrator to decide arbitrability where the incorporation of the AAA Rules is absent from the court dispute clause (§19.3.6), demonstrating that the Parties intentionally drafted the court dispute clause to override any other conflicting provision within the Agreement.[5]

The Agreement's distinctive dispute-resolution clause differentiates it from the cases relied upon by the Report because the contracts in those cases ***directed all disputes to***

---

[5]   *See Cipla Ltd. v. Amgen Inc.*, 778 F. App'x 135, 139 (3d Cir. 2019) ("[A] 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section.").

9

*arbitration*. *See Temsa*, 2018 WL 4905593 at *1 ("the parties shall submit all unresolved differences to arbitration"); *Chesapeake*, 809 F.3d at 749, 760 ("all such disputes shall be determined by arbitration"); *Anches*, 2019 WL 3417100 at *2 ("[a]ny claim or dispute among the parties relating to this Agreement shall be determined by arbitration"). In contrast, courts analyzing contracts that incorporate the AAA Rules but, like the Agreement here, explicitly divide jurisdiction between arbitration and courts of competent jurisdiction, have found no clear and unmistakable intent to arbitrate arbitrability. *See, e.g.*, *Schein*, 935 F.3d at 281 (incorporation of the AAA Rules did not delegate arbitrability for all disputes); *NASDAQ*, 770 F.3d at 1032 (language of agreement at issue "delay[ed] application of AAA Rules until . . . arbitrability is decided"); *DCK*, 218 F. Supp. 3d at 474 ("[b]ecause the parties' reference to the AAA Rules in their arbitration provision does not necessarily bring those Rules into play in this dispute . . . the parties cannot be said to have clearly and unmistakably provided for an arbitrator, rather than a court, to decide the question of arbitrability").

Finally, the Report suggests in a footnote, relying on a single paragraph of DSC's Complaint, that the Parties' dispute may not be within the jurisdiction of the §19.3.6 dispute-resolution clause. (Report at 9-10, n. 6.) This is further misapplication of the law. The Report fails to accept the allegations of DSC's Complaint in their entirety as true, including specifically paragraphs 1, 12, 13, 41, 42-46, 49, 50, 52, 54, 55, and 56 that present a dispute relating to the "scope of patent rights" even under SGI's interpretation of that phrase, but improperly credits allegations in SGI's Demand for Arbitration that are not even before the Court. *Id*.

## CONCLUSION

For the foregoing reasons, the Court should sustain DSC's objections and should decline to adopt the Report's recommendation that an arbitrator, instead of the Court, decide the gateway issue of arbitrability.

10

*Of Counsel*:

Preston K. Ratliff II
Joseph M. O'Malley
Isaac S. Ashkenazi
Kevin P. Broughel
Ashley N. Mays-Williams
Paul Hastings LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Joseph R. Profaizer
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700

April 8, 2020

ASHBY & GEDDES

*/s/ Steven J. Balick*
_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

11