**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DAIICHI SANKYO COMPANY, LTD., | ) | |
| | ) | |
| *Plaintiff*, | ) | C.A. No. 19-2087-LPS-SRF |
| | ) | |
| v. | ) | |
| | ) | |
| SEATTLE GENETICS, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

**DEFENDANT SEATTLE GENETICS' RESPONSE TO PLAINTIFF DAIICHI SANKYO'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

*Of Counsel:*

MORRISON & FOERSTER LLP
Michael A. Jacobs
Matthew A. Chivvis
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000
mjacobs@mofo.com
mchivvis@mofo.com

Bryan Wilson
Pieter S. de Ganon
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600
bwilson@mofo.com
pdeganon@mofo.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6727
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant Seattle Genetics, Inc.*

Dated: April 20, 2020

# TABLE OF CONTENTS

**Page(s)**

I. ARGUMENT ..... 1

A. This Court Should Apply A Deferential Standard Of Review ..... 1

B. For Bilateral Arbitration, Incorporation Of AAA Rules Clearly And Unmistakably Delegates Arbitrability To The Arbitrator ..... 2

1. DSC, Not Judge Fallon, "Misreads *Chesapeake*" ..... 2

2. The Carve-Out Does Not Change *Chesapeake*'s Conclusion ..... 3

3. Judge Fallon Properly Addressed and Interpreted The Parties' Remaining Arguments and Authority ..... 6

C. This Case Is Arbitrable ..... 9

D. In All Events, A Stay Is Warranted ..... 10

II. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Home Assur. Co. v. Vecco Concrete Const. Co. of Va.*,
629 F.2d 961 (4th Cir. 1980) ....................10

*Appforge, Inc. v. Extended Sys., Inc.*,
2005 WL 705341 (D. Del. Mar. 28, 2005) ....................9, 10

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019) ....................5, 6

*Ballard v. Corinthian Colls., Inc.*,
2006 WL 2380668 (W.D. Wash. Aug. 16, 2006) ....................10

*Becker v. Continental Motors, Inc.*,
2018 WL 582112 (D. Del. Jan. 29, 2018)....................2

*Belnap v. Iasis Healthcare*,
844 F.3d 1272 (10th Cir. 2017) ....................2

*Brayman Const. Corp. v. Home Ins. Co.*,
319 F.3d 622 (3d Cir. 2003)....................9

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
809 F.3d 746 (3d Cir. 2016)....................2, 3, 4

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014) ....................5

*DCK N. Am., LLC v. Burns & Roe Servs. Corp.*,
218 F. Supp. 3d 465 (W.D. Pa. 2016)....................7, 8

*Fichter v. AMG Resources Corp.*,
528 F. App'x 225 (3d Cir. 2013) ....................8

*Gay v. CreditInform*,
511 F.3d 369 (3d Cir. 2007)....................9

*Grand River Enters. Six Nations, Ltd. v. King*,
2009 WL 1360686 (S.D.N.Y. May 15, 2009) ....................7, 8

*Haines v. Liggett Grp. Inc.*,
975 F.2d 81 (3d Cir. 1992)....................2

# TABLE OF AUTHORITIES

**Page(s)**

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019)....................2, 5

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
2012 WL 5599338 (D. Del. Nov. 15, 2012)....................1

*In re Estate of Anches*,
2019 WL 3417100 (Wash. Ct. App. July 29, 2019)....................6, 7

*Jones Lang Lasalle Am. Inc. v. Int'l Brotherhood of Elec. Workers Local Union No. 313*,
2017 WL 2957816 (D. Del. July 11, 2017)....................3

*Jones Lang Lasalle Am. Inc. v. Int'l Brotherhood of Elec. Workers Local Union No. 313*,
2017 WL 6417631 (D. Del. Dec. 15, 2017)....................3, 8

*Kalra v. City of New York*,
2009 WL 857391 (S.D.N.Y. Mar. 31, 2009)....................8, 9

*Livewire Publ'g, Inc. v. Best Software, Inc.*,
252 F. Supp. 2d 74 (D. Del. 2003)....................10

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014)....................5

*Opalinski v. Robert Half Int'l, Inc.*,
761 F.3d 326 (3d Cir. 2014)....................3

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013)....................4

*Planned Parenthood of Se. Pa. v. Casey*,
947 F.2d 682 (3d Cir. 1991), *aff'd in part, rev'd in part* 505 U.S. 833 (1992)....................3

*Promptu Sys. Corp. v. Comcast Corp.*,
2017 WL 4475966 (E.D. Pa. May 18, 2017)....................4

*Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings, LLC*,
400 P.3d 347 (Wash. Ct. App. 2017)....................7

*Seven For All Mankind, LLC v. GenX Clothing, Inc.*,
2006 WL 5720346 (C.D. Cal. May 10, 2006)....................8

## TABLE OF AUTHORITIES

**Page(s)**

*Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc.*, 156 P.3d 293 (Wash. Ct. App. 2007) ....... 7

*Taylor v. Samsung Elecs. Am., Inc.*, 2020 WL 1248655 (N.D. Ill. Mar. 16, 2020) ....... 8

*telSPACE, LLC v. Coast to Coast Cellular, Inc.*, 2015 WL 11236283 (W.D. Wash. Mar. 13, 2015) ....... 4

*Temsa Ulasim Araclari Sanayi Ve Ticaret A.S. v. CH Bus Sales, LLC*, 2018 WL 4905593 (D. Del. Oct. 9, 2018) ....... 6

*Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366 (3d Cir. 1991) ....... 3

*V.I. Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131 (3d Cir. 2014) ....... 1

*Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, 2011 WL 307617 (N.D. Ill. Jan. 28, 2011) ....... 8

**Statutes and Other Authorities**

28 U.S.C. § 636(b)(1)(B) ....... 1

AAA Rule R 7(a) ....... 2

Brief for Cross-Petitioner, *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 19-1080 (U.S. Mar. 2, 2020) (Ex. C)[1] ....... 3

Fed. Rules Civ. Proc.
72(a) ....... 1
72(b)(1) ....... 1

[1] Unless otherwise noted, citations to "Ex." are to the Declaration of Pieter S. de Ganon In Support of Defendant Seattle Genetics' Response to Plaintiff Daiichi Sankyo's Objections to the Magistrate Judge's Report and Recommendation, filed contemporaneously herewith.

The Court should reject DSC's Objections to Judge Fallon's Report and Recommendation (D.I. 31 ("R&R")) granting SGI's motion to stay. DSC misstates the standard of review. (D.I. 33 ("Objs.") at 2.) DSC also misreads the applicable case law: decision after decision supports the R&R. Through this litigation, and now these Objections, DSC confirms Judge Connolly's observation that "all too often parties initiat[e] federal court litigation in contravention of contractual obligations to arbitrate a dispute." (11/26/2019 Oral Order.)

# I. ARGUMENT

## A. This Court Should Apply A Deferential Standard Of Review

DSC cites the wrong standard of review. (Objs. at 2.) The R&R was filed pursuant to 28 U.S.C. § 636(b)(1)(B) and FRCP 72(b)(1) because it addresses (and denies) SGI's motion to dismiss. (R&R at 10–11.) But DSC does not challenge the denial; it challenges the grant of a stay pending arbitration, which is a non-dispositive ruling. *See V.I. Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133 (3d Cir. 2014) (appropriate inquiry is whether motion "is dispositive and motions to compel arbitration and stay the proceedings are not.").

This Court's review is therefore governed by FRCP 72(a). That the ruling was styled as a "Report and Recommendation . . . filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1)" (R&R at 11) is of no moment. *See, e.g.*, *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, 2012 WL 5599338, at *1 (D. Del. Nov. 15, 2012) (applying FRCP 72(a) because a "motion to stay is 'not dispositive of a party's claim or defense'" even though R&R filed pursuant to § 636(b)(1)(B) and FRCP 72(b)(1) (referring to *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, 2012 WL 3866677, at *5 (D. Del. Sept. 4, 2012))).

Thus, the R&R is not reviewed de novo but for clear error. DSC must therefore show that Judge Fallon "misinterpreted or misapplied the applicable law." *Becker v. Continental*

*Motors, Inc.*, 2018 WL 582112, at *3 (D. Del. Jan. 29, 2018). DSC must also show that Judge Fallon's fact findings were "completely devoid of minimum evidentiary support displaying some hue of credibility," or "b[ore] no rational relationship to the supportive evidentiary data." *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992). But even if review were de novo, DSC fails.

### B. For Bilateral Arbitration, Incorporation Of AAA Rules Clearly And Unmistakably Delegates Arbitrability To The Arbitrator

#### 1. DSC, Not Judge Fallon, "Misreads *Chesapeake*"

The Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements according to their terms. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). This requirement applies to disputes over arbitrability, as well as disputes over the antecedent question of "who" decides arbitrability. *Id.* While courts presumptively decide the antecedent question, parties may overcome that presumption by "clear and unmistakable evidence" that they agreed to arbitrate the question of arbitrability. *Id.* at 530 (citation omitted).

For *bilateral* arbitrability, nearly every federal court of appeals to have considered the question agrees that by incorporating institutional rules that themselves assign question of arbitrability to the arbitrator, the parties clearly and unmistakably intended the arbitrator, not the court, to decide arbitrability. *See, e.g.*, *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283–84 (10th Cir. 2017) (collecting cases); *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (3d Cir. 2016) (same). The AAA's Commercial Arbitration Rules, which the parties incorporated by reference (D.I. 9, Ex. 1 § 19.3.4), do just that. *See* AAA Rule R-7(a).

As Judge Fallon correctly noted, *Chesapeake* departed from this consensus only insofar as it analyzed *class arbitrability*, not bilateral arbitrability. (R&R at 8.) Class arbitrability "implicates a particular set of concerns that are absent in the bilateral context." (*Id.* (citing *Chesapeake*, 809 F.3d at 764).) "[C]ourts should," therefore, "be wary of concluding that the

availability of classwide arbitration is for the arbitrator to decide, as that decision implicates the rights of absent class members without their consent." *Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 333 (3d Cir. 2014) (citation omitted). DSC is wrong that the Third Circuit "suggested" that incorporation does not apply in the bilateral context (Objs. at 1). It did the opposite, drawing on six courts of appeal for support. *Chesapeake*, 809 F.3d at 763–64 (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (citing five other circuits).)[2]

Judge Fallon, not DSC, has the correct view. There was nothing erroneous, much less clearly erroneous, about the R&R. This Court should follow the Third Circuit's guidance in *Chesapeake* and overrule DSC's objections to the R&R. *Planned Parenthood of Se. Pa. v. Casey*, 947 F.2d 682, 692 (3d Cir. 1991), *aff'd in part, rev'd in part* 505 U.S. 833 (1992) ("Our system of precedent or *stare decisis* is thus based on adherence to both the reasoning and result of a case, and not simply to the result alone.").[3]

**2. The Carve-Out Does Not Change *Chesapeake*'s Conclusion**

In concluding that incorporation of the AAA Rules delegates arbitrability to the arbitrator, *Chesapeake* cites the Ninth Circuit's *Oracle* opinion. *Chesapeake*, 809 F.3d at 763.

---

[2] The cross-petitioner for certiorari in *Archer & White v. Henry Schein*—whose amicus DSC cites (Objs. at 8)—agrees with SGI. Citing *Chesapeake*, the cross-petitioner writes that "some courts have held that incorporation of AAA rules is sufficient to show clear and unmistakable delegation of arbitrability disputes *except* those regarding the availability to class arbitrability." Brief for Cross-Petitioner at 11 n.3 (Ex. C), *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 19-1080 (U.S. Mar. 2, 2020) (citing *Chesapeake*, 809 F.3d at 764–66) (emphasis in original).

[3] The *Jones Lang Lasalle Am. Inc. v. Int'l Brotherhood of Elec. Workers Local Union No. 313* decisions do not change this conclusion. (Objs. at 4 (citing 2017 WL 6417631 (D. Del. Dec. 15, 2017) (reconsideration), 2017 WL 2957816 (D. Del. July 11, 2017) (original opinion).) First, they are not binding on this Court. *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991). Second, they are distinguishable. In *Jones*, the parties agreed that they "may" arbitrate the dispute. 2017 WL 2957816, at *1. This permissive language was central to the court's holding because it was not clear the parties even agreed to arbitrate, much less agreed to delegate arbitrability. *Id.* at *4. The language here is mandatory. (D.I. 9, Ex. 1 §§ 19.3, 19.3.4.)

*Oracle* involved a dispute resolution provision similar to the one here: *Oracle*'s clause sent to arbitration "any dispute arising" from the parties' contract, but it also included a carve-out for "dispute[s] relating to . . . Intellectual Property Rights [and] compliance with the TCK license," which the parties agreed to litigate in court. *Oracle*, 724 F.3d at 1071. And it incorporated arbitral rules that empower the arbitrator to decide his or her own jurisdiction. *Id.*

The Ninth Circuit found that the "carve-out clause" did not "negate incorporation of the [arbitral] rules." *Id.* at 1075–76. Because the claims purportedly subject to the carve-out themselves arose from the parties' agreement—which DSC acknowledges is also true here—the court held that even with respect to those claims, incorporation delegates arbitrability to the arbitrator. *Id.* at 1076. Any argument otherwise, the court continued, "conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *Id.* (emphasis in original). It concluded that the "decision that a claim relates to [the carve-out] or compliance with the [agreement] constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the [arbitral] rules." *Id.*

Lower courts in the Third and Ninth Circuits agree. *E.g.*, *telSPACE, LLC v. Coast to Coast Cellular, Inc.*, 2015 WL 11236283, at *4 n.1 (W.D. Wash. Mar. 13, 2015) (*Oracle* court "specifically dispensed with the argument that a jurisdictional carve-out clause . . . negates the express delegation of questions of arbitrability to the arbitrator"); *Promptu Sys. Corp. v. Comcast Corp.*, 2017 WL 4475966, at *5 (E.D. Pa. May 18, 2017) ("Delaware courts have repeatedly rejected [the] argument that, if an arbitration provision contains any exceptions, then the parties did not intend to empower the arbitrator to determine substantive arbitrability," thus incorporation of the AAA rules delegates arbitrability to the arbitrator despite an intellectual

property dispute exception).

DSC's Second and Fifth Circuit authority does not bind this Court. (Objs. at 5.) Even if it did, the Second Circuit case supports the R&R and the Fifth Circuit case is distinguishable. In *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, the Second Circuit held that the presence of a carve-out provision "delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided."[4] 770 F.3d 1010, 1032 (2d Cir. 2014). Judge Fallon made that determination too. She correctly applied this Circuit's incorporation law and she addressed the question of arbitrability on the merits. Assessing both SGI's Demand and DSC's Complaint, Judge Fallon concluded that the parties' ownership dispute turns on the definition of "Improvements" under the parties' Agreement, which makes it arbitrable. (R&R at 9 n.6 (citing D.I. 9, Ex. 3 ¶ 5 and D.I. 1 ¶ 14).)

In *Archer & White Sales, Inc. v. Henry Schein, Inc.*, the Fifth Circuit compared the arbitration clause there with the one in *Crawford Professional Drugs, Inc. v. CVS Caremark Corp*., 748 F.3d 249 (5th Cir. 2014). 935 F.3d 274, 280–81 & n.26 (5th Cir. 2019). Both included carve-outs. The *Archer & White* clause, the court found, did not delegate arbitrability to the arbitrator; the *Crawford* clause did. *Id.* at 277, 280–81. The difference? "[T]he ordering of the words" and the "placement of the carve-out," which were "dispositive." *Id.* at 281. The carve-out here resembles that in *Crawford*, not in *Archer & White*. Here, as in *Crawford*, the carve-out follows the delegation clause. (*Compare* D.I. 9, Ex. 1 § 19.3.6, *with Archer & White*, 935 F.3d at 280–81 n.26 (citing *Crawford*, 748 F.3d at 256).) As SGI noted at the hearing, this structure indicates that "nothing detracts from the delegation clause itself." (Ex. A at 8:13–14.)

---

[4] This arguably conflicts with U.S. Supreme Court precedent that delegation is an "additional, *antecedent* agreement the party seeking arbitration asks the federal court to enforce." *Henry Schein*, 139 S. Ct. at 529 (emphasis added and citation omitted).

In *Archer & White*, by contrast, the carve-out is nested inside and precedes the delegation clause, detracting from the delegation clause itself. *Archer & White*, 935 F.3d at 277.

**3. Judge Fallon Properly Addressed and Interpreted The Parties' Remaining Arguments and Authority**

DSC challenges Judge Fallon's analysis of the parties' authority, calling it "flawed" and "unreasoned." (Objs. at 6, 7 n.3.) DSC's attack is misplaced.

First, DSC calls Judge Fallon's reliance on *Temsa* "inapposite," arguing that AAA Rule incorporation was not dispositive. (Objs. at 6 (citing *Temsa Ulasim Araclari Sanayi Ve Ticaret A.S. v. CH Bus Sales, LLC*, 2018 WL 4905593, at *1–2 n.3 (D. Del. Oct. 9, 2018)). Not true. "Here," the *Temsa* court wrote, "the parties provided clear and unmistakable evidence that arbitrability is to be determined by the arbitration panel, and not the court, *because* the parties incorporated the AAA rules into the arbitration provision of the Distribution Agreement." *Temsa*, at *2 (emphasis added). DSC also asserts that the *Temsa* court "analyze[d] the parties' intent" and found it "critical" that the claimant's claims "arose from [an] agreement that specified only arbitration as the forum." (Objs. at 6.) This gloss overreaches. The *Temsa* court merely assessed the "claims in the arbitration demand" and found that they "appear[ed] to rest primarily on the" agreement. *Temsa*, at *2. Judge Fallon did the same here. (R&R at 9 & n.6.)

Second, DSC calls Judge Fallon's reliance on *In re Estate of Anches* "flawed," asserting that the case "did not find clear and unmistakable intent [] based on mere incorporation of the AAA Rules." (Objs. at 6 (citing 2019 WL 3417100 (Wash. Ct. App. July 29, 2019).) Also not true. The *Anches* court was clear that incorporation constituted a separate, independent basis for its holding: "By incorporating the AAA rules into the arbitration provision," it wrote, "the parties *again* expressed their intent to have the arbitrator, and not a court, decide arbitrability." *Anches*, 2019 WL 3417100, at *2 (citing *Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings, LLC*,

400 P.3d 347, 349–50 (Wash. Ct. App. 2017)) (emphasis added).[5]

Third, DSC calls Judge Fallon's rejection of the *Tacoma Narrows* case "unreasoned." (Objs. at 6–7 & n.3.) But Judge Fallon was right to do so. The "argument" DSC presented to Judge Fallon amounted to a terse parenthetical buried at the end of a long footnote, in which DSC asserted only that *Tacoma Narrows* found "no clear agreement to arbitrate arbitrability in agreement [*sic*] that incorporated arbitration rules." (D.I. 20 at 9 n.11.) But DSC omits that the *Tacoma Narrows* court never addressed—much less ruled on—whether incorporation of an arbitral body's rules delegates arbitrability to the arbitrator. *Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc.*, 156 P.3d 293, 299 (Wash. Ct. App. 2007). The only issue it addressed (and rejected) was appellant's argument that the arbitration clause's reference to "all disputes" delegates arbitrability to the arbitrator. *Id.*

Fourth, DSC appears to criticize Judge Fallon for failing to consider authority DSC neither cited in its Answering Brief nor presented at the hearing. (Objs. at 4 & n.2, 7–8 (citing *DCK N. Am., LLC v. Burns & Roe Servs. Corp.*, 218 F. Supp. 3d 465 (W.D. Pa. 2016), *Quilloin v. Tenet Healthsystem Phila., Inc.*, 673 F.3d 221, 228–30 (3d Cir. 2012), and *Restatement of the U.S. Law of Int'l Commercial and Investor-State Arbitration*).) Because this authority predates DSC's Answering Brief, DSC could have presented it to Judge Fallon, but did not, thereby "depriving the magistrate of the opportunity to rectify any alleged error." *Grand River Enters. Six Nations, Ltd. v. King*, 2009 WL 1360686, at *3 (S.D.N.Y. May 15, 2009) (citing Moore's Federal Practice § 72.11[1][a] (3d ed. 2000)). DSC has waived its right to present it here. *Id.*;

---

[5] *Raven* confirms that DSC is wrong. There, the court held that "[b]y incorporating MAA rules," which "unequivocally empowers the arbitrator to decide whether a specific dispute is arbitrable," the "parties clearly and unmistakably manifested their agreement to be bound by those rules." *Raven*, 400 P.3d at 350.

*accord Seven For All Mankind, LLC v. GenX Clothing, Inc.*, 2006 WL 5720346, at *3 (C.D. Cal. May 10, 2006) (same). Regardless, the only potentially binding case, *Quilloin*, is distinguishable. *Jones*, discussed above at 3 n.3, makes this clear. The "Third Circuit [in *Quilloin*]," the *Jones* court observed, "did not directly consider the jurisdictional effect of an agreement's incorporation of the AAA Rules," but "noted only that the plaintiff 'did not agree to arbitrate the issue of arbitrability.'" *Jones*, 2017 WL 6417631, at *3 (citing *Quilloin*, 673 F.3d at 228–30). The *Jones* court, therefore, did not treat "*Quilloin* as authority directly governing the question" of incorporation. *Id.* Because *Chesapeake* postdated but did not follow *Quilloin*, nor should this Court.[6]

Finally, DSC accuses Judge Fallon of "ignor[ing] the structure and language of the 'Dispute Resolution' section of the Agreement (§19.3)." (Objs. at 8.) But a "court need not discuss every argument made by a litigant if an argument is clearly without merit." *Fichter v. AMG Resources Corp.*, 528 F. App'x 225, 231 n.5 (3d Cir. 2013) (citation omitted); *Kalra v. City of New York*, 2009 WL 857391, at *5 (S.D.N.Y. Mar. 31, 2009) (magistrate judge's failure

---

[6] While not binding, DSC's remaining authority is distinguishable. *DCK*'s holding turns on the parties' failure to specify which version of the rules they incorporated, precluding the court from knowing whether the rules empowered the arbitrator to decide arbitrability. *DCK*, 218 F. Supp. 3d at 474. The parties here incorporated the "*then-current* commercial arbitration rules of the American Arbitration Association" (D.I. 9, Ex. 1 § 19.3.4 (emphasis added)), which correspond to the September 1, 2007, version and which do empower the arbitrator to decide (Ex. B at R-7(a)). As to the *Restatement*, DSC cites no Third Circuit authority adopting the Restatement or even finding it persuasive. Its view on "who decides" is not an accurate expression of U.S. law, much less the majority view. Finally, DSC's new Northern District of Illinois case conceded that the "overwhelming majority of courts" agree with SGI, but held otherwise because the "Seventh Circuit has not addressed th[is] point." *Taylor v. Samsung Elecs. Am., Inc.*, 2020 WL 1248655, at *4 (N.D. Ill. Mar. 16, 2020). DSC and the *Taylor* court fail to mention that the Northern District of Illinois had, on several occasions, decided to the contrary. *E.g.*, *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, 2011 WL 307617, at *4 (N.D. Ill. Jan. 28, 2011) (AAA incorporation delegates arbitrability to arbitrator). In all events, *Taylor* ultimately stayed the litigation pending arbitration. *Taylor*, 2020 WL 1248655, at *8.

to address "every argument advanced" not clearly erroneous). In any event, DSC's accusation is without merit. At the hearing, Judge Fallon asked DSC to explain why Section 19.3.4, which incorporates the AAA Rules, did not represent a delegation of arbitrability. (Ex. A at 17:16–19, 18:25–19:15.) In response, DSC raised its "co-equal clause" theory: "[I]n two independent co-equal clauses," DSC argued, the parties sent certain disputes to court, and others to arbitration. (*Id.* at 20:10–14.) "[O]ur issues," DSC went on, "plainly fall within 19.3.6." (*Id.* at 20:15–16.) Judge Fallon was (rightly) skeptical. After DSC conceded that a royalty payment or license fee dispute would be arbitrable even though it arises from an underlying patent, Judge Fallon asked:

> Where do you draw the line [if] you're arbitrarily putting in a box certain things that are intertwined with contractual issues, but yet you want ownership to be carved out on its own even though ownership of patent rights doesn't necessarily get intertwined with the claims of the patent, interpretation, construction of the claims and scope of the patent?

(*Id.* at 24:4–19.) Judge Fallon then addressed and rejected this argument in the R&R (at 9 n.6).

### C. This Case Is Arbitrable

The FAA requires district courts to stay a suit to allow for arbitration if "'any issue' is referable to arbitration." *Appforge, Inc. v. Extended Sys., Inc.*, 2005 WL 705341, at *9 (D. Del. Mar. 28, 2005) (citing 9 U.S.C. § 3). Given the "strong presumption in favor of arbitration," *Gay v. CreditInform*, 511 F.3d 369, 387–88 (3d Cir. 2007), "[i]f the allegations underlying the claims 'touch matters' covered by [an arbitration clause], then those claims must be arbitrated, whatever the legal labels attached to them," *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003) (citation omitted). Judge Fallon found that the parties' claims concern "ownership rights," resolution of which depends on the definition of "Improvements" as defined in their Agreement. (R&R at 9 n.6 (citing D.I. 9, Ex. 3 ¶ 5, D.I. 1 ¶ 14).) Judge Fallon rejected "[DSC]'s position" that the "'scope' of patent rights removes the dispute from section 19.3.4 . . . and puts it within the jurisdiction of the court under section 19.3.6," finding that it "does not

comport with the allegations in [DSC's] complaint." (*Id.*) DSC responds by accusing Judge Fallon of "misappl[ying] the law" because she purportedly "fails to accept the allegations of DSC's Complaint in their entirety as true." (Objs. at 10.) To the contrary: In rejecting DSC's calculated attempt to avoid arbitration, Judge Fallon not only accepted as true, but credited the words in DSC's Complaint, which repeatedly and unambiguously tie this ownership dispute to the construction of the Agreement's defined terms. Regardless, for the purposes of a motion to stay, Judge Fallon need not accept as true attorney argument buried within DSC's Complaint.

### D. In All Events, A Stay Is Warranted

There is no dispute that the parties' contractual interpretation issues and SGI's claim that there are Improvements based on SGI know-how (as opposed to SGI patents) must be arbitrated. Where a dispute includes both arbitrable and non-arbitrable issues, the district court should stay the proceedings until the arbitrable issues are resolved. *Appforge*, 2005 WL 705341, at *10; *Livewire Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 82–83 (D. Del. 2003). A stay is independently warranted because DSC never moved to enjoin the arbitration and, as SGI argued, the arbitrator may decide that some of this dispute is arbitrable. (Ex. A at 33:3–34:1.) Absent a stay, there is significant risk of parallel proceedings, inconsistent results, and inefficiencies. *E.g.*, *Am. Home Assur. Co. v. Vecco Concrete Const. Co. of Va.*, 629 F.2d 961, 964 (4th Cir. 1980) (ordering stay to avoid confusion and inconsistent results); *Ballard v. Corinthian Colls., Inc.*, 2006 WL 2380668, at *2 (W.D. Wash. Aug. 16, 2006) (same).

## II. CONCLUSION

DSC failed to show any error—let alone clear error—in Judge Fallon's R&R staying this dispute pending arbitration. The Court should overrule DSC's objections.

Dated: April 20, 2019

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Samantha Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6727
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant Seattle Genetics, Inc.*

*Of Counsel:*

MORRISON & FOERSTER LLP
Michael A. Jacobs
Matthew A. Chivvis
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000

Bryan Wilson
Pieter S. de Ganon
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600

26371912.1

**CERTIFICATE OF SERVICE**

I, Anne Shea Gaza, hereby certify that on April 20, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Steven J. Balick
Andrew C. Mayo
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

I further certify that on April 20, 2020**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following counsel:

Preston K. Ratliff II
Joseph M. O'Malley
Isaac S. Ashkenazi
Ashley N. Mays-Williams
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000
prestonratliff@paulhastings.com
josephomalley@paulhastings.com
isaacashkenazi@paulhastings.com
ashleymayswilliams@paulhastings.com

*Attorneys for Plaintiff*

Dated: April 20, 2020

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Seattle Genetics, Inc.*